494 So.2d 977 (1986)
THE FLORIDA BAR RE RULES REGULATING THE FLORIDA BAR.
Nos. 65197, 65877, 67085 and 68293.
Supreme Court of Florida.
July 17, 1986.
On Rehearing September 11, 1986.
Joseph J. Reiter, President, West Palm Beach, Ray Ferrero, Jr., President-elect, Fort Lauderdale, John F. Harkness, Jr., Executive Director, John T. Berry, Staff Counsel, Dennis S. Crowley, Ethics Counsel, John A. Boggs, Director of Lawyer Regulation, and Michael A. Tartaglia, Director of Public Interest Programs, Tallahassee, D. Culver Smith III, Chairman, Special Study Committee on Lawyer Referral Services, Palm Beach, and Phyllis Shampanier, Chairwoman, Integration Rule and Bylaws Committee, Miami Beach, Bill Wagner, Chairman, Committee on Proposed Rules Regulating The Florida Bar, Tampa, Thomas M. Ervin, Jr., Chairman, Disciplinary Procedure Committee, Tallahassee, James P. Hahn, Chairman, Standing Committee on the Unauthorized Practice of Law, Lakeland, Catherine L. Dickson, UPL Counsel, Tallahassee, Stephen D. Busey, Chairman, Special Study Committee on the Model Rules of Professional Conduct, Jacksonville, Robert E. Livingston, Chairman, Program Evaluation Committee, Miami, and Stephen A. Rappenecker, Chairman, Bd. of Certification, Designation & Advertising, Gainesville, for petitioner, The Florida Bar.
Henry P. Trawick, Jr., Sarasota, Wilson Jerry Foster, Tallahassee, Andrew G. Pattillo, Jr., President and Jane E. Robertson, Executive Director of The Florida Bar Foundation, Orlando, Michael E. Allen, President, Florida Public Defender Association, Tallahassee, John C. Shepherd, Office of the President, American Bar Association, Chicago, Ill., J. Paul McGrath, Asst. Atty. Gen., Antitrust Div., U.S. Dept. of Justice, Washington, D.C., Jeffrey H. Barker, Executive Director, Florida Legal Services, Inc., Tallahassee, on behalf of Florida Clients Counsel, Common Cause, Florida Institutional Legal Services, Inc., Gulf-coast Legal Services, Inc., and Al Hadeed, Russell E. Carlisle, Chairman, Florida Bar Commission on Access to the Legal System, Fort Lauderdale, Stephen T. Maher, Attorney at Law, University of Miami School of Law, Coral Gables, and Neil Chonin, Coral Gables, responding.
Charles A. Kimbrell, Chairman, Florida State Committee, Miami, Robert M. Ervin, Sp. Florida Counsel, Tallahassee, and Gene W. Lafitte, President, New Orleans, La., for The American College of Trial Lawyers, amicus curiae.
PER CURIAM.
In November 1984 this Court heard oral argument in case numbers 65,197 and 65,877, encompassing a total revision of the bar rules.[*] Since that time, numerous petitions for revision of both the currently existing bar rules and of the proposed new rules have been filed with and considered by the Court, and the proposed new rules have been revised several times. After rearranging and revising portions of the bar's proposed rules, we now adopt these new rules, entitled "Rules Regulating the Florida Bar." As can be seen in the new rules, the integration rule, bylaws, and code of professional responsibility no longer exist as separate entities. Rather, all rules pertaining to the bar have been integrated, in a chapter format, into a single document. It is the revisers' hope, as well as the Court's, that this new arrangement will make it easier to find things in the rules.
Several noteworthy changes have been made from the current rules and from the board's proposals. For instance, while *978 amendments to most of the rules still must be through petition to this Court, chapters 2, 7, and 9 can be amended by the board of governors without petitioning the Court. See rule 2-10. Dues, however, are still capped, and this Court will have to be petitioned for changes in the amount of members' dues. The new rules also provide for nonlawyer members of the board of governors; the period for disbarment has been raised to five years; and there are numerous changes in the disciplinary process, now set out in chapter 3.
A few of the changes made by the Court in the board's proposal include: an addition to rule 4-3.6 regarding persons making extrajudicial statements in criminal cases; a proviso regarding holding and maintaining property as a client wishes added to rule 4-1.15(a); and expansion of confidentiality in minor misconduct reports in 3-5.1(b). Also, rule 4-7.3, as originally proposed, prohibited direct mail solicitation of persons known to have specific legal problems. After studying this matter, we have concluded that such mailing cannot be prohibited. Instead, we have revised rule 4-7.3 to regulate, rather than proscribe, such communications. If this regulation proves unworkable or if a pattern of abuse in direct mailings is established, we will consider amending the solicitation rule.
The rules as finally adopted also include recent amendments regarding confidentiality for attorneys seeking treatment for alcohol abuse, 490 So.2d 937 (Fla. 1986), contingent fees, 494 So.2d 960 (Fla. 1986), and graduation from an accredited law school for emeritus attorneys, 490 So.2d 947 (Fla. 1986). The rules will be printed in both this year's edition of the bar Journal and the West rules pamphlet.
We express our thanks to all members and officers of the bar who worked on these revisions and who favored the Court with their comments and suggestions regarding the proposed rules. These rules will become effective at 12:01 a.m., January 1, 1987, and we urge all members of the bar to familiarize themselves with these new rules.
It is so ordered.
McDONALD, C.J., and ADKINS, BOYD, OVERTON, EHRLICH, SHAW and BARKETT, JJ., concur.

ON REHEARING GRANTED
The board of governors of the Florida Bar has filed a petition for rehearing or clarification regarding this Court's adoption of new bar rules. The board seeks amendment of the opinion itself as to the applicability of the new rules as well as changes in the text of the rules to correct errors in and omissions from the rules as submitted by the board and requests rewording of several provisions. After reviewing these matters we adopt the changes set out in the petition.
The last sentence of our original opinion is revised to read as follows:
These rules will become effective at 12:01 a.m. on January 1, 1987. Thereafter, the Rules Regulating the Florida Bar shall govern the conduct of all members of the Florida Bar. All disciplinary cases pending as of 12:01 a.m. January 1, 1987 shall thereafter be processed in accordance with the procedures set forth in the Rules Regulating the Florida Bar. We urge all members of the bar to familiarize themselves with these new rules.
The individual pages of the rules affected by the changes adopted hereby are attached to this rehearing opinion.[**]
It is so ordered.
McDONALD, C.J., and ADKINS, BOYD, OVERTON, EHRLICH, SHAW and BARKETT, JJ., concur.

*979 RULES REGULATING THE FLORIDA BAR

Chapter 1

GENERAL
The Supreme Court of Florida by these rules establishes the authority and responsibilities of The Florida Bar, an official arm of the Court.
1-1 Name. The name of the body regulated by these rules shall be THE FLORIDA BAR.
1-2 Purpose. The purpose of The Florida Bar shall be to inculcate in its members the principles of duty and service to the public, to improve the administration of justice, and to advance the science of jurisprudence.
1-3 Membership.
1-3.1 Composition. The membership of The Florida Bar shall be composed of all persons who are admitted by this Court to the practice of law in this state and who maintain their membership in good standing pursuant to these rules.
1-3.2 Active members. Active members of The Florida Bar in good standing shall mean only those persons licensed to practice law in Florida who have paid annual membership fees or dues for the current year and who are not retired, resigned, delinquent or suspended members. A practicing attorney of another state, in good standing, who has professional business in a court of record of this state may, upon motion, be permitted to practice for the purpose of such business upon such conditions as the court deems appropriate under the circumstances of the case.
1-3.3 Official bar address. Each member of The Florida Bar shall designate an official bar mailing address and business telephone number. If the address given is not the physical location or street address of the principal place of employment, then such information shall also be given. Each member shall promptly notify the executive director of any changes in any information required by this rule.
1-3.4 Resignation. A member of The Florida Bar in good standing may, upon petition to and with the approval of the board of governors, resign from The Florida Bar and thereupon, unless again admitted or reinstated, shall not practice law in this state nor be entitled to any privileges and benefits accorded to active members of The Florida Bar in good standing.
1-3.5 Retirement. Any member of The Florida Bar who shall have attained the age of seventy (70) years of age or who shall have practiced law in the State of Florida for thirty-five (35) years or who shall establish under rules of procedure adopted by the board of governors that the member is physically disabled to the extent that the member cannot engage in the practice of law may retire from The Florida Bar upon certification by the board of governors that such member meets the requirements of this rule and thereupon, unless again admitted or reinstated, shall not practice law in this state. A retired member shall be entitled to receive such other privileges as the board of governors may authorize.
1-3.6 Delinquent members. Any person now or hereafter licensed to practice law in Florida who fails to pay dues as provided herein shall be deemed a delinquent member. While occupying the status of a delinquent member, no person shall engage in the practice of law nor be entitled to any privileges and benefits accorded to active members of The Florida Bar in good standing.
1-3.7 Reinstatement to active membership.
(a) Persons who have become delinquent members or persons who have retired or resigned from membership in The Florida Bar for a period of time not in excess of five (5) years may be reinstated to active membership by the board of governors. The applicant must file a petition with the board of governors setting forth the reason for such resignation, retirement, or delinquency and showing good cause why the petition for reinstatement should be granted. The petition shall be on a form approved *980 by the board of governors and the petitioner shall furnish such information on such form as the board of governors may require. The petition shall be accompanied by a nonrefundable reinstatement fee of $50.00, payment of all arrearages, and, for persons who have resigned or retired or have been delinquent for a period of time longer than three (3) years, a $500.00 cost deposit for investigation of the petition. No member shall be reinstated if, from the petition or from investigation conducted, the petitioner is not of good moral character and morally fit to practice law.
(b) The following procedures shall apply:
(1) Persons who have resigned or retired or have been delinquent for less than three (3) years may be reinstated by the executive director under guidelines provided by the board of governors or the executive director may refer the petition for consideration by the board of governors.
(2) Persons who have resigned or retired or have been delinquent for less than five (5) years who have not maintained an association with the practice of Florida law and those persons who have resigned or retired or have been delinquent for a period from three (3) years to five (5) years who have maintained an association with the practice of Florida law may be required by the board of governors to successfully complete continuing legal education courses or successfully complete all or a portion of the Florida Bar examination before being reinstated to active membership.
(3) Final action of the board of governors denying a petition for reinstatement may be reviewed upon petition to the Supreme Court of Florida.
(c) Persons who have resigned or retired or have been delinquent for a period of five (5) years or longer shall not be reinstated except upon application to and approval by the Florida Board of Bar Examiners.
1-3.8 Right to inventory.
(a) Whenever an attorney is suspended, disbarred, becomes a delinquent member, abandons his practice, disappears, or dies and no partner, personal representative, or other responsible party capable of conducting the attorney's affairs is known to exist, the appropriate circuit court, upon proper proof of the fact, may appoint an attorney or attorneys to inventory the files of the subject attorney and to take such action as seems indicated to protect the interests of clients of the subject attorney, as well as the interest of that attorney.
(b) Any attorney so appointed shall not disclose any information contained in files so inventoried without the consent of the client to whom such file relates except as necessary to carry out the order of the court which appointed the attorney to make the inventory.
1-3.9 Law faculty affiliates. Full-time faculty members in the employment of law schools in Florida approved by the American Bar Association who are admitted to practice and who are in good standing before a court of any state may become "law faculty affiliates" of The Florida Bar. Law faculty affiliates may participate in such activities of The Florida Bar as may be authorized by the board of governors, but shall not be entitled to engage in the practice of law, appear as attorneys before the courts of the state, or hold themselves out as possessing such entitlements.
1-4 Board of governors.
1-4.1 Composition of board of governors. The board of governors shall be the governing body of The Florida Bar. It shall consist of the president and the president-elect of The Florida Bar, president and president-elect of the Young Lawyers Division, two (2) representatives of the active members of The Florida Bar residing outside of the State of Florida, representatives elected by and from the active members of The Florida Bar in each judicial circuit, and two (2) residents of the State of Florida who are not members of The Florida Bar. There shall be one such circuit representative from each judicial circuit and fourteen (14) additional circuit representatives who shall be apportioned among and elected from the judicial circuits on the basis of the number of members in good standing residing in each circuit. The formula for determining *981 the number of additional circuit representatives apportioned to and elected from each judicial circuit and all other matters concerning election and term of office for members of the board of governors shall be prescribed in chapter 2.
1-4.2 Authority; supervision.
(a) The board of governors shall have the authority and responsibility to govern and administer The Florida Bar and to take such action as it may consider necessary to accomplish the purposes of The Florida Bar, subject always to the direction and supervision of the Supreme Court of Florida.
(b) The board of governors shall furnish to each member of the Supreme Court of Florida the following:
(1) The minutes of each meeting of the board of governors of The Florida Bar and each meeting of its executive committee except when acting in a prosecutorial role in a disciplinary or unauthorized practice of law matter.
(2) Any written report of any section, committee, or division of The Florida Bar submitted to the board of governors which is either accepted or adopted by the board.
(3) All rules, policies, or procedures adopted by the board of governors under the authority granted to the board by the Court.
(4) Such additional information and material as may be requested by any member of the Court.
(c) The Supreme Court of Florida may at any time ratify or amend action taken by the board of governors under these rules, order that actions previously taken be rescinded, or otherwise direct the actions and activities of The Florida Bar and its board of governors.
1-4.3 Committees. The board of governors shall create an executive committee composed of the president, president-elect, chairman of the budget committee, two (2) members of the board appointed by the president, and two (2) members of the board elected by the board to act upon such matters as arise and require disposition between meetings of the board; a budget committee composed of nine (9) members with three-year staggered terms; grievance committees as provided for in chapter 3; unlicensed practice of law committees as provided for in chapter 10; and a professional ethics committee.
1-4.4 Board committees. The board may create and abolish additional committees as it may consider necessary to accomplish the purposes of The Florida Bar.
1-4.5 Sections. The board of governors may create and abolish sections as it may consider necessary or desirable to accomplish the purposes and serve the interests of The Florida Bar and of the sections and shall prescribe the powers and duties of such sections. The bylaws of any section shall be subject to approval of the board of governors.
1-5 Officers.
1-5.1 Officers. The officers of The Florida Bar shall be a president, a president-elect, and an executive director.
1-5.2 Duties. Chapter 2 shall prescribe the duties, terms of office, qualifications, and manner of election or selection of officers of The Florida Bar.
1-6 Meetings of The Florida Bar.
1-6.1 Annual meeting. An annual meeting of The Florida Bar shall be held each fiscal year at such time as may be designated by the board of governors.
1-6.2 Special meetings. Special meetings of The Florida Bar may be held at such times and places as may be determined by the board of governors or upon petition of five (5) percent of the membership of The Florida Bar.
1-6.3 Notice; rules of procedure. The manner of notice and rules of procedure for all meetings of The Florida Bar shall be prescribed in chapter 2.
1-7 Dues and fiscal control.
1-7.1 Budget. The board of governors shall adopt a proposed budget for The Florida Bar in advance of each fiscal year, publish such proposed budget in a publication *982 of The Florida Bar generally circulated to members, and thereafter adopt a budget for the succeeding fiscal year. The budget adopted by the board of governors shall be filed with the Supreme Court of Florida thirty (30) days prior to the beginning of each fiscal year and shall be deemed approved and become the budget of The Florida Bar unless rejected by the Supreme Court of Florida within said thirty-day period or until amended by the board of governors in accordance with rule 2-6.12.
1-7.2 Officer's salary. No member of the board of governors and no officer of The Florida Bar other than the executive director shall receive a fee or salary from The Florida Bar.
1-7.3 Dues.
(a) On or before July 1 of each year, every active member of The Florida Bar shall pay annual dues to The Florida Bar in the amount set by the budget, provided that the board of governors shall not fix the dues at more than $140 per annum. Dues tendered to The Florida Bar shall not be accepted from any member who is delinquent in the payment of costs imposed against the member in a disciplinary proceeding. Costs shall be deemed delinquent unless paid within thirty (30) days after the disciplinary decision becomes final unless such time is extended by the board of governors for good cause shown. At the time of the payment of dues every member of The Florida Bar shall file with the executive director a statement setting forth any information that may be required by the board of governors.
(b) Persons admitted to The Florida Bar subsequent to July 1 of any fiscal year shall pay the annual dues for that year prorated on the basis of the number of full calendar months of the fiscal year remaining at the time of their admission.
(c) Payment of annual dues must be postmarked no later than August 15. Dues postmarked after August 15 shall be accompanied by a late charge of $25.00. The executive director shall send written notice by registered or certified mail to the last official bar address of each member whose dues have not been paid by August 15. Upon failure to pay dues and any late charges by September 30, the member shall be a delinquent member.
1-7.4 Procedures. Other matters relating to the budget and fiscal control shall be governed by chapter 2.
1-7.5 Retired, resigned, delinquent members. A member who is retired, resigned, or delinquent shall not practice law in this state until reinstated as provided in these rules.
1-8 Programs and functions.
1-8.1 Responsibility of board of governors. Among its other duties, the board of governors is charged with the responsibility of enforcing the Rules of Discipline and the Rules of Professional Conduct.
1-8.2 Unlicensed practice of law. The board of governors shall act as an arm of the Supreme Court of Florida for the purpose of seeking to prohibit the unlicensed practice of law by investigating, prosecuting, and reporting to this Court and to appropriate authorities incidents involving the unlicensed practice of law in accordance with chapter 10.
1-8.3 Board of certification and designation. The board of governors shall establish the board of certification and designation to function as a central administrative board to oversee specialization regulation in Florida in accordance with chapter 6.
1-8.4 Clients' security fund. The board of governors may provide monetary relief to persons who suffer reimbursable losses as a result of misappropriation, embezzlement, or other wrongful taking or conversion by a member of The Florida Bar of money or other property that comes into the member's possession or control, all in accordance with chapter 7.
1-9 Young Lawyers Division.
1-9.1 Creation. There shall be a division of The Florida Bar known as the Young Lawyers Division composed of all active members under the age of thirty-six (36) and all active members who have not been *983 admitted to the practice of law in any jurisdiction for more than five (5) years.
1-9.2 Powers and duties. The division shall have such powers and duties as shall be prescribed by the board of governors of The Florida Bar.
1-9.3 Bylaws. The bylaws of the division shall be subject to approval of the board of governors.
1-10 Rules of Professional Conduct.
1-10.1 Compliance. All members of The Florida Bar shall comply with the terms and the intent of the Rules of Professional Conduct as established and amended by this Court.
1-11 Bylaws.
1-11.1 Generally. Bylaws, contained in chapter 2, not inconsistent with these rules shall govern the method and manner by which the requirements of these Rules Regulating The Florida Bar are met.
1-11.2 Amendment. The bylaws in chapter 2 shall be amended as prescribed in rule 2-10. Chapter 2 shall provide a reasonable means by which members of The Florida Bar may propose amendments of the bylaws to the board of governors and to this Court.
1-11.3 Notice of amendment. Notice of consideration of proposed amendments to chapter 2 by the board of governors of The Florida Bar shall be given to the members of The Florida Bar. Amendments to chapter 2 adopted by the board of governors shall become effective fifty (50) days after the amendment and proof of the prescribed publication are filed with this Court unless a later effective date is provided for by the board of governors or unless otherwise ordered by the Court. The Court will consider objections to amendments to chapter 2 adopted by the board of governors which are filed with the Court before the effective date of the amendment.
1-11.4 Supervision by Court. This Court may at any time amend chapter 2 or modify amendments to chapter 2 adopted by the board of governors or order that amendments to chapter 2 not become effective or become effective at some date other than provided for in this rule.
1-12 Amendments.
1-12.1 Amendment to rules; notice. Petitions for revision of or amendments to these Rules Regulating The Florida Bar, other than chapters 2, 7, and 9, will be entertained by this Court when presented by the board of governors or by not fewer than fifty (50) active members of The Florida Bar. Notice of intention to file such petition on a specified date together with a copy of the proposed amendment shall be published in The Florida Bar News not less than thirty (30) days prior to the filing of such petition. The Court will thereafter accept objections or comments on such petition.

Chapter 2

BYLAWS OF THE FLORIDA BAR
2-1 Seal, emblems, and publicity symbols.
2-1.1 Seal. The official seal of The Florida Bar shall be inscribed "The Florida Bar" on upper circular portion, "1950" on lower circular portion, with the official state seal occupying center portion.
2-1.2 Publicity symbol. The publicity symbol for The Florida Bar to be placed on publicity of The Florida Bar shall consist of outline of Florida map, scales of justice, book, and gavel. "The Florida Bar" shall be set in circular fashion around the symbol.
2-1.3 Usage. The usages of the seal, emblems, and publicity symbols of The Florida Bar shall be determined by the board of governors.
2-2 Membership.
2-2.1 Attaining active membership. Persons shall initially become active members of The Florida Bar only upon certification by the Court in accordance with the rules governing the Florida Board of Bar Examiners.
2-2.2 Law faculty affiliates. Law faculty affiliates shall pay fees as set by the board of governors, shall be entitled to *984 receive The Florida Bar Journal and the Florida Bar News, and shall have such other privileges and benefits of members of The Florida Bar as the board of governors shall authorize. The executive director shall issue to law faculty affiliates such special identification card as may be authorized by the board of governors.
2-2.3 List of active members. The executive director shall furnish the chief judge of each circuit and the clerk of each court a list of all active members in good standing and shall furnish corrections and additions to such list as occasion may require.
2-3 Board of governors.
2-3.1 Generally. The board of governors shall be the governing body of The Florida Bar. The board of governors shall have the power and duty to administer the Rules Regulating The Florida Bar, including the power to employ necessary personnel. Subject to the authority of the Supreme Court of Florida, the board of governors, as the governing body of The Florida Bar, shall be vested with exclusive power and authority to formulate, fix, determine, and adopt matters of policy concerning the activities, affairs or organization of The Florida Bar. The board of governors shall be charged with the duty and responsibility of enforcing and carrying into effect the provisions of the Rules Regulating The Florida Bar and the accomplishment of the aims and purposes of The Florida Bar. The board of governors shall direct the manner in which all funds of The Florida Bar are disbursed and the purposes therefor and shall adopt and approve a budget for each fiscal year. The board of governors shall perform all other duties imposed under the Rules Regulating The Florida Bar and shall have full power to exercise such functions as may be necessary, expedient, or incidental to the full exercise of any powers bestowed upon the board of governors by said rules or any amendment thereto or by this chapter.
2-3.2 Powers. Subject to the continued direction and supervision by the Supreme Court of Florida, the board of governors may, by amendment to this chapter, take all necessary action to:
(a) Make nominations to or appointments to associations or other entities as required by the Rules Regulating The Florida Bar, this chapter, and any rules or policies adopted by the board of governors in accordance therewith or as required by law.
(b) Establish and support the foundation known as The Florida Bar Foundation for charitable, scientific, literary, and educational purposes.
(c) Establish, maintain, and supervise:
(1) A lawyer referral service;
(2) Programs for providing continuing legal education for its members;
(3) The publication of a newspaper, a magazine, and other publications for its members, affiliates, and the public;
(4) A program for providing information and advice to the courts and all other branches of government concerning current law and proposed or contemplated changes in the law;
(5) A program of cooperation with the faculty of accredited Florida law schools; and
(6) A program for providing pre-paid legal services.
2-3.3 Formula for apportionment of members of board of governors. The formula for determining the number of representatives apportioned to and elected from each judicial circuit shall be: determine the average number of members in good standing residing in each judicial circuit by dividing the number of Florida resident members in good standing by the total number of judicial circuits and then divide the members in good standing residing in each circuit by such average. Apportionment of representatives among the judicial circuits shall be in accordance with the results thus obtained by apportioning each judicial circuit one representative for each multiple of one (including one) of the results obtained *985 for such circuit, provided such number does not exceed fourteen (14), and one representative for the circuit's remaining fraction of a multiple commencing with the largest such fraction and continuing in descending order to the next largest fraction and so on until all representatives of this category shall be apportioned to judicial circuits. In the event the sum of the whole integers so determined exceeds fourteen (14), the circuits whose results show whole integers from the application of the formula shall be determined by eliminating one representative for the lowest fraction of a whole integer among such circuits and continuing in ascending order until fourteen (14) is reached.
2-3.4 Annual apportionment.
(a) The executive director shall each year as of October 1 determine from the official records of The Florida Bar the number of active members of The Florida Bar residing in each judicial circuit. The executive director shall thereafter determine by application of the formula in rule 2-3.3 the number of members of the board of governors to serve from each judicial circuit. The executive director shall file a certificate setting forth the above information with the clerk of the Supreme Court of Florida and shall cause a copy of such certificate to be published in The Florida Bar News on or before November 1 of each year. The certificate shall be published in the format of rule 2-3.5(a). The reapportionment established by the terms of such certificate shall automatically amend rule 2-3.5(a) on December 1 unless the Supreme Court of Florida orders otherwise.
(b) No elected member of the board of governors shall serve less than the full term to which elected by reason of any reapportionment required by paragraph (a).
2-3.5 Nomination of members.
(a) Staggered terms. Elections shall be held in even-numbered years for nonresident representative seat number 2 and the following circuit representatives:

 Circuit Circuit
 (Office Number) (Office Number)
 1 11(3)
 2(2) 11(5)
 3 12(2)
 4(1) 13(1)
 6(1) 14
 7 15(1)
 9(1) 17(1)
 10 18
 11(1) 20

Elections shall be held in odd-numbered years for nonresident representative seat number 1 and for the following circuit representatives:

 Circuit Circuit
 (Office Number) (Office Number)
 2(1) 11(6)
 4(2) 12(1)
 5 13(2)
 6(2) 15(2)
 8 16
 9(2) 17(2)
 11(2) 17(3)
 11(4) 19

As additions or deletions of circuit representatives resulting from the application of the formula provided in this rule necessitate changes in the lists set forth above, both in circuit and office numbers, such changes shall be made by the executive director as appropriate and shall be published in The Florida Bar News by November 1.
(b) Time for filing nominating petitions. Nominations for the election of representatives on the board of governors from each judicial circuit shall be made by written petition signed by not fewer than five (5) active members of The Florida Bar in good standing. In each circuit in which there is more than one representative to be elected, the offices of the representatives shall be designated numerically, with the executive director making whatever adjustments are necessary to reflect changes resulting from the annual certification, and a nominating petition shall state the number of the office sought by a nominee. Any number of candidates may be nominated on a single petition, and any number of petitions may be filed, but all candidates named in a petition and all members signing *986 such petition shall have their official bar address in the judicial circuit which the candidate is nominated to represent and shall be active members of The Florida Bar in good standing. Nominations for election of a nonresident member of the board of governors shall be by written petition signed by not fewer than five (5) active nonresident members of The Florida Bar in good standing. Nominees shall endorse their written acceptance on such petitions but no nominee shall accept nomination for more than one office. All nominating petitions shall be filed with the executive director at the headquarters office on or before 5:00 p.m., January 10 of the year of election. On a date to be fixed by the executive director the nominating petition shall be canvassed and tabulated by the executive director and the clerk of the Supreme Court of Florida, and the executive director and the clerk of the Supreme Court of Florida shall thereupon certify in writing the names of all members who have been properly nominated.
(c) Nomination and appointment of nonlawyer members. The board of governors members who are not members of The Florida Bar shall be chosen and appointed by the Supreme Court of Florida from the list of nominees to be filed with the Court by the board of governors. The board of governors of The Florida Bar by majority vote shall nominate three (3) persons for each nonlawyer seat and shall file the nominations with the Supreme Court of Florida on or before April 15 of the appointment year for that seat. The two (2) nonlawyer members shall serve staggered terms of two (2) years and shall serve no more than two (2) terms. In order to stagger the terms of office for nonlawyer board members, the first appointment for nonlawyer seat number 2 shall be for a one-year term.
2-3.6 Election. Voting shall be by secret ballot. The executive director shall prepare and cause to be printed a sufficient number of ballots for the election of nonresident board members and for each judicial circuit office for which an election is to be held. One of such ballots shall be mailed to each active member of The Florida Bar in good standing in each of such judicial circuits and to each active nonresident member of The Florida Bar in good standing in the case of election of a nonresident board member. The records of the executive director shall be conclusive in determining the members entitled to receive such ballots. When more than one office is to be filled, the offices shall be listed on the ballots in numerical order. The names of candidates on the ballots shall be listed alphabetically for each office. The ballots shall be mailed on or before March 1. Only voted ballots received by the executive director prior to midnight on March 21 shall be counted or tabulated. Immediately after March 21, the executive director and the clerk of the Supreme Court of Florida shall canvass and tabulate the ballots received and certify the results of the election. Failure to make a nomination shall result in a vacancy to be filled in accordance with the provisions of rule 2-3.9. The candidate for an office receiving a majority of the votes cast for the office shall be declared elected. In the event no candidate receives such majority there shall be a runoff election between the two (2) candidates receiving the highest number of votes. The ballots for the runoff shall be mailed on or before April 1 and the voted ballots shall be received by the executive director prior to midnight on April 22. The ballots shall be counted and the results certified as provided for the first election. In the event that only one candidate has been nominated for a particular office on the board of governors, such candidate shall be declared elected. Results of the election shall be furnished by the executive director to the officers, members of the board of governors, and all candidates and may be furnished to any other interested persons upon their request.
2-3.7 Term. The term of office for those persons regularly elected or appointed is two (2) years and thereafter until a successor's term commences. The term commences at the conclusion of the annual meeting of The Florida Bar following election *987 or appointment to office. The term of office for those persons elected or appointed to fill a vacancy shall run for the balance of the term.
2-3.8 Removal. Any member of the board of governors may be removed for cause by resolution adopted by two-thirds of the entire membership of the board of governors.
2-3.9 Vacancy. Except for nonlawyer members, in the event of a vacancy on the board of governors the vacancy shall be filled by a special election within the framework of the pertinent election procedures presently existing under these rules relating to the election of members of the board of governors. Notice of the vacancy and the special election shall be given by publication in The Florida Bar News, which notice shall provide that nominating petitions must be filed within thirty (30) days of the date of the publication of the notice with the executive director. The special election shall be held not less than thirty (30) days and not more than forty-five (45) days after the publication of the notice. The procedures set forth in these rules for election shall be followed as closely as possible. In the event of a vacancy on the board of governors for a nonlawyer member, the vacancy shall be filled by special nomination and appointment in accordance with the provisions of rule 2-3.5(c).
2-3.10 Meetings. The board of governors shall hold six (6) regular meetings each year, at least one of which shall be held at The Florida Bar Center. Subject to the approval of the board of governors, the places and times of such meetings shall be determined by the president, who may make such designation while president-elect. Special meetings shall be held at the direction of the executive committee or the board of governors. Any active member of The Florida Bar in good standing may attend meetings at any time except during such times as the board shall be in executive session concerning disciplinary matters, personnel matters, or receiving attorney-client advice. Minutes of all meetings shall be kept by the executive director.
2-3.11 Quorum. A majority of the members of the board of governors shall constitute a quorum for the transaction of business at all meetings.
2-3.12 Executive committee. Unless otherwise limited by these rules, the executive committee shall have full power and authority to exercise the function of the board of governors:
(a) To the extent authorized by the board of governors on any specific matter; and
(b) On any other matter which necessarily must be determined between meetings of the board of governors. The executive committee shall notify the board of governors at the next meeting of all actions taken by the executive committee during the interim between meetings of the board of governors. Unless modified by the board of governors at such meeting, actions of the executive committee shall be final.
2-4 Officers.
2-4.1 Duties of president. The president shall conduct and preside at all meetings of The Florida Bar and the board of governors. The president shall be the official spokesman for The Florida Bar and the board of governors. Unless otherwise provided herein, the president shall appoint all committees. The president shall be the chief executive of The Florida Bar and shall be vested with full power to exercise whatever functions may be necessary or incident to the full exercise of any power bestowed upon the president by the board of governors consistent with the provisions of these Rules Regulating The Florida Bar. It shall be the duty and obligation of the president to furnish leadership in the accomplishment of the aims and purposes of The Florida Bar.
2-4.2 Duties of president-elect. It shall be the duty of the president-elect to render every assistance and cooperation to the president and provide the president with the fullest measure of counsel and advice. The president-elect shall familiarize himself with all activities and affairs of The Florida Bar and shall have such other duties as *988 may be assigned to the president-elect by the board of governors. In the event the president-elect is absent or unable to act, or in the event of the president-elect's death, disability, or resignation, the board of governors shall select an acting president-elect to hold office until a successor shall have been elected by the active members of The Florida Bar in good standing at a special election held pursuant to the direction of the board of governors.
2-4.3 Duties of executive director. The executive director shall be chosen by the board of governors and shall perform all duties usually required of a secretary and a treasurer and such other duties as may be assigned to him by the board of governors. The executive director shall serve as publisher of The Florida Bar Journal and The Florida Bar News and as director of public relations until otherwise directed by the board of governors. The executive director shall keep the records of The Florida Bar and the board of governors. The executive director shall maintain and be in charge of the offices and shall devote his or her full time to the work of The Florida Bar. The board shall fix his or her salary and other benefits and emoluments of office.
2-4.4 Qualifications for office. Only active members of The Florida Bar in good standing shall be eligible to hold any elective office in The Florida Bar. No officer shall engage in political activity on behalf of a candidate for public office except in furtherance of the objectives of The Florida Bar and with the approval of the board of governors.
2-4.5 Nominations for president-elect. Any active member of The Florida Bar in good standing may be nominated as a candidate for president-elect by petition signed by not fewer than one hundred (100) other active members of The Florida Bar in good standing. Such nominating petitions shall be filed with the executive director at the headquarters office on or before 5:00 p.m., January 10 of the year of the election. Nominees shall endorse their written acceptance upon such petition. No member shall sign more than one nominating petition, but signers need not reside in the same judicial circuit as the candidate. In the event that no active member of The Florida Bar in good standing shall be nominated by petition in accordance with the foregoing, the board of governors shall thereafter nominate at least one candidate for the office of president-elect.
2-4.6 Election of president-elect. The active members of The Florida Bar in good standing shall elect annually a president-elect, who shall become president at the conclusion of the annual meeting following his term as president-elect. Such ballots cast at such election shall be marked and returned by the voting members and thereafter canvassed and the results certified as provided by rule 2-3.6. The names of all candidates nominated for president-elect, either by petition or by the board of governors, shall be listed alphabetically on the official ballot. The candidate receiving a majority of the votes cast shall be elected. If no candidate receives a majority, then a further ballot shall be mailed listing only the two (2) candidates receiving the highest number of votes cast. The procedure, time, canvassing, and certification of results in connection with the election of a president-elect shall be in accordance with the provision of this chapter governing the election of members of the board of governors, except that the election shall be by the entire membership.
2-4.7 President's absence. In the event the president is absent or unable to act, his duties shall be performed by the president-elect; and in the event of the death or resignation of the president, the president-elect shall serve as president during the remainder of the term of office thus vacated and then shall serve as president for the term for which elected. In the event of the death or disability of both the president and the president-elect, the board of governors shall elect an acting president of The Florida Bar to hold office until the next succeeding annual meeting.
2-4.8 Prohibition against service on board of governors and as president or president-elect. In the event that a member *989 of the board of governors shall become either the president or the president-elect of The Florida Bar such member shall not serve on the board of governors except as president or president-elect and the office of that member shall become vacant and shall be filled in accordance with the provisions of this chapter.
2-5 Meetings.
2-5.1 Annual meeting. A program for the annual meeting of The Florida Bar shall be prepared by the president, with the advice and consent of the board of governors. Such program, when approved by the board of governors, shall be the order of business for the annual meeting and such order of business shall not be altered, except by consent of two-thirds of the active members present and voting. Only the president, with the advice and consent of the board of governors, shall have the authority to extend invitations to nonmembers to attend the annual meeting as honored guests or speakers at the expense of The Florida Bar. No section or committee shall create any debt of The Florida Bar in connection with an annual meeting without prior approval of the board of governors. All papers, addresses, and reports read before or submitted at a meeting shall become the property of The Florida Bar and may be published by The Florida Bar. A registration fee for attendance at the annual meeting may be fixed by the board of governors to defray the costs and expenses in connection with such meeting.
2-5.2 Rules of procedure. Only active members of The Florida Bar in good standing shall be entitled to vote at the annual meeting. A resolution for consideration at the annual meeting may be proposed by any active member or by the resolutions committee, provided that the resolution shall be presented, handled in accordance with procedures which shall be established by the board of governors, and published in The Florida Bar Journal or The Florida Bar News a reasonable length of time prior to each annual meeting. Unless indicated on the official program, no person shall speak for more than ten (10) minutes or more than twice on any matter, except upon consent of a majority of the active members present and voting at the meeting. Members of the bar of any foreign country or any state, district, or territory, who are not active members of The Florida Bar, may be accorded the privilege of the floor at any annual meeting.
2-6 Fiscal management.
2-6.1 Expenditures. Within the parameters of the budget filed with the Supreme Court of Florida, the board of governors shall be vested with exclusive powers, authority, and control over all funds, property, and assets of The Florida Bar and the method and purpose of expenditure of all funds.
2-6.2 Fiscal year. The fiscal year of The Florida Bar shall commence on July 1 of each year.
2-6.3 Annual budget. The board of governors, with the advice and counsel of the budget committee, shall adopt an annual budget of The Florida Bar, setting forth the anticipated revenues and expenditures for the fiscal year.
2-6.4 Budget committee. The budget committee shall consist of nine (9) members having staggered terms. The president-elect, with the approval of the board of governors, shall appoint three (3) members to three-year terms, shall fill vacancies for the balance of a term, and shall name a chairman-elect from the members of the committee. The chairman-elect shall become chairman when the president-elect becomes president and he or she shall serve as a tenth member of the committee if his or her term on the committee would otherwise expire.
2-6.5 Notice of budget committee hearings. The executive director shall publish a notice in The Florida Bar Journal or The Florida Bar News not later than a March issue giving notice of meetings of the budget committee in each of the districts of the district courts of appeal to receive suggestions from members of The Florida Bar for the preparation of the budget for the succeeding fiscal year. Such meetings shall *990 be held not earlier than the fifteenth day of the month succeeding the month in which the notice is published. Written notice of intent to appear at such meetings must be received by the executive director at least ten (10) days prior to the date of the meeting. If no person files such a notice, the meeting may be canceled.
2-6.6 Tentative budget of budget committee. At the meeting announced by such published notice, the budget committee shall hear and receive suggestions from members of The Florida Bar for the preparation of the budget for The Florida Bar for the succeeding fiscal year. The manner of filing and hearing such suggestions shall be set forth in the notice. After consideration of the suggestions received, the budget committee shall prepare a tentative budget for the succeeding fiscal year, which shall be filed with the executive director.
2-6.7 Proposed budget of board of governors. The board of governors, after considering the tentative budget prepared by the budget committee, shall adopt a proposed budget for the succeeding fiscal year in time to allow publication thereof not later than an April issue of The Florida Bar Journal or The Florida Bar News.
2-6.8 Dues. The dues of active members of The Florida Bar shall be included in the proposed budget filed by The Florida Bar in the Supreme Court of Florida.
2-6.9 Notice of board of governors hearing upon proposed budget. The executive director shall publish a notice in The Florida Bar Journal or The Florida Bar News not later than an April issue giving notice of a meeting of the board of governors to be held no earlier than the fifteenth day of the month succeeding the month the notice is published. Such notice shall contain the proposed budget and shall advise that the proposed budget shall become final unless written objections to any item or items therein shall be filed by members of The Florida Bar with the executive director on or before the tenth day of the month following the month of publication.
2-6.10 Hearing and adoption of budget by board of governors. If written objections to any item or items of the proposed budget are filed by members of The Florida Bar within the time provided, a hearing thereon shall be held by the board of governors at the time and place provided in such notice. After such hearing the board of governors shall consider the objections filed and upon consideration thereof the board may amend the proposed budget within the scope of the objections.
2-6.11 Filing of budget with the Supreme Court of Florida. The budget proposed by the board of governors shall be filed with the Supreme Court on or before June 1 and shall become effective unless rejected by the Court within thirty (30) days.
2-6.12 Amendment of the budget. The board of governors, in its discretion from time to time, may amend the budget in order to provide funds for needed expenditures; provided, however, that the total of increases in items of the budget made by amendment, including new items created by such amendments, shall not exceed ten (10) percent of the total income of The Florida Bar for the current fiscal year as anticipated at the time of the amendment. If a proposed amendment shall cause the total of increases in items of the budget made by amendment to exceed such limitation, a hearing upon objections to any item or items therein shall be held by the board of governors in like manner as that provided for the proposed budget. The executive director shall publish a notice in The Florida Bar Journal or The Florida Bar News giving notice of a board of governors meeting to be held no earlier than the fifteenth day of the month succeeding the month in which the notice is published. Such notice shall contain the proposed amendment and shall advise that the proposed amendment shall become final unless written objections to any item or items therein shall be filed by members of The Florida Bar with the executive director on or before the tenth day of the month following the month of publication. If the proposed amendment is adopted by the board of governors in whole *991 or in part, the amendment of the budget shall be filed with the Supreme Court of Florida within the month following the month in which the amendment is adopted.
2-6.13 Appropriations of the budget. Each item of the budget shall be deemed a fixed appropriation, subject only to amendment as provided. All uncommitted balances of appropriations except appropriated restrictions of fund balances shall revert at the end of each fiscal year to the funds from which appropriated. No uncommitted appropriations other than those for the clients' security fund shall continue beyond the fiscal year for which the budget containing the appropriation is adopted.
2-6.14 Disbursements. The appropriations of the budget shall be disbursed by the executive director in his capacity as treasurer of The Florida Bar in accordance with this chapter. The executive director shall make such disbursements as are required to pay the obligations and expenses of The Florida Bar made within the provisions of the budget.
2-6.15 Continuation of funding. Any program which calls for an expenditure of funds in excess of $10,000 during any fiscal year shall not be continued beyond the last day of the second of two (2) fiscal years unless such program is specifically authorized by this or other chapters of the Rules Regulating The Florida Bar.
2-6.16 Accounting and audit. The board of governors shall cause books and accounts to be kept in accordance with good accounting practices. Such records shall be audited annually by a certified public accountant authorized to practice in the State of Florida, and a copy of the audit shall be filed forthwith with the Supreme Court of Florida. Within a reasonable time after completion of the audit a condensed summary thereof shall be published in The Florida Bar Journal or The Florida Bar News and a copy filed with the Supreme Court of Florida.
2-7 Sections.
2-7.1 Rules applicable to sections. All sections are governed by the provisions of the Rules Regulating The Florida Bar, this chapter, and the bylaws of the sections as approved by the board of governors and have the scope, powers, duties, and functions expressed in those documents.
2-7.2 Duties. It is the duty of each section, as an integral part of The Florida Bar, to work in cooperation with the board of governors and under its supervision toward accomplishment of the aims and purposes of The Florida Bar and of that section.
2-7.3 Creation of sections. Sections may be created or abolished by the board of governors as deemed necessary or desirable. The following sections of The Florida Bar have been created by the board of governors:
(a) Administrative Law Section
(b) Corporation, Banking and Business Law Section
(c) Criminal Law Section
(d) Law Offices Economics Section
(e) Environmental and Land Use Law Section
(f) Family Law Section
(g) General Practice Section
(h) International Law Section
(i) Labor and Employment Law Section
(j) Local Government Law Section
(k) Real Property, Probate and Trust Law Section
(l) Tax Section
(m) Trial Lawyers Section
(n) Workers Compensation Section
2-7.4 Procedure for creation of sections. Those seeking approval of the board of governors to establish a section shall prepare and submit proposed bylaws for approval by the board of governors. They shall also inform the board of governors of the justification for establishing the section, the proposed dues, proposed budgeting, and proposed function and program of the section.
2-7.5 Legislative action of sections.
(a) Sections may be involved in legislation that is significant to the judiciary, the administration of justice, or the fundamental legal rights of the public or interests of the section or its programs and functions.
*992 (b) Sections shall be required to adopt and follow a reasonable procedure, approved by the board of governors, for determination of legislative policy on any legislation.
(c) Sections shall notify the executive director immediately of determination of any section action regarding legislation.
(d) Any legislative action taken by a section shall be clearly identified as the action of the section and not that of The Florida Bar.
2-8 Committees.
2-8.1 Establishment and appointment of committees. In addition to those committees established elsewhere under this chapter or other chapters of the Rules Regulating The Florida Bar, the board of governors shall create such committees as it may deem advisable and necessary from time to time. The board of governors may dissolve a committee when it deems that the work of the committee has been completed or is no longer necessary. The board of governors may provide for members of any committee to serve for staggered terms beyond the current administrative year. Any vacancies in these committees shall be filled for the unexpired portion in order to provide a regular rotation of committee members. Before June 1 of each year, the president-elect shall appoint all committee members (except for grievance and unlicensed practice of law), who shall serve for the ensuing administrative year. The president-elect shall report the membership of committees to the board of governors and shall, with the advice and consent of the board of governors, name and designate the chairman and vice-chairman of each committee. Persons who are not members of The Florida Bar may be appointed to committees with the advice and consent of the board of governors. The president shall fill vacancies occurring in the membership of the committees for the remainder of the unexpired term and may remove or appoint additional members to a committee.
2-8.2 Committee operations. Each committee shall select from its membership such officers other than the chairman and vice-chairman as it deems advisable and subcommittees may be designated by the chairman from the membership of the committee. Each committee shall meet at such times and places as may be designated by the chairman or vice-chairman. Each committee shall file with the president and executive director all minutes, annual reports, and procedures and recommendations and such interim reports as desired or may be requested by the president or board of governors. No action, report, or recommendation of any committee shall be binding upon The Florida Bar unless adopted and approved by the board of governors.
2-8.3 Standing and special committees. The board of governors shall determine and designate which committees shall be considered as standing committees (permanent) and which committees shall be considered as special committees (temporary or limited) and shall define the specific powers, duties, functions, and scope thereof.
2-8.4 Committee finances. No committee shall incur any debt payable by The Florida Bar without prior approval of the executive director. Each committee shall file with the executive director a detailed statement setting forth any funds needed or required in connection with the work of such committee during the ensuing administrative year for consideration by and inclusion in the annual budget of The Florida Bar after approval by the board of governors.
2-9 Policies and rules.
2-9.1 Authority of board of governors. In order to accomplish the purposes of The Florida Bar and implement the Rules Regulating The Florida Bar, including this chapter, the board of governors shall have the power and authority to establish policies and rules of procedure on the subjects and in the manner provided in this rule.
2-9.2 Standing board policies. The board of governors shall adopt standing board policies governing the internal administration and operation of The Florida *993 Bar and the board of governors. The board of governors may adopt, amend, or rescind standing board policies by a majority vote of the membership of the board of governors provided any amendment to any standing board policy shall not be effective until thirty (30) days after adoption. Such standing board policies may be adopted, rescinded, or amended by a majority vote of those present at any regular meeting of the board of governors provided advance written notice is given to the members of the board of governors of the proposed adoption, repeal, or amendment of any standing board policy. The provision of any standing board policy may be waived by a two-thirds vote of those present at any regular meeting of the board of governors.
2-9.3 Legislative policies. The board of governors shall adopt and may repeal or amend rules of procedure governing the legislative activities of The Florida Bar in the same manner as provided in rule 2-9.2; provided, however, that the adoption of any legislative position shall require the affirmative vote of two-thirds of those present at any regular meeting of the board of governors or two-thirds of the executive committee or by the president, as provided in the rules of procedure governing legislative activities.
2-9.4 Ethics.
(a) Rules of procedure. The board of governors shall adopt rules of procedure governing the manner in which opinions on professional ethics may be solicited by members of The Florida Bar, issued by the staff of The Florida Bar of by the professional ethics committee, circulated or published by the staff of The Florida Bar or by the professional ethics committee, and appealed to the board of governors of The Florida Bar.
(b) Amendment. The adoption of, repeal of, or amendment to the rules authorized by paragraph (a) shall be effective only under the following circumstances:
(1) The proposed rule, repealer, or amendment shall be approved by a majority vote of the board of governors at any regular meeting of the board of governors;
(2) The proposal thereafter shall be published in The Florida Bar News at least twenty (20) days preceding the next regular meeting of the board of governors; and
(3) The proposal shall thereafter receive a majority vote of the board of governors at its meeting following publication as herein required.
(c) Waiver. The rules of procedure adopted as required in paragraph (a) may be temporarily waived as to any particular matter only upon unanimous vote of those present at any regular meeting of the board of governors.
2-9.5 Administrative policies. The executive director may adopt such policies or procedures necessary to govern the administrative operation of The Florida Bar and The Florida Bar staff, provided all policies of a continuing nature are in writing and a copy of all such policies are furnished to each member of the board of governors and available for inspection by any member of The Florida Bar at all reasonable times.
2-9.6 Rules of order. The current edition of Roberts' Rules of Order shall be the rules which govern the conduct of all meetings of The Florida Bar, its board of governors, its sections, divisions, and committees.
2-10 Amendments.
2-10.1 Proposed amendments. Any member of The Florida Bar or any interested person may propose amendments to this chapter by delivering a copy of the proposed amendment to the executive director of The Florida Bar at least ten (10) days prior to any regular meeting of the board of governors.
(a) The executive director shall furnish a copy of such proposal to each member of the board of governors at least twenty-four (24) hours before any vote on such proposed amendment is taken in the board of governors.
(b) The proposed amendment must receive the affirmative vote of a majority of the membership of the board of governors.
*994 (c) The proposed amendment shall be published in The Florida Bar News at least twenty (20) days before the meeting of the board of governors immediately following the meeting at which the proposal was approved by the board of governors.
(d) If the proposed amendment is not changed except for clerical errors, the executive director shall within five (5) days after the publication file the proposed amendment with the clerk of the Supreme Court of Florida together with a copy of the notice referred to herein and certified excerpts of the minutes of the board of governors reflecting the action of the board of governors on such proposal, said filing to be in sufficient copies that each member of the Supreme Court of Florida may be furnished a copy of such proposal.
(e) At any time within fifteen (15) days of the adjournment of the board of governors meeting following the publication of the proposed amendment, any member of The Florida Bar, any interested person, or any bar association may file with the Supreme Court of Florida objections or comments addressed to the proposed amendment.
(f) The proposed amendment shall become effective thirty (30) days after the adjournment of the board of governors meeting following publication of the rule as herein required unless:
(1) The Supreme Court orders otherwise; or
(2) A petition seeking review signed by fifty (50) members of The Florida Bar is filed with the Supreme Court of Florida prior to the effective date or fifty (50) members of The Florida Bar file objections or comments as authorized herein to specifically seek review of the proposed amendment by the Supreme Court of Florida in which event the amendment will not become effective until the expiration of ninety (90) days from the filing of the proposed amendment with the clerk of the Supreme Court unless otherwise ordered by the Court.
(g) If the board of governors shall refuse to adopt an amendment to this chapter on the subject matter of any proposal submitted in accordance with this rule, such refusal may be reviewed by the filing of a petition in the Supreme Court of Florida seeking review within ninety (90) days of the adjournment of the meeting at which the board of governors refuses the adoption of such amendment signed by fifty (50) active members of The Florida Bar.
2-10.2 Amendment at meetings of The Florida Bar. Amendments to this chapter may be adopted by a majority vote of the members present and voting at any regular or special meeting of The Florida Bar in the following manner:
(a) The proposed amendment shall be submitted to the executive director of The Florida Bar at least sixty (60) days prior to the commencement of the meeting.
(b) The proposed amendment shall be published in The Florida Bar News at least thirty (30) days before the commencement of the meeting.
(c) The proposed amendment shall be published in any official program of the meeting.
(d) Copies of the proposed amendment shall be available for distribution to the membership attending the meeting.
(e) Any proposal adopted shall be filed with the clerk of the Supreme Court together with copies of the required notices and a certificate of the executive director certifying the vote taken at the meeting.
(f) The amendment will thereafter become effective unless:
(1) The Supreme Court orders otherwise; or
(2) The board of governors of The Florida Bar by a two-thirds vote elects to file a petition seeking review of the proposed amendment with the Supreme Court of Florida in which event the amendment shall not become effective unless and until ordered by the Court.

*995 Chapter 3

RULES OF DISCIPLINE
3-1 Preamble.
3-1.1 Privilege to practice. A license to practice law confers no vested right to the holder thereof, but is a conditional privilege which is revocable for cause.
3-1.2 Generally. The Supreme Court of Florida has the inherent power and duty to prescribe standards of conduct for lawyers, to determine what constitutes grounds for discipline of lawyers, to discipline for cause attorneys admitted to practice law in Florida, and to revoke the license of every lawyer whose unfitness to practice law has been duly established.
3-2 Definitions.
3-2.1 Generally. Wherever used in these rules the following words or terms shall have the meaning herein set forth unless the use thereof shall clearly indicate a different meaning:
(a) Bar counsel. A member of The Florida Bar representing The Florida Bar in any proceeding under these rules. Any staff counsel of The Florida Bar may serve as bar counsel or assistant bar counsel in a particular case.
(b) The board or the board of governors. The board of governors of The Florida Bar.
(c) Complainant or complaining witness. Any person who has complained of the conduct of any member of The Florida Bar to any officer or agency of The Florida Bar.
(d) This Court or the Court. The Supreme Court of Florida.
(e) Court of this state. A state court authorized and established by the constitution or laws of the State of Florida.
(f) Executive committee. The executive committee of the board of governors of The Florida Bar.
(g) Executive director. The executive director of The Florida Bar.
(h) Probable cause. A finding by an authorized agency that there is cause to believe that a member of The Florida Bar is guilty of misconduct justifying disciplinary action.
(i) Referee. A judge or retired judge appointed to conduct proceedings as provided under these rules.
(j) Respondent. A member of The Florida Bar or an attorney subject to these rules who is accused of misconduct or whose conduct is under investigation.
(k) Staff counsel. An employee of The Florida Bar authorized under rule 3-3.3. When used in this rule, the term may include associate or assistant staff counsel.
(l) Branch staff counsel. Branch staff counsel is the assistant staff counsel in charge of a branch office of The Florida Bar. Any assistant staff counsel of The Florida Bar may serve as branch staff counsel at the direction of the regularly assigned branch staff counsel or headquarters staff counsel. Headquarters staff counsel are the staff counsel assigned to the headquarters office in Tallahassee.
(m) Designated reviewer. The designated reviewer is a member of the board of governors responsible for review and other specific duties as assigned by the board of governors with respect to a particular grievance committee or matter. If a designated reviewer recuses or is unavailable, any other board member may serve as designated reviewer in that matter. The designated reviewer will be selected, from time to time, by the board members from the circuit of such grievance committee. In circuits having an unequal number of grievance committees and board members, review responsibility will be reassigned, from time to time, to equalize workloads. On such reassignments responsibility for all pending cases from a particular committee passes to the new designated reviewer. Staff counsel will be given written notice of changes in the designated reviewing members for a particular committee.
3-3 Jurisdiction to enforce rules.
3-3.1 Supreme Court of Florida; disciplinary agencies. The exclusive jurisdiction of the Supreme Court of Florida over the discipline of persons admitted to the *996 practice of law shall be administered in the following manner subject to the supervision and review of the Court. The following entities are hereby designated as agencies of the Supreme Court of Florida for this purpose and with the following responsibilities, jurisdiction, and powers. The board of governors, grievance committees, and referees shall have such jurisdiction and powers as are necessary to conduct the proper and speedy disposition of any investigation or cause, including the power to compel the attendance of witnesses, to take or cause to be taken the deposition of witnesses and to order the production of books, records, or other documentary evidence. Each member of such agencies has power to administer oaths and affirmations to witnesses in any matter within the jurisdiction of the agency.
3-3.2 Board of governors of The Florida Bar. The board is assigned the responsibility of maintaining high ethical standards among the members of The Florida Bar. The board shall supervise and conduct disciplinary proceedings in accordance with the provisions of these rules.
(a) Authority to file complaint. No formal complaint shall be filed by The Florida Bar in disciplinary proceedings against a member of the bar unless either a grievance committee or the board shall first find probable cause exists to believe that the respondent is guilty of misconduct justifying disciplinary action or unless the respondent has been determined or adjudged to be guilty of the commission of a felony or unless the respondent has been disciplined by another entity having jurisdiction over the practice of law. The finding of probable cause shall be made by a grievance committee or by the board in accordance with these rules.
(b) Executive committee. All acts and discretion required by the board under these Rules of Discipline may be exercised by its executive committee between meetings of the board as may from time to time be authorized by standing board of governors' policies.
3-3.3 Counsel for The Florida Bar.
(a) Staff counsel. The board may employ staff counsel and assistant staff counsel for The Florida Bar to perform such duties, as may be assigned, under the direction of the executive director.
(b) Bar counsel. Staff counsel may designate members of The Florida Bar to serve as bar counsel to represent The Florida Bar in disciplinary proceedings. Bar counsel shall not be a member of the board or of a grievance committee, except that a member of the board may represent The Florida Bar on any review proceeding under rule 3-7.6. Bar counsel may be compensated in accordance with budgetary policies adopted by the board.
3-3.4 Grievance committees. There shall be such grievance committees as are herein provided, each of which shall have the authority and jurisdiction required to perform the functions hereinafter assigned to it and which shall be constituted and appointed as follows:
(a) Circuit grievance committees. There shall be at least one grievance committee for each judicial circuit of this state and as many more as shall be found desirable by the board. Such committees shall be designated as judicial circuit grievance committees, and in circuits having more than one committee they shall be identified by alphabetical designation in the order of creation. Such committees shall be continuing bodies notwithstanding changes in membership, and they shall have jurisdiction and the power to proceed in all matters properly before them.
(b) Special grievance committees. The board may from time to time appoint grievance committees for the purpose of such investigations as may be assigned in accordance with these rules. Such committees shall continue only until the completion of tasks assigned, and they shall have jurisdiction and power to proceed in all matters so assigned to them. All provisions concerning grievance committees shall be applicable to special grievance committees except those concerning terms of office and other restrictions thereon as *997 may be imposed by the board. Any vacancies occurring in such a committee shall be filled by the board, and such changes in members shall not affect the jurisdiction and power of the committee to proceed in all matters properly before it.
(c) Membership, appointment, and eligibility. Each grievance committee shall be appointed by the board and shall consist of not fewer than three (3) members. At least one-third of the committee members shall be nonlawyers. All appointees shall be of legal age and, except for special grievance committees, shall be residents of the circuit or have their principal office in the circuit. The lawyer members of the committee shall have been members of The Florida Bar for at least five (5) years.
No member of a grievance committee shall perform any grievance committee function when that member:
(1) Is related by blood or marriage to the complainant or respondent;
(2) Has a financial, business, property, or personal interest in the matter under consideration or with the complainant or respondent;
(3) Has a personal interest which could be affected by the outcome of the proceedings or which could affect the outcome; or
(4) Is prejudiced or biased toward either the complainant or the respondent.
Upon notice of the above prohibitions the affected members should recuse themselves from further proceedings. The grievance committee chairperson shall have the power to disqualify any member from any proceeding in which any of the above prohibitions exist and are stated of record or in writing in the file by the chairperson.
(d) Terms. The terms of the members shall begin on the first day of July and shall end on the next succeeding thirtieth day of June or at such time as their successors are appointed and qualified. Continuous service of a member shall not exceed three (3) years. A member shall not be reappointed for a period of three (3) years after the end of his or her term; provided, however, the expiration of the term of any member shall not disqualify such member from concluding any investigation then pending before the committee.
(e) Officers. There shall be a chairperson and vice-chairperson designated by the designated reviewer of that committee. The chairperson and vice-chairperson shall be members of The Florida Bar.
(f) Oath. Each new member of a committee shall subscribe to an oath to fulfill the duties of the office. Such oaths shall be filed with the executive director and placed with the official records of The Florida Bar.
(g) Removal. Any member may be removed from office by the designated reviewer of that committee or the board.
(h) Grievance committee meetings. Grievance committees should meet at regularly scheduled times, not less frequently than quarterly each year, and either the chairperson or vice-chairperson may call special meetings. Grievance committees should meet at least monthly during any period when the committee has one or more pending cases assigned for investigation and report. The time, date, and place of regular monthly meetings should be set in advance by agreement between the committee and branch staff counsel.
3-3.5 Circuit court jurisdiction. The jurisdiction of the circuit courts shall be concurrent with that of The Florida Bar under these Rules of Discipline. The forum first asserting jurisdiction in a disciplinary matter shall retain the same to the exclusion of the other until the final determination of the cause.
3-4 Standards of conduct.
3-4.1 Notice and knowledge of rules. Every member of The Florida Bar and every attorney of another state who is admitted to practice for the purpose of a specific case before a court of record of this state is within the jurisdiction of this Court and its agencies under this rule and is charged with notice and held to know the provisions of this rule and the standards of ethical and professional conduct prescribed by this Court. Jurisdiction over an attorney of *998 another state who is not a member of The Florida Bar shall be limited to conduct as an attorney in relation to the business for which the attorney was permitted to practice in this state and the privilege in the future to practice law in the State of Florida.
3-4.2 Rules of Professional Conduct. Violation of the Rules of Professional Conduct as adopted by the rules governing The Florida Bar is a cause for discipline.
3-4.3 Misconduct and minor misconduct. The standards of professional conduct to be observed by members of the bar are not limited to the observance of rules and avoidance of prohibitive acts, and the enumeration herein of certain categories of misconduct as constituting grounds for discipline shall not be deemed to be all-inclusive nor shall the failure to specify any particular act of misconduct be construed as tolerance thereof. The commission by a lawyer of any act which is unlawful or contrary to honesty and justice, whether the act is committed in the course of the attorney's relations as an attorney or otherwise, whether committed within or outside the State of Florida, and whether or not the act is a felony or misdemeanor, may constitute a cause for discipline.
3-4.4 Criminal misconduct. Unless modified or stayed by the Supreme Court of Florida as provided elsewhere herein, a determination or judgment of guilt of a member of The Florida Bar by a court of competent jurisdiction of any crime or offense that is a felony under the laws of such jurisdiction is cause for automatic suspension from the practice of law in Florida. In addition, whether the alleged misconduct constitutes a felony or misdemeanor The Florida Bar may initiate disciplinary action regardless of whether the respondent has been tried, acquitted, or convicted in a court for the alleged criminal offense; however, the board may, in its discretion, withhold prosecution of disciplinary proceedings pending the outcome of criminal proceedings against respondent. The acquittal of respondent in a criminal proceeding shall not necessarily be a bar to disciplinary proceedings nor shall the findings, judgment or decree of any court in civil proceedings necessarily be binding in disciplinary proceedings.
3-4.5 Removal from judicial office by the Supreme Court of Florida. Whenever a judge is removed from office by the Supreme Court of Florida on the basis of a Judicial Qualifications Commission proceeding, the removal order, when the record in such proceedings discloses the appropriate basis, may also order the suspension of the judge as an attorney pending further proceedings hereunder.
3-4.6 Discipline by foreign or federal jurisdictions. A final adjudication in a disciplinary proceeding by a court or other authorized disciplinary agency of another jurisdiction, state or federal, that an attorney licensed to practice in that jurisdiction is guilty of misconduct justifying disciplinary action shall be considered as conclusive proof of such misconduct in a disciplinary proceeding under this rule.
3-4.7 Oath. Violation of the oath taken by an attorney to support the constitutions of the United States and the State of Florida is ground for disciplinary action. Membership in, alliance with, or support of any organization, group, or party advocating or dedicated to the overthrow of the government by violence or by any means in violation of the Constitution of the United States or constitution of this state shall be a violation of the oath.
3-5 Types of discipline.
3-5.1 Generally. A judgment entered, finding a member of The Florida Bar guilty of misconduct, shall include one or more of the following disciplinary measures:
(a) Private reprimand. A Supreme Court of Florida order adjudging a private reprimand may direct the respondent to appear before the Supreme Court of Florida, the board of governors, or the referee for administration of the reprimand. A grievance committee report and finding of minor misconduct or the board of governors, upon review of such report, may direct the respondent to appear before the *999 board of governors or the grievance committee for administration of the reprimand. A memorandum of administering of such a reprimand shall thereafter be made a part of the record of the proceeding.
(b) Minor misconduct. Minor misconduct is the only type of misconduct for which a private reprimand is an appropriate disciplinary sanction.
(1) Criteria. In the absence of unusual circumstances misconduct shall not be regarded as minor if any of the following conditions exist:
a. The misconduct involves misappropriation of a client's funds or property.
b. The misconduct resulted in or is likely to result in actual prejudice (loss of money, legal rights or valuable property rights) to a client or other person.
c. The respondent has been publicly disciplined in the past three (3) years.
d. The misconduct involved is of the same nature as misconduct for which the respondent has been disciplined in the past five (5) years.
e. The misconduct includes dishonesty, misrepresentation, deceit, or fraud on the part of the respondent.
f. The misconduct constitutes the commission of a felony under applicable law.
(2) Discretion of grievance committee. Despite the presence of one or more of the criteria described in paragraph (1), above, a grievance committee may recommend a private reprimand for minor misconduct when unusual circumstances are present. When the grievance committee recommends a private reprimand for minor misconduct under such circumstances, its report shall contain a detailed explanation of the circumstances giving rise to the committee's recommendation.
(3) Recommendation of minor misconduct. If a grievance committee finds the respondent guilty of minor misconduct or if the respondent shall admit guilt of minor misconduct and the committee concurs, the grievance committee shall file its report recommending a private reprimand, recommending the manner of administration and for the taxing of costs against the respondent. The report recommending a private reprimand shall be forwarded to staff counsel and the designated reviewer for review. If staff counsel does not return the report to the grievance committee to remedy a defect therein, or if the report is not referred to the disciplinary review committee by the designated reviewer (as provided in rule 3-7.4(b)), the report shall then be served on the respondent by branch staff counsel. The report and finding of minor misconduct shall become final unless rejected by the respondent within fifteen (15) days after service of the report. If rejected by the respondent, the report shall be referred to bar counsel and referee for trial on complaint of minor misconduct to be prepared by branch staff counsel as in the case of a finding of probable cause.
(4) Rejection of minor misconduct reports. The rejection by the board of governors of a grievance committee report recommending a private reprimand for minor misconduct, without dismissal of the case, shall be deemed a finding of probable cause. The rejection of such report by a respondent shall be deemed a finding of probable cause for minor misconduct. If either the board or the respondent rejects a minor misconduct report, confidentiality shall remain in effect until the Supreme Court of Florida enters an order imposing public discipline. Upon trial before a referee following rejection by a respondent of a report of minor misconduct, the referee may recommend any discipline authorized under these rules.
(5) Admission of minor misconduct. At any time prior to the filing of a complaint with the Supreme Court of Florida a respondent may tender a written admission of minor misconduct to branch staff counsel or the grievance committee. An admission of minor misconduct may be conditioned upon acceptance by the grievance committee, but the respondent may not condition the admission of minor misconduct upon the method of administration of the private reprimand or upon nonpayment *1000 of costs incurred in the proceedings. Such an admission may be tendered after a finding of probable cause (but before the filing of a complaint) only if such an admission has not been previously tendered. If the admission is tendered after a finding of probable cause, the grievance committee may consider such admission without further evidentiary hearing and may either reject the admission, thereby affirming its prior action, or accept the admission and issue its report of minor misconduct. If a respondent's admission is accepted by the grievance committee, the respondent may not thereafter reject a report of the committee recommending a private reprimand for minor misconduct. If the admission of minor misconduct is rejected, such admission shall not be considered or used against the respondent in subsequent proceedings.
(c) Probation. The respondent may be placed upon probation for a stated period of time of not less than six (6) months nor more than three (3) years or for an indefinite period determined by conditions stated in the order. The judgment shall state the conditions of the probation which may include but are not limited to the following: supervision of all or part of the respondent's work by a member of The Florida Bar; the making of reports to a designated agency; the satisfactory completion of a course of study or a paper on legal ethics approved by the Supreme Court of Florida; such supervision over fees and trust accounts as the Court may direct. The respondent will also reimburse the bar for the costs of supervision. Failure to observe the conditions of the probation or a finding of probable cause as to conduct of the respondent committed during the period of probation shall terminate the probation. In such event, even though such finding of probable cause shall be made after the expiration of the period of probation, the judgment shall be reconsidered and an appropriate judgment shall be entered. On termination of probation for failure to observe the conditions of probation or on a finding of probable cause for misconduct committed during the period of probation, the attorney may be punished for contempt or suspended from the practice of law on petition by The Florida Bar, and any such suspension shall continue until the respondent may be reinstated to the practice of law as provided elsewhere in these rules.
(d) Public reprimand. A public reprimand shall be administered in the manner prescribed in the judgment but all such reprimands shall be reported in the Southern Reporter. Due notice shall be given to the respondent of any proceeding set to administer the reprimand. The respondent shall appear personally before the Supreme Court of Florida, the board of governors, or the referee, if required, and such appearance shall be made a part of the record of the proceeding.
(e) Suspension. The respondent may be suspended from the practice of law for a definite period of time or an indefinite period thereafter to be determined by the conditions imposed by the judgment. During such suspension the respondent shall continue to be a member of The Florida Bar but without the privilege of practicing, and, upon the expiration of the suspension period and the satisfaction of all conditions accompanying the suspension, the respondent shall become eligible to all of the privileges of members in The Florida Bar. A suspension of ninety (90) days or less shall not require proof of rehabilitation or passage of the Florida bar examination. A suspension of more than ninety (90) days shall require proof of rehabilitation and may require passage of all or part of the Florida bar examination. No suspension shall be ordered for a specific period of time in excess of three (3) years.
(f) Disbarment. A judgment of disbarment terminates the respondent's status as a member of the bar. A former member who has been disbarred may only be admitted again upon full compliance with the rules and regulations governing admission to the bar. Except as might be otherwise provided in these rules, no application for admission may be tendered within five (5) years after the date of disbarment or such longer period as the Court might determine in the disbarment order.
*1001 (g) Temporary suspension and probation. On petition of The Florida Bar, authorized by its president, president-elect, or executive director, supported by an affidavit demonstrating facts personally known to affiant showing that an attorney appears to be causing great public harm by misappropriating funds to his own use, or for other reasons, the Supreme Court of Florida may issue an order with such notice as the Court may prescribe imposing temporary conditions of probation on said attorney or temporarily suspending said attorney. Any order of temporary suspension or probation which restricts the attorney maintaining a trust account shall, when served on any bank maintaining an account against which said attorney may make withdrawals, serve as an injunction to prevent said bank from making further payment from such account or accounts on any obligation except in accordance with restrictions imposed by the Court. Any order of temporary suspension issued under this rule shall preclude the attorney from accepting any new cases and may preclude the attorney from continuing to represent existing clients during the first thirty (30) days after issuance of such temporary order. Any fees tendered to such attorney during such thirty-day period shall be deposited in a trust fund from which withdrawals may be made only in accordance with restrictions imposed by the Court. The attorney may for good cause request dissolution or amendment of any such temporary order by petition filed with the Supreme Court of Florida, a copy of which will be served on the executive director. Such petition for dissolution shall be set for immediate hearing before a referee designated by the chief justice. The designated referee shall hear such petition forthwith and submit his report and recommendation to the Supreme Court of Florida with the utmost speed consistent with due process. Upon receipt of the referee's report, the Supreme Court of Florida shall modify its order if appropriate and continue such provision of the order as may be appropriate until final disposition of all pending disciplinary charges against said attorney.
(h) Notice to clients. Upon service on the respondent of an order of disbarment, suspension, resignation for cause, temporary suspension, or placement on the inactive list, the respondent shall, unless this requirement is waived or modified in the Court's order, forthwith furnish a copy of the order to all of his clients with matters pending in the respondent's practice, and within thirty (30) days after service of the order the respondent shall furnish staff counsel of The Florida Bar with a sworn affidavit listing the names and addresses of all clients who have been furnished copies of the order.
3-6 Employment of certain disciplined attorneys.
3-6.1 Generally. When attorneys have been placed on the inactive list, suspended, disbarred, or allowed resignation pursuant to rule 3-7.11 by order of this Court, they are ineligible to practice law until reinstated or readmitted. However, this shall not preclude a lawyer, law firm, or professional association from employing the suspended, disbarred, or resigned individual to perform such services only as may ethically be performed by other lay persons employed in attorneys' offices under the following conditions:
(a) Notice of employment. Notice of employment along with a full job description will be provided to staff counsel before employment commences.
(b) Reports by employee and employer. Information reports verified by the employee and employer will be submitted to staff counsel quarterly. Such reports shall contain a statement by the employing lawyer certifying that no aspect of the employee's work for the period involved the unlicensed practice of law.
(c) Client contact. No suspended or disbarred attorney shall have direct contact with any client or receive, disburse, or otherwise handle funds or property of a client.
3-7 Procedures.
3-7.1 Confidentiality. All matters including files, preliminary investigation reports, inter-office memoranda, records of *1002 investigations, and the records in trials and other proceedings under these rules, excepting only those matters in connection with proceedings initiated in circuit courts, are all property of The Florida Bar. All of such matters having to do with (1) investigation and other proceedings to determine probable cause and (2) resignations pending disciplinary proceedings shall be confidential to all parties participating therein or having knowledge thereof except as otherwise provided in these rules. All persons shall be admonished by the agency before whom they appear to observe the confidential nature of such proceedings. However, the confidential nature of such proceedings is subject to the following exceptions:
(a) Public record. The record, as defined in rule 3-7.5(1), and any reports, correspondence, papers, and/or transcripts of hearings furnished to or served on the respondent and any responses in the proceedings shall become public information in the following instances:
(1) Action of respondent.
a. If the respondent shall file in the proceeding a request, in writing, that the proceedings be made public information.
b. If the respondent shall, orally or in writing, disclose the status or pendency of the proceedings to the media or any person or entity not within the purview of confidentiality.
c. If the respondent shall institute proceedings in a court or before any administrative body thereby disclosing the status or pendency of the proceedings.
d. If respondent shall resign, pending disciplinary proceedings which are confidential, confidentiality of the proceedings shall terminate on the filing of the petition for leave to resign and the general nature of the disciplinary charges shall be stated in the resignation order.
e. If a member of The Florida Bar who is a candidate for public office makes public the fact of and circumstances surrounding the administration of discipline to that member at the level of a private reprimand or higher, The Florida Bar may disclose information necessary to correct a false or misleading statement by such candidate.
(2) Action of The Florida Bar. Upon the filing by staff counsel in the Supreme Court of Florida of a formal complaint for other than minor misconduct.
(3) Circuit court proceeding. If the proceeding is in a circuit court. However, proceedings in contempt of confidential proceedings shall preserve the confidentiality of the disciplinary proceeding as elsewhere provided.
(b) Limitations on public disclosure. Public disclosure of all or any portion of the record, as defined in rule 3-7.5(1), is subject, in all instances, to the following limitations:
(1) Any material or information provided to The Florida Bar in the course of an investigation which is confidential under applicable law shall remain confidential and shall not be disclosed except as authorized by such applicable law.
(2) The disclosure does not affect the right of confidentiality under these rules of any other member of The Florida Bar.
(c) Limited disclosure; access to confidential information. Upon request, and to the extent necessary to provide the information required therefor, any portion of the record, as defined in rule 3-7.5(1) and any reports, correspondence, papers, and/or transcripts of hearings furnished to or served upon the respondent and any response in the proceedings shall be provided to:
(1) The Florida Board of Bar Examiners and the comparable body having jurisdiction of an application for admission in another jurisdiction for the purpose of evaluating the applicant's competency to practice law.
(2) Judicial nominating commissions for the purpose of evaluating an applicant's qualification for judicial appointment.
(3) The Clients' Security Fund Committee to assist in preparing its recommendation on the validity of an application for relief.
*1003 (4) Any judge of a court of record having a judicial interest in the matter.
(5) A complainant for advice as to the pending status or final disposition of the complaint.
(6) In all cases where a complaint alleges a trust fund violation, the present partners, employed lawyers, professional association shareholders, employed associates, and "of counsel" of the respondent, as determined by the designated board reviewer, to prevent further trust fund violations by the respondent.
(7) Any individual or organization for whom a member of The Florida Bar has signed a waiver of confidentiality for the purposes expressed in such waiver.
(d) Limitations on limited disclosure. Disclosures authorized in rule 3-7.1(c) above are subject, in all instances, to the limitations on public disclosures set forth in rules 3-7.1(b)1 and 3-7.1(b)2 and are further subject to the following:
(1) The attorney who is the subject of a request for limited disclosure, as described in rule 3-7.1(c), shall forthwith be advised of the content of all reports and information provided to the requesting party.
(2) All confidential information provided shall remain confidential and shall not be disclosed by the recipient thereof except as may be provided in these rules.
(3) A complainant will not be advised of an admonishment accompanying a finding of no probable cause.
(e) Information concerning proceeding. No information concerning the pendency or status of an investigation or other confidential matter shall be given unless authorized by the Supreme Court of Florida or these rules.
(f) Evidence of crime. The confidential nature of disciplinary proceedings and the oath given to witnesses therein shall not proscribe the filing of informations and the giving of testimony before grand juries or other prosecuting authorities by individuals having knowledge of facts indicating the commission of crime.
(g) Confidentiality regarding treatment for alcohol abuse.
(1) Evidence that an attorney has voluntarily sought, received, or accepted treatment for alcoholism or alcohol abuse shall be deemed confidential.
(2) No qualified person furnishing treatment, advisory, consultive, or other services or who offers such services, or with whom an attorney has consulted for the purpose of considering or securing treatment, advisory, consultive, or other services relating to alcoholism or alcohol abuse may give evidence with respect to the consultation or treatment by such attorney in any disciplinary proceeding without the written consent of the attorney(s) affected.
(3) It is the purpose of this paragraph (g) to encourage attorneys to voluntarily seek advice, counsel, and treatment available to such attorney, without fear that such advice, counsel, and treatment, or the fact of its being sought or offered, will or might cause embarrassment in any future disciplinary matter.
3-7.2 Procedures upon criminal or professional misconduct; discipline upon determination or judgment of guilt of criminal misconduct.
(a) Definitions.
(1) Judgment of guilt. For the purposes of these rules "judgment of guilt" shall include only those cases in which the trial court in the criminal proceeding enters an order adjudicating the respondent guilty of the offense(s) charged.
(2) Determination of guilt. For the purposes of these rules "determination of guilt" shall include only those cases in which the trial court in the criminal proceeding enters an order withholding adjudication of respondent's guilt of the offense(s) charged.
(3) Convicted attorney. For the purposes of these rules "convicted attorney" shall mean an attorney who has had either a determination or judgment of guilt entered by the trial court in the criminal proceeding.
*1004 (b) Determination or judgment of guilt. Determination or judgment of guilt of a member of The Florida Bar by a court of competent jurisdiction upon trial of or plea to any crime or offense that is a felony under the laws of this state, or under the laws under which any other court making such determination or entering such judgment exercises its jurisdiction, shall be conclusive proof of guilt of the criminal offense(s) charged for the purposes of these rules.
(c) Notice of determination or judgment of guilt. Upon the entry of a determination or judgment of guilt against a member of The Florida Bar by a court of competent jurisdiction upon trial of or plea to any offense that is a felony under the laws applicable to such court, such convicted attorney shall within thirty (30) days of such determination or judgment notify the executive director of The Florida Bar of such determination or judgment. Notice shall include a copy of the order(s) whereby such determination or judgment was entered.
(d) Notice of determination or judgment of guilt by courts of the State of Florida. If any such determination or judgment is entered by a court of the State of Florida, the judge or clerk thereof shall transmit to the Supreme Court of Florida and the executive director of The Florida Bar a certified copy of the order(s) whereby the determination or judgment was entered.
(e) Suspension by judgment of guilt (felonies). Upon receiving notice that a member of the bar has been determined or adjudicated guilty of a felony, branch staff counsel will file a "Notice of Determination or Judgment of Guilt" in the Supreme Court of Florida. A copy of the judgment shall be attached to the notice. Upon the filing with the Supreme Court of Florida by The Florida Bar and service upon the respondent of a notice of determination or judgment of guilt for offenses that are felonies under applicable law, the respondent shall stand suspended as a member of The Florida Bar on the eleventh day after filing of the notice of determination or judgment of guilt unless he shall, on or before the tenth day after filing of such notice, file a petition to terminate or modify such suspension.
(f) Petition to modify or terminate suspension.
(1) At any time after the filing of a notice of determination or judgment of guilt the respondent may file a petition with the Supreme Court of Florida to modify or terminate such suspension and shall serve a copy thereof upon the executive director.
(2) If such petition is filed on or before the tenth day following the filing of the notice, the suspension will be deferred until entry of an order on the petition.
(3) If such petition is filed after the tenth day following the filing of the notice of judgment of guilt, the suspension shall remain in effect pending disposition of the petition. Modification or termination of the suspension shall be granted only upon a showing of good cause.
(g) Response to petition to modify or terminate automatic suspension. The Florida Bar shall be allowed twenty (20) days from the filing of a petition to modify or terminate automatic suspension to respond to the same. Staff counsel will oppose all petitions to modify or withhold an automatic suspension on a notice of determination or judgment of guilt unless the designated reviewer recommends and the executive committee concurs in not opposing such a petition.
(h) Term of suspension. Unless the Supreme Court of Florida permits an earlier application for reinstatement, the suspension imposed on the determination or judgment of guilt shall remain in effect for three (3) years and thereafter until civil rights have been restored and until the respondent is reinstated under rule 3-7.9 hereof.
(1) Continuation during appeal. A final termination of the criminal cause resulting in the affirmance of a determination or judgment of guilt shall continue the *1005 suspension until expiration of all periods for appeal and rehearing.
(2) Continuation of suspension until final disposition. If an appeal is taken by the respondent from the determination or judgment of the trial court in the criminal proceeding, and on review the cause is remanded for further proceedings, the suspension shall remain in effect until the final disposition of the criminal cause unless modified or terminated by the Supreme Court of Florida as elsewhere provided.
(3) Termination of suspension. A final disposition of the criminal cause resulting in acquittal will terminate the suspension.
(i) Separate disciplinary action. The Florida Bar may, at any time, initiate separate disciplinary action against the respondent.
(1) Conclusive proof of probable cause. A determination or judgment of guilt, where the offense is a felony under applicable law, shall constitute conclusive proof of probable cause and The Florida Bar may file a complaint with the Supreme Court of Florida, or proceed under rule 3-7.8, without there first having been a separate finding of probable cause.
(2) Determination or judgment of guilt as evidence. A determination or judgment of guilt, whether for charges that are felony or misdemeanor in nature, shall be admissible in disciplinary proceedings under these rules, and in those cases where the underlying criminal charges constitute felony charges, determinations or judgments of guilt shall, for purposes of these rules, constitute conclusive proof of the criminal offense(s) charged. The failure of a trial court to adjudicate the convicted attorney guilty of the offense(s) charged shall be considered as a matter of mitigation only.
(j) Professional misconduct in foreign jurisdiction.
(1) Notice of discipline by a foreign jurisdiction. A member of The Florida Bar disbarred or suspended from the practice of law by a court or other authorized disciplinary agency of another state or by a federal court shall within thirty (30) days after the effective date of disbarment or suspension file with the Supreme Court of Florida a copy of the order or judgment effecting such disbarment or suspension.
(2) Adjudication or discipline by a foreign jurisdiction. In cases of a final adjudication by a court or other authorized disciplinary agency of another jurisdiction, such adjudication of misconduct shall be sufficient basis for the filing of a complaint by The Florida Bar and assignment for hearing before a referee without a finding of probable cause under these rules.
3-7.3 Grievance committee procedures. When notice of a grievance committee hearing is sent to respondent, such notice shall be accompanied by a list of the grievance committee members.
(a) Complaint filed with grievance committee. A complaint received by a committee direct from a complainant shall be reported to the appropriate branch staff counsel for docketing and assignment of a case number, unless the committee resolves the complaint within ten (10) days after receipt of the complaint. A written report to branch staff counsel shall include the following information: complainant's name and address; respondent's name; date complaint received by committee; copy of complaint letter or summary of the oral complaint made; and the name of the committee member assigned to the investigation. Formal investigation by a grievance committee may proceed after the matter has been referred to staff counsel for docketing.
(b) Investigation. A grievance committee is required to consider all charges of misconduct forwarded to the committee by staff counsel whether based upon a written complaint or not.
(c) Conduct of proceedings. The proceedings of grievance committees may be informal in nature and the committees shall not be bound by the rules of evidence.
(d) No delay for civil or criminal proceedings. An investigation shall not be deferred or suspended without the approval of the board even though the respondent *1006 is made a party of civil litigation, or is a defendant or is acquitted in a criminal action, notwithstanding that either of such proceedings involves the subject matter of the investigation.
(e) Counsel and investigators. Upon request of a grievance committee, staff counsel may appoint a bar counsel or an investigator to assist the committee in an investigation. Staff counsel shall assist each grievance committee in carrying out its investigative and administrative duties and shall prepare status reports for the committee, notify complainants and respondents of committee actions as appropriate, and prepare all reports reflecting committee findings of probable cause, no probable cause, recommended discipline for minor misconduct, and admonishments after no probable cause findings.
(f) Quorum, vote. Not fewer than three (3) members, one of whom must be the chairperson or vice-chairperson and another of whom must be a lawyer, shall constitute a quorum. All findings of probable cause and recommendations of guilt of minor misconduct shall be made by affirmative vote of a majority of the committee members present, which majority must number at least two (2) members. The number of committee members voting for or against the committee report shall be reflected in the transcript. Minority reports may be filed.
(g) Rights and responsibilities of the respondent. The respondent may be required to testify and to produce evidence as any other witness unless the respondent claims a privilege or right properly available to the respondent under applicable federal or state law. The respondent may be accompanied by counsel. At a reasonable time before any hearing at which any finding of probable cause or minor misconduct is made the respondent shall be advised of the conduct which is being investigated and the rules which have been violated, provided the bar may amend its statement as to which rules have been violated. The respondent shall be given an opportunity to make a statement personally or by counsel, verbally or in writing, sworn or unsworn, explaining, refuting, or admitting the alleged misconduct. The respondent shall be granted the right to be present at any grievance committee hearing when evidence is to be presented to the committee, to face the accuser, and to call witnesses or present evidence and to cross-examine, subject to reasonable limitation.
(h) Rights of the complaining witness. The complaining witness is not a party to the disciplinary proceeding. Unless found to be impractical by the chairman of the grievance committee due to unreasonable delay or other good cause, the complainant shall be granted the right to be present at any grievance committee hearing when evidence is to be presented, subject to reasonable limitations. Neither unwillingness nor neglect of the complaining witness to cooperate, nor settlement, compromise, or restitution will excuse the completion of an investigation. The complaining witness shall have no right of appeal.
(i) No finding of probable cause. If a grievance committee upon termination of its investigation does not find probable cause, the committee shall dispose of its file in the manner directed by the board of governors. If the grievance committee has notified the respondent of the investigation, then the committee shall notify the respondent of the action of the committee. The failure of a grievance committee to find probable cause shall not preclude further proceedings.
(j) Preparation, forwarding, and review of grievance committee complaints. If a grievance committee finds probable cause, the branch staff counsel assigned to the committee shall promptly prepare a record of its investigation and a formal complaint. The formal complaint shall be signed by the chairperson or vice-chairperson of the committee who participated in the proceeding. The formal complaint shall be in such form as shall be prescribed by the board. Such formal complaint shall be promptly forwarded to and reviewed by bar headquarters staff counsel. If the grievance committee chairperson or vice-chairperson *1007 disagrees with the form of the complaint, he or she may direct branch staff counsel to make changes accordingly. If branch staff counsel does not agree with the directed changes, the matter shall be referred to the designated reviewer of the committee for appropriate action. When a formal complaint by a grievance committee is not referred to the designated reviewer, or returned to the grievance committee for further action, bar headquarters staff counsel shall furnish a copy of the formal complaint to the respondent, and a copy of the transcripts and exhibits shall be made available to the respondent at his expense.
(k) Letter reports in no probable cause cases. Upon a finding of no probable cause, the committee chairperson or vice-chairperson will submit a short letter report of the no probable cause finding to branch staff counsel with a copy to the investigating member and the respondent if the respondent was notified of the investigation. The report to branch staff counsel should include any documentation deemed appropriate by the chairperson or vice-chairperson. The chairperson or vice-chairperson shall also send a letter to the complainant in confidence, without reference to any admonishment, with a copy to branch staff counsel, explaining why the complaint did not warrant further proceedings. Admonishments issued by a grievance committee shall be in writing and signed by the chairperson or vice-chairperson and shall not be made a part of the respondent's record.
(1) Recommendation of private reprimand for minor misconduct. If the committee recommends an order of private reprimand for minor misconduct, the grievance committee report shall be drafted by branch staff counsel and signed by the chairperson or vice-chairperson who participated in the hearing. The committee report need only include: (1) the committee's recommendations regarding the private reprimand, designation withdrawal, and conditions of redesignation; (2) the committee's recommendation as to whether the respondent should be required to appear before the board for administration of the reprimand; (3) a summary of any additional charges which will be dismissed if the private reprimand is approved; (4) any comment on mitigating, aggravating, or evidentiary matters which the committee believes will be helpful to the board in passing upon the private reprimand recommendation; and (5) an admission of minor misconduct signed by the respondent, if the respondent has admitted guilt of minor misconduct. No record need be submitted with such a report. After the chairperson or vice-chairperson signs the grievance committee report, he or she shall return the report to branch staff counsel. The report recommending a private reprimand shall be forwarded to staff counsel and the designated reviewer for review. If staff counsel does not return the report to the grievance committee to remedy a defect therein, or if the designated reviewer does not present the same to the disciplinary review committee for action by the board, the report shall then be served on the respondent by branch staff counsel.
(m) Rejection of private reprimand. The order of private reprimand shall become final unless rejected by the respondent within fifteen (15) days after service upon the respondent. If rejected by the respondent, the report shall be referred to bar counsel and referee for trial on complaint of minor misconduct to be prepared by branch staff counsel as in the case of a finding of probable cause.
(n) Staff counsel and grievance committee chairperson determinations of no probable cause. If staff counsel and a grievance committee chairperson concur in a finding of no probable cause, the complaint may be closed on such finding without reference to a grievance committee.
(o) Appointment of bar counsel. When a grievance committee formal complaint is not referred to the disciplinary review committee, or returned to the grievance committee, staff counsel of The Florida Bar headquarters in Tallahassee may appoint bar counsel unless bar counsel has been appointed, sign the complaint and file the *1008 same in the Supreme Court of Florida, serve a copy on the respondent, and request the Supreme Court of Florida to assign a referee to try the cause. If probable cause is found by the board, staff counsel will prepare the formal complaint.
3-7.4 Procedures before the board of governors.
(a) Review of grievance committee matters. The disciplinary review committee shall review those grievance committee matters referred to it by a designated reviewer. The committee shall make a report to the board and unless overruled by the board the report shall be final.
(1) Whenever a grievance matter is referred to the disciplinary review committee by the designated reviewer, the disciplinary review committee shall promptly review the actions of the grievance committee and the recommendations of the designated reviewer and make a report to the board providing for the issuance of:
a. A private reprimand which the respondent may thereafter reject in the same manner as a private reprimand recommended by a grievance committee;
b. Confirmation of the formal complaint;
c. Reversal of the grievance committee and a finding of no probable cause; or
d. Return of the matter to the grievance committee for further proceedings.
(2) The disciplinary review committee report shall be final unless overruled by the board. If the board shall find no probable cause, staff counsel shall notify the respondent, the grievance committee, and the complaining witness.
(b) Review by the designated reviewer. A designated reviewer at any time may review the actions of a grievance committee and shall review those grievance committee actions referred to him or her, in writing. If the designated reviewer disagrees with the grievance committee action the designated reviewer shall make a report and recommendation to the disciplinary review committee. In those matters referred in writing the designated reviewer shall make the report and recommendation within twenty-one (21) days following the mailing date of the referral; otherwise the grievance committee action shall stand.
(c) Finding of probable cause. The board, on the basis of the report of any regular or special grievance committee, may by majority vote find probable cause and direct the filing of a formal complaint against an attorney.
(d) Finding of no probable cause. A finding of no probable cause by the board shall be final and no further proceedings shall be had in the matter by The Florida Bar.
(e) Control of proceedings. Bar counsel, however appointed, at all times shall be subject to the direction of the board. In the exercise of its discretion as the governing body of The Florida Bar, the board prior to the receipt of evidence by the referee has the power to terminate disciplinary proceedings before a referee, whether such proceedings have been instituted upon a finding of probable cause by the board or a grievance committee.
(f) Filing service on board of governors. All matters to be filed with or served upon the board shall be addressed to the board of governors and filed with the executive director. The executive director shall be the custodian of the official records of The Florida Bar.
3-7.5 Procedures before a referee.
(a) Referees. The chief justice shall have the power to appoint referees to try disciplinary cases and to delegate to a chief judge of a judicial circuit the power to appoint referees for duty in the chief judge's respective circuit. Such appointees shall ordinarily be active county or circuit judges, but the chief justice may appoint retired judges.
(b) Trial by referee. When a finding has been made by a grievance committee or by the board that there is cause to believe that a member of The Florida Bar is guilty of misconduct justifying disciplinary action, and the formal complaint based on such finding of probable cause has been assigned *1009 by the chief justice for trial before a referee, the proceeding thereafter shall be an adversary proceeding which shall be conducted as hereinafter set forth.
(c) Venue. The trial shall be held in the county in which an alleged offense occurred or in the county where the respondent resides or practices law or last practiced law in Florida, whichever shall be designated by the Supreme Court of Florida; provided, however, that if the respondent is not a resident of Florida and if the alleged offense is not committed in Florida, the trial shall be held in a county designated by the chief justice.
(d) Style of proceedings. All proceedings instituted by The Florida Bar shall be styled "The Florida Bar, Complainant v. (name of respondent), Respondent" and "In The Supreme Court of Florida (Before a Referee)."
(e) Nature of proceedings.
(1) Administrative in character. A disciplinary proceeding is neither civil nor criminal but is a quasijudicial administrative proceeding. The Florida Rules of Civil Procedure apply except as otherwise provided in this rule.
(2) Discovery. Discovery shall be available to the parties in accordance with the Florida Rules of Civil Procedure.
(f) Bar counsel. Bar counsel shall make such investigation as is necessary and shall prepare and prosecute with utmost diligence any case assigned. Assistant bar counsel shall serve under the general supervision of bar counsel.
(g) Pleadings. Pleadings may be informal and shall comply with the following requirements:
(1) Complaint; consolidation and severance.
a. Filing. Staff counsel shall prepare the complaint and file the same in the Supreme Court of Florida.
b. Content. The complaint shall set forth the particular act or acts of conduct for which the attorney is sought to be disciplined.
c. Joinder of charges and respondents; severance. A complaint may embrace any number of charges against one or more respondents, and charges may be against any one or any number of respondents; but a severance may be granted by the referee when the ends of justice require it.
(2) Answer and motion. The respondent may answer the complaint and, as a part thereof or by separate motion, may challenge only the sufficiency of the complaint and the jurisdiction of the forum. All other defenses shall be incorporated in the respondent's answer. All pleadings of the respondent must be filed within twenty (20) days of service of a copy of the complaint.
(3) Reply. If the respondent's answer shall contain any new matter or affirmative defense, a reply thereto may be filed within ten (10) days of the date of service of a copy upon bar counsel, but failure to file such a reply shall not prejudice The Florida Bar. All affirmative allegations in the respondent's answer shall be considered as denied by The Florida Bar.
(4) Disposition of motions. Hearings upon motions may be deferred until the final hearing, and, whenever heard, rulings thereon may be reserved until termination of the final hearing.
(5) Filing and service of pleadings.
a. Prior to appointment of referee. Any pleadings filed in a case prior to appointment of a referee shall be filed with the Supreme Court of Florida and shall bear a certificate of service showing parties upon whom service of copies has been made. On appointment of referee, the Supreme Court of Florida shall notify the parties of such appointment and forward all pleadings theretofore filed with the Court to the referee for action.
b. After appointment of referee. All pleadings, motions, notices, and orders filed after appointment of a referee shall be filed with the referee and shall bear a certificate of service showing service of a copy on the staff counsel of The Florida *1010 Bar and on all interested parties to the proceedings.
(6) Amendment. Pleadings may be amended by order of the referee, and a reasonable time shall be given within which to respond thereto.
(7) Expediting the trial. If it shall be made to appear that the date of final hearing should be expedited in the public interest, the referee may, in the referee's discretion, shorten the time for filing pleadings and the notice requirements as provided in this rule.
(8) Disqualification of referee. Upon motion of either party, a referee may be disqualified from service in the same manner and to the same extent that a trial judge may be disqualified under existing law from acting in a judicial capacity. In the event of disqualification, the chief justice shall appoint a successor.
(h) Notice of final hearing. The cause may be set down for trial by either party or the referee upon not less than ten (10) days notice. The trial shall be held as soon as possible following the expiration of ten (10) days from the filing of respondent's answer, or if no answer is filed, then from the date when such answer is due.
(i) The respondent. Unless the respondent claims a privilege or right properly available under applicable federal or state law, the respondent may be called as a witness by The Florida Bar to make specific and complete disclosure of all matters material to the issues. When the respondent is subpoenaed to appear and give testimony or to produce books, papers, or documents and refuses to answer or to produce such books, papers, or documents, or, having been duly sworn to testify, refuses to answer any proper question, the respondent may be cited for contempt of the court.
(j) Complaining witness. The complaining witness shall have no right other than those of any other witness; the complaining witness has no right to be present during a hearing or trial but may be called upon to testify and produce evidence as any other witness. Neither unwillingness nor neglect of the complaining witness to cooperate, nor settlement, compromise, or restitution will excuse failure to complete any trial.
(k) Referee's report.
(1) Contents of report. Within thirty (30) days after the conclusion of a trial before a referee or ten (10) days after the referee receives the transcripts of all hearings, whichever is later, or within such extended period of time as may be allowed by the chief justice for good cause shown, the referee shall make a report and enter it as part of the record, but failure to enter the report in the time prescribed shall not deprive the referee of jurisdiction. The referee's report shall include: (1) a finding of fact as to each item of misconduct of which the respondent is charged, which findings of fact shall enjoy the same presumption of correctness as the judgment of the trier of fact in a civil proceeding; (2) recommendations as to whether or not the respondent should be found guilty of misconduct justifying disciplinary measures; (3) recommendations as to the disciplinary measures to be applied, provided that a private reprimand may be recommended only in cases based on a complaint of minor misconduct; (4) a statement of any past disciplinary measures as to the respondent which are on record with the executive director of The Florida Bar or which otherwise become known to the referee through evidence properly admitted by the referee during the course of the proceedings (after a finding of guilt all evidence of prior disciplinary measures may be offered by bar counsel subject to appropriate objection or explanation by respondent); and (5) a statement of costs of the proceedings and recommendations as to the manner in which costs should be taxed. The costs shall include court reporters' fees, copy costs, witness fees and traveling expenses, and reasonable traveling and out-of-pocket expenses of the referee and bar counsel, if any. Costs shall also include a $150 charge for administrative costs at the grievance committee level and a $150 charge for administrative costs at the referee level. *1011 Costs taxed shall be payable to The Florida Bar.
(2) Filing. The referee's report and record of proceedings shall in all cases be transmitted together to the Supreme Court of Florida. Copies of the report shall be served on the parties including the staff counsel of The Florida Bar. The referee shall serve a copy of the record on staff counsel with the report. Staff counsel will make a copy of the record, as furnished, available to other parties on request and payment of the actual costs of reproduction.
(l) The record.
(1) Reporting of testimony. All hearings at which testimony is presented shall be reported and the transcript of the testimony shall be filed in the cause.
(2) Contents. The record shall include all items properly filed in the cause including pleadings, transcript of testimony, exhibits in evidence, and the report of the referee.
(m) Plea of guilty by respondent. At any time during the progress of disciplinary proceedings a respondent may tender a plea of guilty.
(1) Before filing of complaint. If the plea is tendered before filing of a complaint by staff counsel, such plea shall be tendered in writing to the grievance committee.
(2) After filing of complaint. If the complaint has been filed against the respondent, the respondent may enter a plea of guilty thereto by filing the same in writing with the referee to whom the cause has been assigned for trial. Such referee shall take such testimony thereto as may be advised, following which the referee will enter a report as otherwise provided.
(3) Unconditional. An unconditional plea of guilty shall not preclude review as to disciplinary measures imposed.
(4) Procedure. Except as herein provided all procedure in relation to disposition of the cause on pleas of guilty shall be as elsewhere provided in these rules.
(n) Cost of reproduction. The actual cost of reproduction for the purposes of these rules is determined by the board to be $1.00 per page.
3-7.6 Procedures before Supreme Court of Florida. All reports of a referee and all judgments entered in proceedings under these rules shall be subject to review by the Supreme Court of Florida in the following manner:
(a) Right of review.
(1) Any party to a proceeding may procure review of a report of a referee or a judgment, or any specified portion thereof, entered under these rules.
(2) The Supreme Court of Florida shall review all reports and judgments of referees recommending probation, public reprimand, suspension, disbarment, or resignation pending disciplinary proceedings.
(3) A referee's report that does not recommend probation, public reprimand, suspension, disbarment, or resignation pending disciplinary proceedings, shall be final if not appealed.
(b) Appointment of bar counsel. The board or staff counsel, if authorized by the board, may appoint new or additional bar counsel to represent The Florida Bar on any review.
(c) Procedure for review. Review by the Supreme Court of Florida shall be in accordance with the following procedures:
(1) Time for review. Proceedings for review shall be commenced within fifteen (15) days of the termination of the meeting of the board following by ten (10) days the mailing date of a letter from the referee serving a copy of the referee report on the respondent and The Florida Bar, but in all events the respondent shall be allowed at least thirty (30) days after the mailing date of such letter to commence review. Prompt written notice of such termination date and the board's action, if any, shall be communicated to the respondent. The proceeding shall be commenced by filing with the Supreme Court of Florida a petition for review, specifying those portions of the report of a referee sought to be reviewed. *1012 Within ten (10) days after service of such petition, the opposing party may file a cross-petition for review specifying any additional portion of the report which said party desires reviewed. The filing of such petition or cross-petition shall be jurisdictional as to a review to be procured as a matter of right, but the Court may, in its discretion, consider a late-filed petition or cross-petition upon a showing of good cause.
(2) Record on review. The report and record filed by the referee shall constitute the record on review.
(3) Briefs. The party first seeking review shall file a brief in support of the petition for review within thirty (30) days of the filing of the petition. The opposing party shall file an answering brief within twenty (20) days after the service of the brief of the party seeking review, which answering brief shall also support any cross-petition for review. The party originally seeking petition for review may file a reply brief within ten (10) days after the service of the answering brief.
(4) Oral argument. Request for oral argument may be filed in any case wherein a petition for review is filed, at the time of filing the first brief. If no request is filed, the case will be disposed of without oral argument unless the Court orders otherwise.
(5) Burden. Upon review, the burden shall be upon the party seeking review to demonstrate that a report of a referee sought to be reviewed is erroneous, unlawful, or unjustified.
(6) Judgment of Supreme Court of Florida. After review, the Supreme Court of Florida shall enter an appropriate order or judgment. If no review is sought of a report of a referee entered under the rules and filed in the Court, the findings of fact shall be deemed conclusive and the disciplinary measure recommended by the referee shall be the disciplinary measure imposed by the Court, unless the Court directs the parties to submit briefs or oral argument directed to the suitability of the disciplinary measure recommended by the referee. A referee's report which becomes final when no review has been timely filed shall be reported in an order of the Supreme Court of Florida.
(d) Precedence of proceedings. Petitions for review in disciplinary proceedings shall take precedence over all other civil causes in the Supreme Court of Florida.
(e) Extraordinary writs. All applications for extraordinary writs which are concerned with disciplinary proceedings under these rules of discipline shall be made to the Supreme Court of Florida.
(f) Florida Rules of Appellate Procedure. To the extent necessary to implement this rule and if not inconsistent herewith, the Florida Rules of Appellate Procedure shall be applicable to petitions for review in disciplinary proceedings, provided service on The Florida Bar shall be accomplished by service on bar counsel and staff counsel.
(g) Contempt by respondent. Whenever it is alleged that a respondent is in contempt in a disciplinary proceeding, a petition for an order to show cause why the respondent should not be held in contempt and the proceedings on such petition may be filed in and determined by the Supreme Court of Florida or as provided under rule 3-7.10(f).
(h) Pending disciplinary cases. If disbarment is ordered by the Court, dismissal without prejudice of other pending cases against the respondent may be ordered in the Court's disbarment order.
3-7.7 Procedures before a circuit court.
(a) Filing of motion. Whenever it shall be made known to any of the judges of the district courts of appeal or any judge of a circuit court or a county court in this state that a member of The Florida Bar practicing in any of the courts of the district or judicial circuit or county has been guilty of any unprofessional act as defined by these rules, such judge may direct the state attorney for the circuit in which the alleged offense occurred to make in writing a motion in the name of the State of Florida to discipline such attorney setting forth in the *1013 motion the particular act or acts of conduct for which the attorney is sought to be disciplined.
(b) Copy served upon respondent. Upon the filing of a motion in circuit court to discipline an attorney a copy thereof shall be served upon the respondent attorney, and the respondent shall, within twenty (20) days after the service thereof, file an answer thereto. A copy of such motion shall be filed with the executive director of The Florida Bar at the time of service upon the respondent.
(c) Trial before a circuit judge. Upon the filing of the answer, the chief judge of the judicial circuit in which the alleged offense occurred shall designate a judge other than the judge who directed the filing of the motion to try said cause. Such judge shall conduct a hearing thereon and shall hear the evidence to be offered by the State of Florida and the respondent. A representative or representatives of The Florida Bar, appointed by the board, shall have the right to be present and to observe the proceedings. Upon the conclusion of the hearing, the judge shall enter such judgment of dismissal, reprimand, probation, suspension, or disbarment as shall be appropriate to the circumstances. The parties shall be entitled to compulsory process to force the attendance of any witnesses.
(d) Judgment filed in Supreme Court of Florida. If the judgment be one of public reprimand, probation, suspension, or disbarment, three (3) certified copies of the same shall be forthwith filed by the clerk of the trial court with the clerk of the Supreme Court of Florida. The clerk of the Supreme Court of Florida shall retain one copy for the Court's records, deliver to the executive director of The Florida Bar one copy of the judgment for The Florida Bar's official records, and shall forthwith serve the third copy upon the respondent.
(e) Petition for appellate review. The respondent may appeal from a judgment entered by a circuit court. Such appeal shall be made in the manner provided by rule 3-7.6.
(f) Duty to expedite proceedings. It shall be the duty of the state attorney who is directed to file said motion to file the same promptly and to dispose of said controversy expeditiously.
(g) Readmission or reinstatement. Readmission or reinstatement of attorneys disbarred or suspended by proceedings in circuit courts shall be governed as elsewhere provided in these rules.
(h) Reporting misconduct to The Florida Bar. Nothing herein shall be construed to discourage or restrict the right and responsibility of a judge to refer to The Florida Bar the conduct of its members which in the opinion of the judge warrants investigation to determine if a violation of the Rules of Professional Conduct has occurred.
3-7.8 Consent judgment.
(a) Before formal complaint is filed. If before a formal complaint is filed a respondent states his or her desire to plead guilty to a grievance committee report that finds probable cause and recommends further disciplinary proceedings, then staff counsel with the approval of the designated board reviewer and concurrence of the board of governors, may consult established board guidelines for discipline, and advise the respondent of the discipline that will be recommended to the Supreme Court of Florida if a written plea of guilty is entered. If the board of governors or designated reviewer rejects a proposed consent judgment, staff counsel shall prepare and file a complaint as provided elsewhere in these rules.
(b) After filing of formal complaint. If a respondent states his or her desire to plead guilty to a formal complaint that has been filed, then bar counsel, with the approval of the designated board reviewer, may consult established board guidelines for discipline and advise the respondent of the discipline the bar will recommend to the referee if a written plea of guilty is entered.
(c) Approval of consent judgments. Acceptance of any proposed consent judgment more severe than a private reprimand shall be conditional on final approval by the *1014 Supreme Court of Florida, and the Court's order will recite the disciplinary charges against the respondent.
(d) Content of conditional pleas. All conditional pleas shall show clearly by reference or otherwise the disciplinary offenses to which the plea is made.
(e) Authority of staff counsel. Staff counsel has no authority to commit the board on any consent judgment not previously approved by the board. All consent judgments tentatively approved by staff counsel without prior approval of the board shall be subject to board approval. In negotiating consent judgments with a respondent or in recommending acceptance, rejection or offer of a tendered consent judgment the grievance committee, branch staff counsel and designated reviewer shall consider and express a recommendation on whether the consent judgment shall include withdrawal of any designations held by the attorney and restrictions to be placed on redesignation in such areas. When withdrawal of designation is agreed to in a consent judgment, the withdrawal and any conditions on redesignation will be reported to the designation staff for recording purposes.
3-7.9 Reinstatement and readmission procedures.
(a) Readmission. A former member who has been disbarred or who has been permitted to resign pending disciplinary proceedings, pursuant to rule 3-7.11, may only be admitted again upon full compliance with the rules and regulations governing admission to the bar. Except as might be otherwise provided in these rules, no application for admission may be tendered within five (5) years after the date of disbarment or such longer period as the Court might determine in the disbarment order.
(b) Reinstatement. An attorney who has been suspended may be reinstated to membership in The Florida Bar pursuant to this rule. The proceedings under this rule are not applicable to suspension for non-payment of dues.
(c) Petitions; form and contents.
(1) Filing. The original petition for reinstatement and three (3) copies thereof shall be in writing, verified by the petitioner, addressed to and filed with the Supreme Court of Florida and a copy served on The Florida Bar in Tallahassee.
(2) Form and exhibits. The petition shall be in such form and shall be accompanied by such exhibits as provided for in rule 3-7.9(n)(1) and (2). The information required concerning the petitioner may include any or all of the following matters in addition to such other matters as may be reasonably required to determine the fitness of the petitioner to resume the practice of law: criminal and civil judgments; disciplinary judgments; copies of income tax returns together with consents to secure original returns; occupation during suspension and information in connection therewith; financial statements; and statement of restitution of funds which were the subject matter of disciplinary proceedings.
(d) Deposit for cost. The petition shall be accompanied by proof of a deposit paid to The Florida Bar in such amount as the board of governors shall prescribe to insure payment of reasonable costs of the proceedings. Such costs in the discretion of the board of governors may include court reporters' fees, witness fees and traveling expenses, and reasonable traveling expenses and out-of-pocket costs of the referee and attorneys for The Florida Bar.
(e) Reference of petition for hearing. The chief justice shall refer the petition for reinstatement to a referee for hearing. Provided, however, that no such reference shall be made until evidence is submitted showing that all costs assessed against the petitioner in all disciplinary proceedings have been paid.
(f) Attorney for the bar. When a petition for reinstatement is filed, the board of governors or staff counsel, if authorized by the board of governors, may appoint, from the active members of The Florida Bar designated by the staff counsel to serve as bar counsel, one or more attorneys to represent The Florida Bar in the proceeding. The duties of such attorneys shall be to *1015 appear at the hearings and to prepare and present to the referee evidence which, in the opinion of the referee or such attorneys, should be considered in passing upon the petition.
(g) Determination of fitness by referee hearing. The referee to which the petition for reinstatement is referred shall conduct the hearing as a trial, in the same manner, to the extent practical, as proceedings are conducted under the rule concerning trials. The matter to decide shall be the fitness of the petitioner to resume the practice of law.
(h) Hearing; notice; evidence.
(1) Notice. The referee to whom the petition for reinstatement is referred shall fix a time and place for hearing, and notice thereof shall be given at least ten (10) days prior to the hearing to the petitioner, to attorneys representing The Florida Bar, and to such other persons as may be designated by the referee to whom the petition is referred.
(2) Appearance. Any of said persons to whom notice is given, any other interested persons or any local bar association may appear before said referee in support of or in opposition to the petition at any time or times fixed for hearings thereon.
(3) Failure of petitioner to be examined. For the failure of the petitioner to submit to examination as a witness pursuant to notice given, the referee shall dismiss the petition for reinstatement unless good cause is shown for such failure.
(i) Prompt hearing; report. The referee to whom a petition for reinstatement has been referred by the chief justice shall proceed to a prompt hearing, at the conclusion of which the referee shall make and file with the Supreme Court of Florida a report which shall include the findings of fact and a recommendation as to whether or not the petitioner is qualified to resume the practice of law. Such report shall be in the form prescribed by the board. The referee shall file the report and record in the Supreme Court of Florida and shall serve a copy of the report and record on staff counsel and a copy of the report only on all other parties. Staff counsel shall make a copy of the record, as furnished, available to other parties upon request and payment of actual costs of reproduction.
(j) Review. Review of referee reports in reinstatement proceedings shall be in accordance with rule 3-7.6.
(k) Judgment. If the petitioner is found unfit to resume the practice of law, the petition shall be dismissed. If the petitioner is found fit to resume the practice of law, the judgment shall reinstate him in The Florida Bar; provided, however, that the judgment may make such reinstatement conditional upon the payment of all or part of the costs of the proceeding and upon the making of partial or complete restitution to parties harmed by the petitioner's misconduct which led to the petitioner's suspension of membership in The Florida Bar; and further provided, however, if suspension of petitioner has continued for more than three (3) years, the reinstatement may be conditioned upon the furnishing of such proof of competency as may be required by the judgment in the discretion of the Supreme Court of Florida, which proof may include certification by the Florida Board of Bar Examiners of the successful completion of an examination for admission to The Florida Bar subsequent to the date of the suspension.
(l) Successive petitions. No petition for reinstatement shall be filed within one year following an adverse judgment upon a petition for reinstatement filed by or on behalf of the same person.
(m) Readmission after resignation. In the case of a resignation submitted in connection with a disciplinary action, no readmission application may be filed until three (3) years after the date of the order of the Supreme Court of Florida which accepted such resignation or such additional time as the attorney may have stated in a petition to resign and not until all costs in disciplinary cases that were dismissed because of the resignation have been paid by the applicant for readmission. If an attorney's petition to resign states that it is without leave *1016 to apply for readmission permanently, such condition shall preclude any readmission.
(n) Petitions for reinstatement to membership in good standing. Petitions for reinstatement under this rule are available to suspended members of the bar when the disciplinary judgment conditions their reinstatement upon a showing of compliance with specified conditions.
(1) Style of petition. Petitions shall be styled in the Supreme Court of Florida and filed with the Supreme Court of Florida in quadruplicate, with a copy served on staff counsel and The Florida Bar in Tallahassee.
(2) Contents of petition. The petition shall be verified by petitioner and shall be accompanied by a written authorization to the District Director of the Internal Revenue Service, authorizing the furnishing of certified copies of petitioner's tax returns for the past five (5) years or since admission to the bar, whichever is greater. Said authorization shall be furnished on a separate sheet. Said petition shall have attached as an exhibit a true copy of all disciplinary judgments previously entered against the petitioner. It shall also include petitioner's statement concerning the following:
a. Name, age, residence, address, and number and relation of dependents of the petitioner;
b. The offense or misconduct upon which the suspension was based, together with the date of such suspension;
c. The names and addresses of all complaining witnesses in any disciplinary proceedings which resulted in suspension; and the name and address of the referee or judge who heard such disciplinary proceedings or of the trial judge, complaining witnesses, and prosecuting attorney, if suspension was based upon conviction of a felony or misdemeanor involving moral turpitude;
d. The nature of petitioner's occupation in detail since suspension with names and addresses of all partners, associates in business, and employers, if any, and dates and duration of all such relations and employments;
e. A statement showing the approximate monthly earnings and other income of petitioner and the sources from which all such earnings and income were derived during said period;
f. A statement showing all residences maintained during said period, with names and addresses of landlords, if any;
g. A statement showing all financial obligations of petitioner including but not limited to amounts claimed, unpaid, or owing to the Florida Bar Clients' Security Fund or former clients at date of filing of the petition, together with the names and addresses of all creditors;
h. A statement of restitution made for any and all obligations to all former clients and the Florida Bar Clients' Security Fund and the source and amount of funds used for this purpose;
i. A statement showing dates, general nature and ultimate disposition of every matter involving the arrest or prosecution of petitioner during said period for any crime, whether felony or misdemeanor, together with the names and addresses of complaining witnesses, prosecuting attorneys, and trial judges;
j. A statement as to whether or not any applications were made during said period for a license requiring proof of good character for its procurement; and, as to each such application, the dates, name, and address of the authority to whom it was addressed and the disposition thereof;
k. A statement of any procedure or inquiry, during said period, covering petitioner's standing as a member of any profession or organization, or holder of any license or office, which involved the censure, removal, suspension, revocation of license, or discipline of petitioner; and, as to each, the dates, facts, and the disposition thereof and the name and address of the authority in possession of the record thereof;
l. A statement as to whether or not any charges of fraud were made or claimed against petitioner during said period, *1017 whether formal or informal, together with the dates and names and addresses of persons making such charges;
m. A concise statement of facts claimed to justify reinstatement to The Florida Bar;
n. A statement showing the dates, general nature, and final disposition of every civil action wherein petitioner was either a party plaintiff or defendant, together with dates of filing of complaints, titles of courts and causes, and the names and addresses of all parties and of the trial judge or judges, and names and addresses of all witnesses who testified in said action or actions; and
o. A statement showing what amounts, if any, of the costs assessed against the accused attorney in the prior disciplinary proceedings against him have been paid by the accused attorney and the source and amount of funds used for this purpose.
(3) Comments on petition. Upon the appointment of a referee and bar counsel, copies of the petition shall be furnished by the executive director to local board members, local grievance committees, and to such other persons as are mentioned in this rule. Persons will be asked to direct their comments to bar counsel. The proceedings and finding of the referee shall relate to those matters described in this rule, and also to those matters tending to show petitioner's rehabilitation, present fitness to resume the practice of law, and the effect of such proposed reinstatement upon the administration of justice and purity of the courts and confidence of the public in the profession.
(4) Costs deposit. The petition shall be accompanied by a deposit for costs of $500.
3-7.10 General rules of procedure.
(a) Time is directory. Except as provided herein, the time intervals required are directory only and are not jurisdictional. Failure to observe such directory intervals may result in contempt of the agency having jurisdiction or of the Supreme Court of Florida, but will not prejudice the offending party except where so provided.
(b) Process. Every member of The Florida Bar is charged with notifying The Florida Bar of a change of mailing address or military status. Mailing of registered or certified papers or notices prescribed in these rules to the last mailing address of an attorney as shown by the official records in the office of the executive director of The Florida Bar shall be sufficient notice and service unless this Court shall direct otherwise. Every attorney of another state who is permitted to practice for the purpose of a specific case before a court of record of this state may be served by registered or certified mail addressed to said attorney in care of the Florida attorney who was associated or appeared with the attorney in the specific case for which the out-of-state attorney was permitted to practice or addressed to said attorney at any address listed by the attorney in the pleadings in such case.
(c) Notice in lieu of process. Every member of The Florida Bar is within the jurisdiction of the Supreme Court of Florida and its agencies under these rules, and service of process is not required to obtain jurisdiction over respondents in disciplinary proceedings; but due process requires the giving of reasonable notice and such shall be effective by the service of the complaint upon the respondent by mailing a copy thereof by registered or certified mail return receipt requested to the last-known address of the respondent according to the records of The Florida Bar or such later address as may be known to the person effecting the service.
(d) Subpoenas. Subpoenas for the attendance of witnesses and the production of documentary evidence other than before a circuit court shall be issued as follows:
(1) Referees. Subpoenas for the attendance of witnesses and production of documentary evidence before a referee shall be issued by the referee and shall be served in the manner provided by law for the service of process.
(2) Grievance committees. Subpoenas for the attendance of witnesses and the production of documentary evidence may *1018 be issued by the chairperson or vice-chairperson of a grievance committee in pursuance of an investigation authorized by the committee. Such subpoenas may be served by any member of such committee or in the manner provided by law for the service of process.
(3) Board of governors. Subpoenas for the attendance of witnesses and the production of documentary evidence before the board of governors shall be issued by the executive director under the seal of The Florida Bar and shall be served in the manner provided by law for the service of process.
(4) Confidential proceedings. If the proceeding is confidential a subpoena shall not name the respondent but shall style the proceeding as "Confidential Proceeding by The Florida Bar under the Rules of Discipline."
(5) Contempt. Any persons who without adequate excuse fail to obey such a subpoena served upon them may be cited for contempt of this Court in the manner provided by this rule.
(e) Oath of witnesses. Every witness in every proceeding under these rules shall be sworn to tell the truth and not to disclose the existence of the proceeding and the identity of the respondent until the proceeding is no longer confidential under these rules. Violation of the oath shall be an act of contempt of this Court.
(f) Contempt. If an agency other than a circuit court shall find that a person is in contempt under these rules, such person shall be cited for contempt in the following manner, except that a respondent in a disciplinary proceeding may be cited for contempt by petition for an order to show cause filed and heard in the Supreme Court of Florida or in the circuit court:
(1) Petition for order to show cause. The agency shall direct bar counsel or chairperson of the agency if there is no bar counsel serving in the matter in which the contempt occurs to present to the circuit court having jurisdiction a petition for the issuance of an order to show cause why the person so accused should not be held in contempt of this Court.
(2) Confidentiality. If the proceeding in which the contempt occurs is a confidential proceeding, the confidentiality shall be preserved in the contempt proceeding in the following manner: pleadings shall be styled "Proceeding by The Florida Bar under the Rules of Discipline, The Florida Bar v. (name of accused in contempt proceeding)." No pleadings or matters shall be filed with the clerk of the circuit court; instead all such matters shall be presented to the circuit judge hearing the same and shall be returned to the agency upon completion of the contempt proceedings and then filed with the record in the disciplinary case. Docket entries and sentences or judgments in contempt in the circuit court shall be styled as provided for in the pleadings and shall make no references to the respondent in the disciplinary proceedings in which the contempt occurred. If the name of the respondent shall become of public record, the court having jurisdiction in the contempt proceeding shall take appropriate steps to preserve the confidentiality of the disciplinary proceedings and shall consider whether or not the person responsible for the making of the name of the respondent of public record is also guilty of contempt under these Rules of Discipline.
(3) Appellate review. A judgment in such contempt proceedings may be appealed by either party in the manner provided in the rule on appellate review, except that a copy of the petition for review shall not be filed with the clerk of the circuit court, and the record shall be forwarded by the judge or the agency possessing the same.
(g) Testimony of witnesses; contempt. Unless the respondent claims a privilege or right properly available under applicable law, the respondent or any other person who is subpoenaed to appear and give testimony or produce books, papers, or documents and who refuses to appear or produce such books, papers, or documents or who, having been duly sworn to testify, refuses to answer any proper question may be cited for contempt of this Court. Any *1019 contempt proceedings instituted or prosecuted during the progress of an investigation or trial covered by the confidential rule shall be conducted in a manner consistent with such rule and shall not be made public except under conditions prescribed in such rule.
(h) Court reporters. Court reporters who are full- or part-time employees of The Florida Bar may be appointed to report any disciplinary proceeding. If the respondent attorney objects at least forty-eight (48) hours in advance of the matter to be recorded, an independent contract reporter may be retained. Reasonable costs for court reporter service may be taxed to a respondent for payment to The Florida Bar.
(i) Disqualification as trier and attorney for respondent due to conflict.
(1) Employees and members of the board of governors. No employee of The Florida Bar and no member of the board of governors of The Florida Bar shall represent a party other than The Florida Bar in any of the following specific matters:
a. Designation appeals;
b. Certification appeals;
c. Appeals to or from the committee on professional ethics; and
d. Cases being investigated or litigated involving the unlicensed practice of law.
(2) Former members or employees. No former member of the board of governors or former employee of The Florida Bar shall represent any party other than The Florida Bar in such matters if personally involved to any degree in the matter while a member of the board of governors or while an employee of The Florida Bar.
(3) Attorneys precluded from representing parties other than The Florida Bar. An attorney shall not represent any party other than The Florida Bar in proceedings provided for in these disciplinary rules under any of the following circumstances:
a. If the attorney is a member or former member of the board of governors, member or former member of any grievance committee, or employee or former employee of The Florida Bar and while in such capacity participated personally in any way in the investigation or prosecution of the matter or any related matter in which the attorney seeks to be a representative or if the attorney served in a supervisory capacity over such investigation or prosecution;
b. A partner, associate, employer, or employee of an attorney prohibited from representation by paragraph (3) a shall likewise be prohibited from representing any such party;
c. A member of the board shall not represent any party except The Florida Bar while serving as a member of the board of governors or for one year thereafter;
d. An employee of The Florida Bar shall not represent any party except The Florida Bar while an employee of The Florida Bar and shall not thereafter represent such party for a period of one year without the express consent of the board;
e. A member of a grievance committee shall not represent any party except The Florida Bar while a member of a grievance committee and shall not thereafter represent such party for a period of one year without the express consent of the board; and
f. A partner, associate, employer, or employee of an attorney prohibited from representation by paragraphs (3)c, (3)d, and (3)e of this rule shall not represent any party except The Florida Bar without the express consent of the board of governors.
3-7.11 Resignation from The Florida Bar. If a disciplinary agency is investigating the conduct of an attorney, or if such an agency has recommended probable cause, then disciplinary proceedings shall be deemed to be pending and the resignation shall be made pursuant to this rule. An attorney may resign from The Florida Bar during the progress of disciplinary proceedings in the following manner:
(a) Petition for leave to resign. The petition for leave to resign shall be filed with the Supreme Court of Florida and *1020 shall contain a statement of all past and pending disciplinary actions and criminal proceedings against the petitioner. Such statement shall describe the charges made or those under investigation for professional misconduct, results of past proceedings and the status of pending investigations and proceedings. The petition shall state whether it is with or without leave to reapply. A copy of the petition shall be served upon the executive director of The Florida Bar.
(b) Judgment. Within sixty (60) days after filing and service of the petition, The Florida Bar may file with the Supreme Court of Florida its response to the petition either supporting or opposing the petition for leave to resign. A copy of the response shall be served upon petitioner. The Supreme Court of Florida shall consider the petition, any response thereto, and the charges against the petitioner. If it has been shown by the petitioner in a proper and competent manner that the public interest will not be adversely affected by the granting of the petition and that such will not adversely affect the purity of the courts nor hinder the administration of justice nor the confidence of the public in the legal profession, the Supreme Court of Florida shall enter an appropriate judgment granting leave to resign; otherwise, the petition shall be denied. If the judgment grants to the petitioner leave to resign, the judgment may require that the resignation be subject to appropriate conditions.
(c) Delay of disciplinary proceedings. The filing of a petition for leave to resign pending disciplinary proceedings shall not stay the progress of the disciplinary proceedings without the approval of the board or, if a referee has been appointed and evidence has been taken, then with the approval of the referee.
(d) Dismissal of pending disciplinary cases. If resignation is accepted under this rule, such resignation shall serve to dismiss all pending disciplinary cases. The resigned attorney may be readmitted as a member of The Florida Bar in good standing pursuant to rule 3-7.9(a) and (m) and upon full compliance with any conditions required by the judgment which granted the leave to resign. A rejection of such application may be reviewed by petition to the Supreme Court.
3-7.12 Placement on inactive list for incapacity not related to misconduct. Whenever an attorney who has not been adjudged incompetent is incapable of practicing law because of physical or mental illness, incapacity, or other infirmity, the attorney may be placed upon an inactive list and shall refrain from the practice of law for such reason even though no misconduct is alleged or proved. Proceedings with a view of placing an attorney on the inactive list under this section shall be processed under the Rules of Discipline in the same manner as proceedings involving acts of misconduct. A member who has been placed on such inactive list may be readmitted upon application to and approval by the board of governors. A rejection of such petition may be reviewed by petition to the Supreme Court of Florida.
A lawyer who has been adjudicated insane or mentally incompetent or hospitalized under the Florida Mental Health Act shall be placed on an inactive list and shall refrain from the practice of law. If an order of restoration is entered by a court having jurisdiction or the lawyer is discharged from hospitalization under the Florida Mental Health Act, the lawyer may be readmitted upon application to and approval by the board of governors. A rejection of such petition may be reviewed by petition to the Supreme Court of Florida.
3-7.13 Florida Statutes superseded. These Rules of Discipline shall supersede such parts of sections 454.18, 454.31, and 454.32, Florida Statutes (1977), as are in conflict herewith.
3-7.14 Amendments. Petitions for revision of or amendments to chapter 3 will be entertained by this Court when presented by the board of governors or by not fewer than fifty (50) active members of The Florida Bar. Notice of intention to file such petition together with a copy of the proposed *1021 amendment shall be published in The Florida Bar News not less than thirty (30) days prior to the filing of such petition. The Court will thereafter accept objections or comments on such petition.

Chapter 4

RULES OF PROFESSIONAL CONDUCT

PREAMBLE: A Lawyer's Responsibilities
A lawyer is a representative of clients, an officer of the legal system, and a public citizen having special responsibility for the quality of justice.
As a representative of clients, a lawyer performs various functions. As an adviser, a lawyer provides a client with an informed understanding of the client's legal rights and obligations and explains their practical implications. As an advocate, a lawyer zealously asserts the client's position under the rules of the adversary system. As a negotiator, a lawyer seeks a result advantageous to the client but consistent with requirements of honest dealing with others. As an intermediary between clients, a lawyer seeks to reconcile their interests as an adviser and, to a limited extent, as a spokesman for each client. A lawyer acts as an evaluator by examining a client's legal affairs and reporting about them to the client or to others.
In all professional functions a lawyer should be competent, prompt, and diligent. A lawyer should maintain communication with a client concerning the representation. A lawyer should keep in confidence information relating to representation of a client except so far as disclosure is required or permitted by the Rules of Professional Conduct or by law.
A lawyer's conduct should conform to the requirements of the law, both in professional service to clients and in the lawyer's business and personal affairs. A lawyer should use the law's procedures only for legitimate purposes and not to harass or intimidate others. A lawyer should demonstrate respect for the legal system and for those who serve it, including judges, other lawyers, and public officials. While it is a lawyer's duty, when necessary, to challenge the rectitude of official action, it is also a lawyer's duty to uphold legal process.
As a public citizen, a lawyer should seek improvement of the law, the administration of justice, and the quality of service rendered by the legal profession. As a member of a learned profession, a lawyer should cultivate knowledge of the law beyond its use for clients, employ that knowledge in reform of the law, and work to strengthen legal education. A lawyer should be mindful of deficiencies in the administration of justice and of the fact that the poor, and sometimes persons who are not poor, cannot afford adequate legal assistance, and should therefore devote professional time and civic influence in their behalf. A lawyer should aid the legal profession in pursuing these objectives and should help the bar regulate itself in the public interest.
Many of the lawyer's professional responsibilities are prescribed in the Rules of Professional Conduct and in substantive and procedural law. A lawyer is also guided by personal conscience and the approbation of professional peers. A lawyer should strive to attain the highest level of skill, to improve the law and the legal profession, and to exemplify the legal profession's ideals of public service.
A lawyer's responsibilities as a representative of clients, an officer of the legal system, and a public citizen are usually harmonious. Zealous advocacy is not inconsistent with justice. Moreover, unless violations of law or injury to another or his property are involved, preserving client confidences ordinarily serves the public interest because people are more likely to seek legal advice, and thereby heed their legal obligations, when they know their communications will be private.
In the practice of law conflicting responsibilities are often encountered. Difficult ethical problems may arise from a conflict between a lawyer's responsibility to a client and the lawyer's own sense of personal honor, including obligations to society and *1022 the legal profession. The Rules of Professional Conduct prescribe terms for resolving such conflicts. Within the framework of these rules many difficult issues of professional discretion can arise. Such issues must be resolved through the exercise of sensitive professional and moral judgment guided by the basic principles underlying the rules.
Lawyers are officers of the court and they are responsible to the judiciary for the propriety of their professional activities. Within that context, the legal profession has been granted powers of self-government. Self-regulation helps maintain the legal profession's independence from undue government domination. An independent legal profession is an important force in preserving government under law, for abuse to legal authority is more readily challenged by a profession whose members are not dependent on the executive and legislative branches of government for the right to practice. Supervision by an independent judiciary, and conformity with the rules the judiciary adopts for the profession, assures both independence and responsibility.
Thus, every lawyer is responsible for observance of the Rules of Professional Conduct. A lawyer should also aid in securing their observance by other lawyers. Neglect of these responsibilities compromises the independence of the profession and the public interest which it serves.

Scope:
The Rules of Professional Conduct are rules of reason. They should be interpreted with reference to the purposes of legal representation and of the law itself. Some of the rules are imperatives, cast in the terms of "shall" or "shall not." These define proper conduct for purposes of professional discipline. Others, generally cast in the term "may," are permissive and define areas under the rules in which the lawyer has professional discretion. No disciplinary action should be taken when the lawyer chooses not to act or acts within the bounds of such discretion. Other rules define the nature of relationships between the lawyer and others. The rules are thus partly obligatory and disciplinary and partly constitutive and descriptive in that they define a lawyer's professional role.
The comment accompanying each rule explains and illustrates the meaning and purpose of the rule. The comments are intended only as guides to interpretation, whereas the text of each rule is authoritative. Thus, comments, even when they use the term "should," do not add obligations to the rules but merely provide guidance for practicing in compliance with the rules.
The rules presuppose a larger legal context shaping the lawyer's role. That context includes court rules and statutes relating to matters of licensure, laws defining specific obligations of lawyers and substantive and procedural law in general. Compliance with the rules, as with all law in an open society, depends primarily upon understanding and voluntary compliance, secondarily upon reinforcement by peer and public opinion, and finally, when necessary, upon enforcement through disciplinary proceedings. The rules do not, however, exhaust the moral and ethical considerations that should inform a lawyer, for no worthwhile human activity can be completely defined by legal rules. The rules simply provide a framework for the ethical practice of law.
Furthermore, for purposes of determining the lawyer's authority and responsibility, principles of substantive law external to these rules determine whether a client-lawyer relationship exists. Most of the duties flowing from the client-lawyer relationship attach only after the client has requested the lawyer to render legal services and the lawyer has agrees to do so. But there are some duties, such as that of confidentiality under rule 4-1.6, which may attach when the lawyer agrees to consider whether a client-lawyer relationship shall be established. Whether a client-lawyer relationship exists for any specific purpose can depend on the circumstances and may be a question of fact.
*1023 Failure to comply with an obligation or prohibition imposed by a rule is a basis for invoking the disciplinary process. The rules presuppose that disciplinary assessment of a lawyer's conduct will be made on the basis of the facts and circumstances as they existed at the time of the conduct in question in recognition of the fact that a lawyer often has to act upon uncertain or incomplete evidence of the situation. Moreover, the rules presuppose that whether or not discipline should be imposed for a violation, and the severity of a sanction, depend on all the circumstances, such as the willfulness and seriousness of the violation, extenuating factors, and whether there have been previous violations.
Violation of a rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached. The rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the rule. Accordingly, nothing in the rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such duty.
Moreover, these rules are not intended to govern or affect judicial application of either the attorney-client or work product privilege. Those privileges were developed to promote compliance with law and fairness in litigation. In reliance on the attorney-client privilege, clients are ordinarily entitled to expect that communications within the scope of the privilege will be protected against compelled disclosure. The attorney-client privilege is that of the client and not of the lawyer. In exceptional situations, the rules might allow or require the lawyer to disclose a client confidence. This, however, does not vitiate the proposition that, as a general matter, the client has a reasonable expectation that information relating to the client will not be voluntarily disclosed and that disclosure of such information may be compelled only in accordance with recognized exceptions to the attorney-client and work product privileges.
The lawyer's exercise of discretion not to disclose information under rule 4-1.6 should not be subject to reexamination. Permitting such reexamination would be incompatible with the general policy of promoting compliance with law through assurances that communications will be protected against disclosure.

Terminology:
"Belief" or "believes" denotes that the person involved actually supposed the fact in question to be true. A person's belief may be inferred from circumstances.
"Consult" or "consultation" denotes communication of information reasonably sufficient to permit the client to appreciate the significance of the matter in question.
"Firm" or "law firm" denotes a lawyer or lawyers in a private firm, lawyers employed in the legal department of a corporation or other organization and lawyers employed in a legal services organization. See comment, rule 4-1.10.
"Fraud" or "fraudulent" denotes conduct having a purpose to deceive and not merely negligent misrepresentation or failure to apprise another of relevant information.
"Knowingly," "known," or "knows" denotes actual knowledge of the fact in question. A person's knowledge may be inferred from circumstances.
"Lawyer" denotes a person who is a member of The Florida Bar or otherwise authorized to practice in any court of the State of Florida.
"Partner" denotes a member of a partnership and a shareholder in a law firm organized as a professional corporation.
*1024 "Reasonable" or "reasonably" when used in relation to conduct by a lawyer denotes the conduct of a reasonably prudent and competent lawyer.
"Reasonable belief" or "reasonably believes" when used in reference to a lawyer denotes that the lawyer believes the matter in question and that the circumstances are such that the belief is reasonable.
"Reasonably should know" when used in reference to a lawyer denotes that a lawyer of reasonable prudence and competence would ascertain the matter in question.
"Substantial" when used in reference to degree or extent denotes a material matter of clear and weighty importance.
4-1 Client-lawyer relationship.
4-1.1 Competence. A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation.

Comment:

Legal knowledge and skill
In determining whether a lawyer employs the requisite knowledge and skill in a particular matter, relevant factors include the relative complexity and specialized nature of the matter, the lawyer's general experience, the lawyer's training and experience in the field in question, the preparation and study the lawyer is able to give the matter, and whether it is feasible to refer the matter to, or associate or consult with, a lawyer of established competence in the field in question. In many instances the required proficiency is that of a general practitioner. Expertise in a particular field of law may be required in some circumstances.
A lawyer need not necessarily have special training or prior experience to handle legal problems of a type with which the lawyer is unfamiliar. A newly admitted lawyer can be as competent as a practitioner with long experience. Some important legal skills, such as the analysis of precedent, the evaluation of evidence and legal drafting, are required in all legal problems. Perhaps the most fundamental legal skill consists of determining what kind of legal problems a situation may involve, a skill that necessarily transcends any particular specialized knowledge. A lawyer can provide adequate representation in a wholly novel field through necessary study. Competent representation can also be provided through the association of a lawyer of established competence in the field in question.
In an emergency a lawyer may give advice or assistance in a matter in which the lawyer does not have the skill ordinarily required where referral to or consultation or association with another lawyer would be impractical. Even in an emergency, however, assistance should be limited to that reasonably necessary in the circumstances, for ill-considered action under emergency conditions can jeopardize the client's interest.
A lawyer may accept representation where the requisite level of competence can be achieved by reasonable preparation. This applies as well to a lawyer who is appointed as counsel for an unrepresented person. See also rule 4-6.2.

Thoroughness and preparation
Competent handling of a particular matter includes inquiry into and analysis of the factual and legal elements of the problem, and use of methods and procedures meeting the standards of competent practitioners. It also includes adequate preparation. The required attention and preparation are determined in part by what is at stake; major litigation and complex transactions ordinarily require more elaborate treatment than matters of lesser consequence. The lawyer should consult with the client about the degree of thoroughness and the level of preparation required as well as the estimated costs involved under the circumstances.

Maintaining competence
To maintain the requisite knowledge and skill, a lawyer should engage in continuing study and education.
*1025 4-1.2 Scope of representation.
(a) A lawyer shall abide by a client's decisions concerning the objectives of representation, subject to paragraphs (c), (d), and (e), and shall consult with the client as to the means by which they are to be pursued. A lawyer shall abide by a client's decision whether to make or accept an offer of settlement of a matter. In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.
(b) A lawyer's representation of a client, including representation by appointment, does not constitute an endorsement of the client's political, economic, social, or moral views or activities.
(c) A lawyer may limit the objectives of the representation if the client consents after consultation.
(d) A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows or reasonably should know is criminal or fraudulent. However, a lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or assist a client to make a good faith effort to determine the validity, scope, meaning, or application of the law.
(e) When a lawyer knows or reasonably should know that a client expects assistance not permitted by the rules of professional conduct or by law, the lawyer shall consult with the client regarding the relevant limitations on the lawyer's conduct.

Comment:

Scope of representation
Both lawyer and client have authority and responsibility in the objectives and means of representation. The client has ultimate authority to determine the purposes to be served by legal representation, within the limits imposed by law and the lawyer's professional obligations. Within those limits, a client also has a right to consult with the lawyer about the means to be used in pursuing those objectives. At the same time, a lawyer is not required to pursue objectives or employ means simply because a client may wish that the lawyer do so. A clear distinction between objectives and means sometimes cannot be drawn, and in many cases the client-lawyer relationship partakes of a joint undertaking. In questions of means, the lawyer should assume responsibility for technical and legal tactical issues but should defer to the client regarding such questions as the expense to be incurred and concern for third persons who might be adversely affected. Law defining the lawyer's scope of authority in litigation varies among jurisdictions.
In a case in which the client appears to be suffering mental disability, the lawyer's duty to abide by the client's decisions is to be guided by reference to rule 4-1.14.

Independence from client's views or activities
Legal representation should not be denied to people who are unable to afford legal services or whose cause is controversial or the subject of popular disapproval. By the same token representing a client does not constitute approval of the client's views or activities.

Services limited in objectives or means
The objectives or scope of services provided by a lawyer may be limited by agreement with the client or by the terms under which the lawyer's services are made available to the client. For example, a retainer may be for a specifically defined purpose. Representation provided through a legal aid agency may be subject to limitations on the types of cases the agency handles. When a lawyer has been retained by an insurer to represent an insured, the representation may be limited to matters related to the insurance coverage. The terms upon which representation is undertaken may exclude specific objectives or means. Such limitations may exclude objectives or means that the lawyer regards as repugnant or imprudent.
An agreement concerning the scope of representation must accord with the Rules *1026 of Professional Conduct and law. Thus, the client may not be asked to agree to representation so limited in scope as to violate rule 4-1.1 or to surrender the right to terminate the lawyer's services or the right to settle litigation that the lawyer might wish to continue.

Criminal, fraudulent, and prohibited transactions
A lawyer is required to give an honest opinion about the actual consequences that appear likely to result from a client's conduct. The fact that a client uses advice in a course of action that is criminal or fraudulent does not, of itself, make a lawyer a party to the course of action. However, a lawyer may not assist a client in conduct which the lawyer knows or reasonably should know to be criminal or fraudulent. There is a critical distinction between presenting an analysis of legal aspects of questionable conduct and recommending the means by which a crime or fraud might be committed with impunity.
When the client's course of action has already begun and is continuing, the lawyer's responsibility is especially delicate. The lawyer is not permitted to reveal the client's wrongdoing, except where permitted or required by rule 4-1.6. However, the lawyer is required to avoid furthering the purpose, for example, by suggesting how it might be concealed. A lawyer may not continue assisting a client in conduct that the lawyer originally supposes is legally proper but then discovers is criminal or fraudulent. Withdrawal from the representation, therefore, may be required.
Where the client is a fiduciary, the lawyer may be charged with special obligations in dealings with a beneficiary.
Paragraph (d) applies whether or not the defrauded party is a party to the transaction. Hence, a lawyer should not participate in a sham transaction; for example, a transaction to effectuate criminal or fraudulent escape of tax liability. Paragraph (d) does not preclude undertaking a criminal defense incident to a general retainer for legal services to a lawful enterprise. The last sentence of paragraph (d) recognizes that determining the validity or interpretation of a statute or regulation may require a course of action involving disobedience of the statute or regulation or of the interpretation placed upon it by governmental authorities.
4-1.3 Diligence. A lawyer shall act with reasonable diligence and promptness in representing a client.

Comment:
A lawyer should pursue a matter on behalf of a client despite opposition, obstruction or personal inconvenience to the lawyer and may take whatever lawful and ethical measures are required to vindicate a client's cause or endeavor. A lawyer should act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf. However, a lawyer is not bound to press for every advantage that might be realized for a client. A lawyer has professional discretion in determining the means by which a matter should be pursued. See rule 4-1.2. A lawyer's workload should be controlled so that each matter can be handled adequately.
Perhaps no professional shortcoming is more widely resented than procrastination. A client's interests often can be adversely affected by the passage of time or the change of conditions; in extreme instances, as when a lawyer overlooks a statute of limitations, the client's legal position may be destroyed. Even when the client's interests are not affected in substance, however, unreasonable delay can cause a client needless anxiety and undermine confidence in the lawyer.
Unless the relationship is terminated as provided in rule 4-1.16, a lawyer should carry through to conclusion all matters undertaken for a client. If a lawyer's employment is limited to a specific matter, the relationship terminates when the matter has been resolved. If a lawyer has served a client over a substantial period in a variety of matters, the client sometimes may assume that the lawyer will continue to *1027 serve on a continuing basis unless the lawyer gives notice of withdrawal. Doubt about whether a client-lawyer relationship still exists should be clarified by the lawyer, preferably in writing, so that the client will not mistakenly suppose the lawyer is looking after the client's affairs when the lawyer has ceased to do so. For example, if a lawyer has handled a judicial or administrative proceeding that produced a result adverse to the client but has not been specifically instructed concerning pursuit of an appeal, the lawyer should advise the client of the possibility of appeal before relinquishing responsibility for the matter.

4-1.4 Communication.

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

Comment:
The client should have sufficient information to participate intelligently in decisions concerning the objectives of the representation and the means by which they are to be pursued, to the extent the client is willing and able to do so. For example, a lawyer negotiating on behalf of a client should provide the client with facts relevant to the matter, inform the client of communications from another party and take other reasonable steps that permit the client to make a decision regarding a serious offer from another party. A lawyer who receives from opposing counsel an offer of settlement in a civil controversy or a proffered plea bargain in a criminal case should promptly inform the client of its substance unless prior discussions with the client have left it clear that the proposal will be unacceptable. See rule 4-1.2(a). Even when a client delegates authority to the lawyer, the client should be kept advised of the status of the matter.
Adequacy of communication depends in part on the kind of advice or assistance involved. For example, in negotiations where there is time to explain a proposal, the lawyer should review all important provisions with the client before proceeding to an agreement. In litigation a lawyer should explain the general strategy and prospects of success and ordinarily should consult the client on tactics that might injure or coerce others. On the other hand, a lawyer ordinarily cannot be expected to describe trial or negotiation strategy in detail. The guiding principle is that the lawyer should fulfill reasonable client expectations for information consistent with the duty to act in the client's best interests and the client's overall requirements as to the character of representation.
Ordinarily, the information to be provided is that appropriate for a client who is a comprehending and responsible adult. However, fully informing the client according to this standard may be impracticable, for example, where the client is a child or suffers from mental disability. See rule 4-1.14. When the client is an organization or group, it is often impossible or inappropriate to inform every one of its members about its legal affairs; ordinarily, the lawyer should address communications to the appropriate officials of the organization. See rule 4-1.13. Where many routine matters are involved, a system of limited or occasional reporting may be arranged with the client. Practical exigency may also require a lawyer to act for a client without prior consultation.

Withholding information
In some circumstances, a lawyer may be justified in delaying transmission of information when the client would be likely to react imprudently to an immediate communication. Thus, a lawyer might withhold a psychiatric diagnosis of a client when the examining psychiatrist indicates that disclosure would harm the client. A lawyer may not withhold information to serve the lawyer's own interest or convenience. Rules or court orders governing litigation may provide that information supplied to a lawyer may not be disclosed to the client. Rule 4-3.4(c) directs compliance with such rules or orders.
*1028 4-1.5 Fees.
(A) A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee.
(B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following:
(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) The fee customarily charged in the locality for similar legal services;
(4) The amount involved and the results obtained;
(5) The time limitations imposed by the client or by the circumstances;
(6) The nature and length of the professional relationship with the client;
(7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) Whether the fee is fixed or contingent.
(C) When the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation.
(D) As to contingent fees:
(1) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (D)(3) or by law. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial, or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination.
(2) Every lawyer who accepts a retainer or enters into an agreement, express or implied, for compensation for services rendered or to be rendered in any action, claim, or proceeding whereby the lawyer's compensation is to be dependent or contingent in whole or in part upon the successful prosecution or settlement thereof shall do so only where such fee arrangement is reduced to a written contract, signed by the client, and by a lawyer for the lawyer or for the law firm representing the client. No lawyer or firm may participate in the fee without the consent of the client in writing. Each participating lawyer or law firm shall sign the contract with the client and shall agree to assume joint responsibility for the representation. The client shall be furnished with a copy of the signed contract and any subsequent notices or consents. All provisions of this rule shall apply to such fee contracts.
(3) A lawyer shall not enter into an arrangement for, charge, or collect:
(a) Any fee in a domestic relations matter, the payment or amount of which is contingent upon the securing of a divorce or upon the amount of alimony or support, or property settlement in lieu thereof; or
(b) A contingent fee for representing a defendant in a criminal case.
(4) A lawyer who enters into an arrangement for, charges, or collects any fee in an action or claim for personal injury or for property damages or for death or loss of services resulting from personal injuries based upon tortious conduct of another, including products liability claims, whereby the compensation is to be dependent or contingent in whole or in part upon the *1029 successful prosecution or settlement thereof shall do so only under the following requirements:
(a) The contract shall contain the following provisions:
1. "The undersigned client has, before signing this contract, received and read the statement of client's rights and understands each of the rights set forth therein. The undersigned client has signed the statement and received a signed copy to refer to while being represented by the undersigned attorney(s)."
2. "This contract may be cancelled by written notification to the attorney at any time within three (3) business days of the date the contract was signed, as shown below, and if cancelled the client shall not be obligated to pay any fees to the attorney(s) for the work performed during that time. If the attorney(s) have advanced funds to others in representation of the client, the attorney(s) are entitled to be reimbursed for such amounts as they have reasonably advanced on behalf of the client."
(b) The contract for representation of a client in a matter set forth in paragraph (D)(4) may provide for a contingent fee arrangement as agreed upon by the client and the lawyer, except as limited by the following provisions:
1. Without prior court approval as specified below, any contingent fee which exceeds the following standards shall be presumed, unless rebutted, to be clearly excessive:
a. 33-1/3% of any recovery up to $1 million through the time of filing of an answer or the demand for appointment of arbitrators;
b. 40% of any recovery up to $1 million through the trial of the case;
c. 30% of any recovery between $1 and $2 million;
d. 20% of any recovery in excess of $2 million;
e. If all defendants admit liability at the time of filing their answers and request a trial only on damages:
(i) 33-1/3% of any recovery up to $1 million through trial;
(ii) 20% of any recovery from that defendant between $1 and $2 million;
(iii) 15% of any recovery from that defendant in excess of $2 million;
f. An additional 5% of any recovery after notice of appeal is filed or post-judgment relief or action is required for recovery on the judgment.
2. If any client is unable to obtain an attorney of the client's choice because of the limitations set forth in (D)(4)(b)1, the client may petition the circuit court for approval of any fee contract between the client and an attorney of the client's choosing. Such authorization shall be given if the court determines the client has a complete understanding of his or her rights and the terms of the proposed contract. The application for authorization of such a contract can be filed as a separate proceeding before suit or simultaneously with the filing of a complaint. Proceedings thereon may occur before service on the defendant and this aspect of the file may be sealed. Authorization of such a contract shall not bar subsequent inquiry as to whether the fee actually claimed or charged is clearly excessive under paragraphs (A) and (B).
3. In cases where the client is to receive a recovery which will be paid to the client on a future structured or periodic basis, the contingent fee percentage shall only be calculated on the cost of the structured verdict or settlement or, if the cost is unknown, on the present money value of the structured verdict or settlement, whichever is less. If the damages and the fee are to be paid out over the long term future schedule, then this limitation does not apply. No attorney may separately negotiate with the defendant for that attorney's fees in a structured verdict or settlement where such separate negotiations would place the attorney in a position of conflict.
*1030 (c) Before a lawyer enters into a contingent fee contract for representation of a client in a matter set forth in this rule, the lawyer shall provide the client with a copy of the statement of client's rights and shall afford the client with a full and complete opportunity to understand each of the rights as set forth therein. A copy of the statement, signed by both the client and the lawyer, shall be given to the client to retain and the lawyer shall keep a copy in the client's file. The statement shall be retained by the lawyer with the written fee contract and closing statement under the same conditions and requirements as paragraph (D)(5).
(5) In the event there is a recovery, upon the conclusion of the representation, the lawyer shall prepare a closing statement reflecting an itemization of all costs and expenses, together with the amount of fee received by each participating lawyer or law firm. The closing statement shall be executed by all participating lawyers, as well as the client, and each shall receive a copy. Each participating lawyer shall retain a copy of the written fee contract and closing statement for six (6) years after execution of the closing statement. Any contingent fee contract and closing statement shall be available for inspection at reasonable times by the client, by any other person upon judicial order, or by the appropriate disciplinary agency.
(E) A division of fee between lawyers who are not in the same firm may be made only if:
(1) The division is in proportion to the services performed by each lawyer or, by written agreement with the client, each lawyer assumes joint responsibility for the representation;
(2) The client is advised of and does not object to the participation of all the lawyers involved; and
(3) The total fee is reasonable.
(F) Charges made by any lawyer or law firm under an approved credit plan shall be only for services actually rendered or cash actually paid on behalf of the client. No higher fee shall be charged and no additional charge shall be imposed by reason of a lawyer's or law firm's participation in an approved credit plan.

STATEMENT OF CLIENT'S RIGHTS
Before you, the prospective client, arrange a contingent fee agreement with a lawyer, you should understand this statement of your rights as a client. This statement is not a part of the actual contract between you and your lawyer, but, as a prospective client, you should be aware of these rights:
1. There is no legal requirement that a lawyer charge a client a set fee or a percentage of money recovered in a case. You, the client, have the right to talk with your lawyer about the proposed fee and to bargain about the rate or percentage as in any other contract. If you do not reach an agreement with one lawyer you may talk with other lawyers.
2. Any contingent fee contract must be in writing and you have three (3) business days to reconsider the contract. You may cancel the contract without any reason if you notify your lawyer in writing within three (3) business days of signing the contract. If you withdraw from the contract within the first three (3) business days, you do not owe the lawyer a fee although you may be responsible for the lawyer's actual costs during that time. If your lawyer begins to represent you, your lawyer may not withdraw from the case without giving you notice, delivering necessary papers to you, and allowing you time to employ another lawyer. Often, your lawyer must obtain court approval before withdrawing from a case. If you discharge your lawyer without good cause after the three-day period, you may have to pay a fee for work the lawyer has done.
3. Before hiring a lawyer, you, the client, have the right to know about the lawyer's education, training, and experience. If you ask, the lawyer should tell you specifically about his or her actual experience dealing with cases similar to yours. If you ask, the lawyer should provide *1031 information about special training or knowledge and give you this information in writing if you request it.
4. Before signing a contingent fee contract with you, a lawyer must advise you whether he or she intends to handle your case alone or whether other lawyers will be helping with the case. If your lawyer intends to refer the case to other lawyers he or she should tell you what kind of fee sharing arrangement will be made with the other lawyers. If lawyers from different law firms will represent you, at least one lawyer from each law firm must sign the contingent fee contract.
5. If your lawyer intends to refer your case to another lawyer or counsel with other lawyers, your lawyer should tell you about that at the beginning. If your lawyer takes the case and later decides to refer it to another lawyer or to associate with other lawyers, you should sign a new contract which includes the new lawyers. You, the client, also have the right to consult with each lawyer working on your case and each lawyer is legally responsible to represent your interests and is legally responsible for the acts of the other lawyers involved in the case.
6. You, the client, have the right to know in advance how you will need to pay the expenses and the legal fees at the end of the case. If you pay a deposit in advance for costs, you may ask reasonable questions about how the money will be or has been spent and how much of it remains unspent. Your lawyer should give a reasonable estimate about future necessary costs. If your lawyer agrees to lend or advance you money to prepare or research the case, you have the right to know periodically how much money your lawyer has spent on your behalf. You also have the right to decide, after consulting with your lawyer, how much money is to be spent to prepare a case. If you pay the expenses, you have the right to decide how much to spend. Your lawyer should also inform you whether the fee will be based on the gross amount recovered or on the amount recovered minus the costs.
7. You, the client, have the right to be told by your lawyer about possible adverse consequences if you lose the case. Those adverse consequences might include money which you might have to pay to your lawyer for costs and liability you might have for attorney's fees to the other side.
8. You, the client, have the right to receive and approve a closing statement at the end of the case before you pay any money. The statement must list all of the financial details of the entire case, including the amount recovered, all expenses, and a precise statement of your lawyer's fee. Until you approve the closing statement you need not pay any money to anyone, including your lawyer. You also have the right to have every lawyer or law firm working on your case sign this closing statement.
9. You, the client, have the right to ask your lawyer at reasonable intervals how the case is progressing and to have these questions answered to the best of your lawyer's ability.
10. You, the client, have the right to make the final decision regarding settlement of a case. Your lawyer must notify you of all offers of settlement before and after the trial. Offers during the trial must be immediately communicated and you should consult with your lawyer regarding whether to accept a settlement. However, you must make the final decision to accept or reject a settlement.
11. If at any time, you, the client, believe that your lawyer has charged an excessive or illegal fee, you, the client, have the right to report the matter to The Florida Bar, the agency that oversees the practice and behavior of all lawyers in Florida. For information on how to reach The Florida Bar, call XXX-XXX-XXXX, or contact the local bar association. Any disagreement between you and your lawyer about a fee can be taken to court and you may wish to hire another lawyer to help you resolve this disagreement. Usually fee disputes must be handled in a separate lawsuit.
*1032
____________________ ______________________
 Client Signature Attorney Signature
____________________ ______________________
 Date Date

Comment:

Basis or rate of fee
When the lawyer has regularly represented a client, they ordinarily will have evolved an understanding concerning the basis or rate of the fee. In a new client-lawyer relationship, however, an understanding as to the fee should be promptly established. It is not necessary to recite all the factors that underlie the basis of the fee, but only those that are directly involved in its computation. It is sufficient, for example, to state the basic rate is an hourly charge or a fixed amount or an estimated amount, or to identify the factors that may be taken into account in finally fixing the fee. When developments occur during the representation that render an earlier estimate substantially inaccurate, a revised estimate should be provided to the client. A written statement concerning the fee reduces the possibility of misunderstanding. Furnishing the client with a simple memorandum or a copy of the lawyer's customary fee schedule is sufficient if the basis or rate of the fee is set forth.
Rule 4-1.8(e) should be consulted regarding a lawyer's providing financial assistance to a client in connection with litigation.

Terms of payment
A lawyer may require advance payment of a fee, but is obliged to return any unearned portion. See rule 4-1.16(d). A lawyer is not, however, required to return retainers which, pursuant to an agreement with a client, are not refundable. A lawyer may accept property in payment for services, such as an ownership interest in an enterprise, providing this does not involve acquisition of a proprietary interest in the cause of action or subject matter of the litigation contrary to rule 4-1.8(i). However, a fee paid in property instead of money may be subject to special scrutiny because it involves questions concerning both the value of the services and the lawyer's special knowledge of the value of the property.
An agreement may not be made whose terms might induce the lawyer improperly to curtail services for the client or perform them in a way contrary to the client's interest. For example, a lawyer should not enter into an agreement whereby services are to be provided only up to a stated amount when it is foreseeable that more extensive services probably will be required, unless the situation is adequately explained to the client. Otherwise, the client might have to bargain for further assistance in the midst of a proceeding or transaction. However, it is proper to define the extent of services in light of the client's ability to pay. A lawyer should not exploit a fee arrangement based primarily on hourly charges by using wasteful procedures. When there is doubt whether a contingent fee is consistent with the client's best interest, the lawyer should offer the client alternative bases for the fee and explain their implications. Applicable law may impose limitations on contingent fees, such as a ceiling on the percentage.
Rule 4-1.5(D)(3) does not apply to lawyers seeking to obtain or enforce judgments for arrearages.

Contingent fee regulation
Rule 4-1.5(D)(4) should not be construed to apply to actions or claims seeking property or other damages arising in the commercial litigation context.
Rule 4-1.5(D)(4)(b) is intended to apply only to contingent aspects of fee agreements. In the situation where a lawyer and client enter a contract for part noncontingent and part contingent attorney's fees, rule 4-1.5(D)(4)(b) should not be construed to apply to and prohibit or limit the noncontingent portion of the fee agreement. An attorney could properly charge and retain the noncontingent portion of the fee even if the matter was not successfully prosecuted or if the noncontingent portion of the fee exceeded the schedule set forth in rule 4-1.5(D)(4)(b). Rule 4-1.5(D)(4)(b) should, *1033 however, be construed to apply to any additional contingent portion of such a contract when considered together with earned noncontingent fees. Thus, under such a contract a lawyer may demand or collect only such additional contingent fees as would not cause the total fees to exceed the schedule set forth in rule 4-1.5(D)(4)(b).
The limitations in rule 4-1.5(D)(4)(b)1.d. are only to be applied in the case where all the defendants admit liability at the time they file their initial answer and the trial is only on the issue of the amount or extent of the loss or the extent of injury suffered by the client. If the trial involves not only the issue of damages but such questions as proximate cause, affirmative defenses, seat belt defense, or other similar matters, the limitations are not to be applied because of the contingent nature of the case being left for resolution by the trier of fact.
Rule 4-1.5(D)(4)(b)2. provides the limitations set forth in paragraph (D)(4)(b)1. may be waived by the client upon approval by a circuit court judge. This waiver provision may not be used to authorize a lawyer to charge a client a fee which would exceed rule 4-1.5(A) or (B). It is contemplated that this waiver provision will not be necessary except where the client wants to retain a particular lawyer to represent him or her or the case involves complex, difficult, or novel questions of law or fact which would justify a contingent fee greater than the schedule but not a contingent fee which would exceed rule 4-1.5(B).
Upon a petition by a client, the trial court reviewing the waiver request must grant that request if the trial court finds the client: (a) understands his or her right to have the limitations in rule 4-1.5(D)(4)(b) applied in the specific matter; and (b) understands and approves the terms of the proposed contract. The consideration by the trial court of the waiver petition is not to be used as an opportunity for the court to inquire into the merits or details of the particular action or claim which is the subject of the contract.
The proceedings before the trial court and the trial court's decision on a waiver request are to be confidential and not subject to discovery by any of the parties to the action or by any other individual or entity except The Florida Bar. However, terms of the contract approved by the trial court may be subject to discovery if the contract (without court approval) was subject to discovery under applicable case law or rules of evidence.
Rule 4-1.5(D)(4)(b)3. prohibits a lawyer from charging the contingent fee percentage on the total, future value of a recovery being paid on a structured or periodic basis. This prohibition does not apply if the lawyer's fee is being paid over the same length of time as the schedule of payments to the client.

Division of fee
A division of fee is a single billing to a client covering the fee of two or more lawyers who are not in the same firm. A division of fee facilitates association of more than one lawyer in a matter in which neither alone could serve the client as well, and most often is used when the fee is contingent and the division is between a referring lawyer and a trial specialist. Paragraph (E) permits the lawyers to divide a fee on either the basis of the proportion of services they render or by agreement between the participating lawyers if all assume responsibility for the representation as a whole and the client is advised and does not object. It does require disclosure to the client of the share that each lawyer is to receive. Joint responsibility for the representation entails the obligations stated in rule 4-5.1 for purposes of the matter involved.

Disputes over fees
If a procedure has been established for resolution of fee disputes, such as an arbitration or mediation procedure established by the bar, the lawyer should conscientiously consider submitting to it. Law may prescribe a procedure for determining a lawyer's fee, for example, in representation of an executor or administrator, a class, or a person entitled to a reasonable fee as part of the measure of damages. *1034 The lawyer entitled to such a fee and a lawyer representing another party concerned with the fee should comply with the prescribed procedure.
4-1.6 Confidentiality of information.
(a) A lawyer shall not reveal information relating to representation of a client except as stated in paragraphs (b), (c), and (d) unless the client consents after disclosure to the client.
(b) A lawyer shall reveal such information to the extent the lawyer believes necessary:
(1) To prevent a client from committing a crime; or
(2) To prevent a death or substantial bodily harm to another.
(c) A lawyer may reveal such information to the extent the lawyer believes necessary:
(1) To serve the client's interest unless it is information the client specifically requires not to be disclosed;
(2) To establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and client;
(3) To establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved;
(4) To respond to allegations in any proceeding concerning the lawyer's representation of the client; or
(5) To comply with the Rules of Professional Conduct.
(d) When required by a tribunal to reveal such information, a lawyer may first exhaust all appellate remedies.

Comment:
The lawyer is part of a judicial system charged with upholding the law. One of the lawyer's functions is to advise clients so that they avoid any violation of the law in the proper exercise of their rights.
The observance of the ethical obligation of a lawyer to hold inviolate confidential information of the client not only facilitates the full development of facts essential to proper representation of the client but also encourages people to seek early legal assistance.
Almost without exception, clients come to lawyers in order to determine what their rights are and what is, in the maze of laws and regulations, deemed to be legal and correct. The common law recognizes that the client's confidences must be protected from disclosure. Based upon experience, lawyers know that almost all clients follow the advice given, and the law is upheld.
A fundamental principle in the client-lawyer relationship is that the lawyer maintain confidentiality of information relating to the representation. The client is thereby encouraged to communicate fully and frankly with the lawyer even as to embarrassing or legally damaging subject matter.
The principle of confidentiality is given effect in two related bodies of law, the attorney-client privilege (which includes the work product doctrine) in the law of evidence and the rule of confidentiality established in professional ethics. The attorney-client privilege applies in judicial and other proceedings in which a lawyer may be called as a witness or otherwise required to produce evidence concerning a client. The rule of client-lawyer confidentiality applies in situations other than those where evidence is sought from the lawyer through compulsion of law. The confidentiality rule applies not merely to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source. A lawyer may not disclose such information except as authorized or required by the Rules of Professional Conduct or by law. However, none of the foregoing limits the requirement of disclosure in paragraph (b). This disclosure is required to prevent a lawyer from becoming an unwitting accomplice in the fraudulent acts of a client. See also Scope.
The requirement of maintaining confidentiality of information relating to representation applies to government lawyers who may disagree with the policy goals *1035 that their representation is designed to advance.

Authorized disclosure
A lawyer is impliedly authorized to make disclosures about a client when appropriate in carrying out the representation, except to the extent that the client's instructions or special circumstances limit that authority. In litigation, for example, a lawyer may disclose information by admitting a fact that cannot properly be disputed or in negotiation by making a disclosure that facilitates a satisfactory conclusion.
Lawyers in a firm may, in the course of the firm's practice, disclose to each other information relating to a client of the firm, unless the client has instructed that particular information be confined to specified lawyers.

Disclosure adverse to client
The confidentiality rule is subject to limited exceptions. In becoming privy to information about a client, a lawyer may foresee that the client intends serious harm to another person. However, to the extent a lawyer is required or permitted to disclose a client's purposes, the client will be inhibited from revealing facts which would enable the lawyer to counsel against a wrongful course of action. While the public may be protected if full and open communication by the client is encouraged, several situations must be distinguished.
First, the lawyer may not counsel of assist a client in conduct that is criminal or fraudulent. See rule 4-1.2(d). Similarly, a lawyer has a duty under rule 4-3.3(a)(4) not to use false evidence. This duty is essentially a special instance of the duty prescribed in rule 4-1.2(d) to avoid assisting a client in criminal or fraudulent conduct.
Second, the lawyer may have been innocently involved in past conduct by the client that was criminal or fraudulent. In such a situation the lawyer has not violated rule 4-1.2(d), because to "counsel or assist" criminal or fraudulent conduct requires knowing that the conduct is of that character.
Third, the lawyer may learn that a client intends prospective conduct that is criminal. As stated in paragraph (b)(1), the lawyer shall reveal information in order to prevent such consequences. It is admittedly difficult for a lawyer to "know" when the criminal intent will actually be carried out, for the client may have a change of mind.
Paragraph (b)(2) contemplates past acts on the part of a client which may result in present or future consequences that may be avoided by disclosure of otherwise confidential communications. Rule 4-1.6(b)(2) would now require the attorney to disclose information necessary to prevent the future death or substantial bodily harm to another, even though the act of the client has been completed.
The lawyer's exercise of discretion requires consideration of such factors as the nature of the lawyer's relationship with the client and with those who might be injured by the client, the lawyer's own involvement in the transaction and factors that may extenuate the conduct in question. Where practical the lawyer should seek to persuade the client to take suitable action. In any case, a disclosure adverse to the client's interest should be no greater than the lawyer reasonably believes necessary to the purpose.

Withdrawal
If the lawyer's services will be used by the client in materially furthering a course of criminal or fraudulent conduct, the lawyer must withdraw, as stated in rule 4-1.16(a)(1).
After withdrawal the lawyer is required to refrain from making disclosure of the client's confidences, except as otherwise provided in rule 4-1.6. Neither this rule nor rule 4-1.8(b) nor rule 4-1.16(d) prevents the lawyer from giving notice of the fact of withdrawal, and the lawyer may also withdraw or disaffirm any opinion, document, affirmation, or the like.
Where the client is an organization, the lawyer may be in doubt whether contemplated conduct will actually be carried out by the organization. Where necessary to *1036 guide conduct in connection with the rule, the lawyer may make inquiry within the organization as indicated in rule 4-1.13(b).

Dispute concerning lawyer's conduct
Where a legal claim or disciplinary charge alleges complicity of the lawyer in a client's conduct or other misconduct of the lawyer involving representation of the client, the lawyer may respond to the extent the lawyer reasonably believes necessary to establish a defense. The same is true with respect to a claim involving the conduct or representation of a former client. The lawyer's right to respond arises when an assertion of such complicity has been made. Paragraph (c) does not require the lawyer to await the commencement of an action or proceeding that charges such complicity, so that the defense may be established by responding directly to a third party who has made such an assertion. The right to defend, of course, applies where a proceeding has been commenced. Where practicable and not prejudicial to the lawyer's ability to establish the defense, the lawyer should advise the client of the third party's assertion and request that the client respond appropriately. In any event, disclosure should be no greater than the lawyer reasonably believes is necessary to vindicate innocence, the disclosure should be made in a manner which limits access to the information to the tribunal or other persons having a need to know it, and appropriate protective orders or other arrangements should be sought by the lawyer to the fullest extent practicable.
If the lawyer is charged with wrongdoing in which the client's conduct is implicated, the rule of confidentiality should not prevent the lawyer from defending against the charge. Such a charge can arise in a civil, criminal or professional disciplinary proceeding and can be based on a wrong allegedly committed by the lawyer against the client or on a wrong alleged by a third person; for example, a person claiming to have been defrauded by the lawyer and client acting together. A lawyer entitled to a fee is permitted by paragraph (c) to prove the services rendered in an action to collect it. This aspect of the rule expresses the principle that the beneficiary of a fiduciary relationship may not exploit it to the detriment of the fiduciary. As stated above, the lawyer must make every effort practicable to avoid unnecessary disclosure of information relating to a representation, to limit disclosure to those having the need to know it, and to obtain protective orders or make other arrangements minimizing the risk of disclosure.

Disclosures otherwise required or authorized
The attorney-client privilege is differently defined in various jurisdictions. If a lawyer is called as a witness to give testimony concerning a client, absent waiver by the client, rule 4-1.6(a) requires the lawyer to invoke the privilege when it is applicable. The lawyer must comply with the final orders of a court or other tribunal of competent jurisdiction requiring the lawyer to give information about the client.
The Rules of Professional Conduct in various circumstances permit or require a lawyer to disclose information relating to the representation. See rules 4-2.2, 4-2.3, 4-3.3, and 4-4.1. In addition to these provisions, a lawyer may be obligated or permitted by other provisions of law to give information about a client. Whether another provision of law supersedes rule 4-1.6 is a matter of interpretation beyond the scope of these rules, but a presumption should exist against such a supersession.

Former client
The duty of confidentiality continues after the client-lawyer relationship has terminated.
4-1.7 Conflict of interest; general rule.
(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to the interests of another client, unless:
(1) The lawyer reasonably believes the representation will not adversely affect the lawyer's responsibilities to and relationship with the other client; and
*1037 (2) Each client consents after consultation.
(b) A lawyer shall not represent a client if the lawyer's exercise of independent professional judgment in the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person or by the lawyer's own interest, unless:
(1) The lawyer reasonably believes the representation will not be adversely affected; and
(2) The client consents after consultation.
(c) When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.
(d) A lawyer related to another lawyer as parent, child, sibling, or spouse shall not represent a client in a representation directly adverse to a person who the lawyer knows is represented by the other lawyer except upon consent by the client after consultation regarding the relationship.

Comment:

Loyalty to a client
Loyalty is an essential element in the lawyer's relationship to a client. An impermissible conflict of interest may exist before representation is undertaken, in which event the representation should be declined. If such a conflict arises after representation has been undertaken, the lawyer should withdraw from the representation. See rule 4-1.16. Where more than one client is involved and the lawyer withdraws because a conflict arises after representation, whether the lawyer may continue to represent any of the clients is determined by rule 4-1.9. See also rule 4-2.2(c). As to whether a client-lawyer relationship exists or, having once been established, is continuing, see comment to rule 4-1.3 and scope.
As a general proposition, loyalty to a client prohibits undertaking representation directly adverse to that client or another client's interests without the affected client's consent. Paragraph (a) expresses that general rule. Thus, a lawyer ordinarily may not act as advocate against a person the lawyer represents in some other matter, even if it is wholly unrelated. On the other hand, simultaneous representation in unrelated matters of clients whose interests are only generally adverse, such as competing economic enterprises, does not require consent of the respective clients. Paragraph (a) applies only when the representation of one client would be directly adverse to the other and where the lawyer's responsibilities of loyalty and confidentiality of the other client might be compromised.
Loyalty to a client is also impaired when a lawyer cannot consider, recommend, or carry out an appropriate course of action for the client because of the lawyer's other responsibilities or interests. The conflict in effect forecloses alternatives that would otherwise be available to the client. Paragraph (b) addresses such situations. A possible conflict does not itself preclude the representation. The critical questions are the likelihood that a conflict will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client. Consideration should be given to whether the client wishes to accommodate the other interest involved.

Consultation and consent
A client may consent to representation notwithstanding a conflict. However, as indicated in paragraph (a)(1) with respect to representation directly adverse to a client and paragraph (b)(1) with respect to material limitations on representation of a client, when a disinterested lawyer would conclude that the client should not agree to the representation under the circumstances, the lawyer involved cannot properly ask for such agreement or provide representation on the basis of the client's consent. When more than one client is involved, the question of conflict must be resolved as to each *1038 client. Moreover, there may be circumstances where it is impossible to make the disclosure necessary to obtain consent. For example, when the lawyer represents different clients in related matters and one of the clients refuses to consent to the disclosure necessary to permit the other client to make an informed decision, the lawyer cannot properly ask the latter to consent.

Lawyer's interests
The lawyer's own interests should not be permitted to have adverse effect on representation of a client. For example, a lawyer's need for income should not lead the lawyer to undertake matters that cannot be handled competently and at a reasonable fee. See rules 4-1.1 and 4-1.5. If the probity of a lawyer's own conduct in a transaction is in serious question, it may be difficult or impossible for the lawyer to give a client detached advice. A lawyer may not allow related business interests to affect representation, for example, by referring clients to an enterprise in which the lawyer has an undisclosed interest.

Conflicts in litigation
Paragraph (a) prohibits representation of opposing parties in litigation. Simultaneous representation of parties whose interests in litigation may conflict, such as co-plaintiffs or co-defendants, is governed by paragraphs (b) and (c). An impermissible conflict may exist by reason of substantial discrepancy in the parties' testimony, incompatibility in positions in relation to an opposing party or the fact that there are substantially different possibilities of settlement of the claims or liabilities in question. Such conflicts can arise in criminal cases as well as civil. The potential for conflict of interest in representing multiple defendants in a criminal case is so grave that ordinarily a lawyer should decline to represent more than one co-defendant. On the other hand, common representation of persons having similar interests is proper if the risk of adverse effect is minimal and the requirements of paragraph (b) are met. Compare rule 4-2.2 involving intermediation between clients.
Ordinarily, a lawyer may not act as advocate against a client the lawyer represents in some other matter, even if the other matter is wholly unrelated. However, there are circumstances in which a lawyer may act as advocate against a client. For example, a lawyer representing an enterprise with diverse operations may accept employment as an advocate against the enterprise in an unrelated matter if doing so will not adversely affect the lawyer's relationship with the enterprise or conduct of the suit and if both clients consent upon consultation. By the same token, government lawyers in some circumstances may represent government employees in proceedings in which a government agency is the opposing party. The propriety of concurrent representation can depend on the nature of the litigation. For example, a suit charging fraud entails conflict to a degree not involved in a suit for a declaratory judgment concerning statutory interpretation.
A lawyer may represent parties having antagonistic positions on a legal question that has arisen in different cases, unless representation of either client would be adversely affected. Thus, it is ordinarily not improper to assert such positions in cases pending in different trial courts, but it may be improper to do so in cases pending at the same time in an appellate court.

Interest of person paying for a lawyer's service
A lawyer may be paid from a source other than the client, if the client is informed of that fact and consents and the arrangement does not compromise the lawyer's duty of loyalty to the client. See rule 4-1.8(f). For example, when an insurer and its insured have conflicting interests in a matter arising from a liability insurance agreement and the insurer is required to provide special counsel for the insured, the arrangement should assure the special counsel's professional independence. So also, when a corporation and its directors or employees are involved in a controversy in which they have conflicting interests, the corporation may provide funds for separate *1039 legal representation of the directors of employees, if the clients consent after consultation and the arrangement ensures the lawyer's professional independence.

Other conflict situations
Conflicts of interest in contexts other than litigation sometimes may be difficult to assess. Relevant factors in determining whether there is potential for adverse effect include the duration and intimacy of the lawyer's relationship with the client or clients involved, the functions being performed by the lawyer, the likelihood that actual conflict will arise and the likely prejudice to the client from the conflict if it does arise. The question is often one of proximity and degree.
For example, a lawyer may not represent multiple parties to a negotiation whose interests are fundamentally antagonistic to each other, but common representation is permissible where the clients are generally aligned in interest even though there is some difference of interest among them.
Conflict questions may also arise in estate planning and estate administration. A lawyer may be called upon to prepare wills for several family members, such as husband and wife, and, depending upon the circumstances, a conflict of interest may arise. In estate administration the identity of the client may be unclear under the law of some jurisdictions. In Florida, the personal representative is the client rather than the estate or the beneficiaries. The lawyer should make clear the relationship to the parties involved.
A lawyer for a corporation or other organization who is also a member of its board of directors should determine whether the responsibilities of the two roles may conflict. The lawyer may be called on to advise the corporation in matters involving actions of the directors. Consideration should be given to the frequency with which such situations may arise, the potential intensity of the conflict, the effect of the lawyer's resignation from the board and the possibility of the corporation's obtaining legal advice from another lawyer in such situations. If there is material risk that the dual role will compromise the lawyer's independence of professional judgment, the lawyer should not serve as a director.

Conflict charged by an opposing party
Resolving questions of conflict of interest is primarily the responsibility of the lawyer undertaking the representation. In litigation, a court may raise the question when there is reason to infer that the lawyer has neglected the responsibility. In a criminal case, inquiry by the court is generally required when a lawyer represents multiple defendants. Where the conflict is such as clearly to call in question the fair or efficient administration of justice, opposing counsel may properly raise the question. Such an objection should be viewed with caution, however, for it can be misused as a technique of harassment. See scope.

Family relationships between lawyers
Rule 4-1.7(d) applies to related lawyers who are in different firms. Related lawyers in the same firm are also governed by rules 4-1.9 and 4-1.10. The disqualification stated in rule 4-1.7(d) is personal and is not imputed to members of firms with whom the lawyers are associated.
4-1.8 Conflict of interest; prohibited transactions.
(a) A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security, or other pecuniary interest adverse to a client, except a lien granted by law to secure a lawyer's fee or expenses, unless:
(1) The transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client;
(2) The client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and
(3) The client consents in writing thereto.
(b) A lawyer shall not use information relating to representation of a client to the *1040 disadvantage of the client unless the client consents after consultation, except as permitted or required by rule 4-1.6.
(c) A lawyer shall not prepare an instrument giving the lawyer or a person related to the lawyer as parent, child, sibling, or spouse any substantial gift from a client, including a testamentary gift, except where the client is related to the donee.
(d) Prior to the conclusion of representation of a client, a lawyer shall not make or negotiate an agreement giving the lawyer literary or media rights to a portrayal or account based in substantial part on information relating to the representation.
(e) A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, except that:
(1) A lawyer may advance court costs and expenses of litigation, the repayment of which may be contingent on the outcome of the matter; and
(2) A lawyer representing an indigent client may pay court costs and expenses of litigation on behalf of the client.
(f) A lawyer shall not accept compensation for representing a client from one other than the client unless:
(1) The client consents after consultation;
(2) There is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship; and
(3) Information relating to representation of a client is protected as required by rule 4-1.6.
(g) A lawyer who represents two (2) or more clients shall not participate in making an aggregate settlement of the claims of or against the clients, or in a criminal case an aggregated agreement as to guilty or nolo contendere pleas, unless each client consents after consultation, including disclosure of the existence and nature of all the claims or pleas involved and of the participation of each person in the settlement.
(h) A lawyer shall not make an agreement prospectively limiting the lawyer's liability to a client for malpractice unless permitted by law and the client is independently represented in making the agreement. A lawyer shall not settle a claim for such liability with an unrepresented client or former client without first advising that person in writing that independent representation is appropriate in connection therewith.
(i) A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client, except that the lawyer may:
(1) Acquire a lien granted by law to secure the lawyer's fee or expenses; and
(2) Contract with a client for a reasonable contingent fee.

Comment:

Transactions between client and lawyer
As a general principle, all transactions between client and lawyer should be fair and reasonable to the client. In such transactions a review by independent counsel on behalf of the client is often advisable. Furthermore, a lawyer may not exploit information relating to the representation to the client's disadvantage. For example, a lawyer who has learned that the client is investing in specific real estate may not, without the client's consent, seek to acquire nearby property where doing so would adversely affect the client's plan for investment. Paragraph (a) does not, however, apply to standard commercial transactions between the lawyer and the client for products or services that the client generally markets to others, for example, banking or brokerage services, medical services, products manufactured or distributed by the client, and utilities services. In such transactions the lawyer has no advantage in dealing with the client, and the restrictions in paragraph (a) are unnecessary and impracticable. Likewise, paragraph (a) does not prohibit a lawyer from acquiring or asserting a lien granted by law to secure the lawyer's fee or expenses.
*1041 A lawyer may accept a gift from a client, if the transaction meets general standards of fairness. For example, a simple gift such as a present given at a holiday or as a token of appreciation is permitted. If effectuation of a substantial gift requires preparing a legal instrument such as a will or conveyance, however, the client should have the detached advice that another lawyer can provide. Paragraph (c) recognizes an exception where the client is a relative of the donee or the gift is not substantial.

Literary rights
An agreement by which a lawyer acquires literary or media rights concerning the conduct of the representation creates a conflict between the interests of the client and the personal interests of the lawyer. Measures suitable in the representation of the client may detract from the publication value of an account of the representation. Paragraph (d) does not prohibit a lawyer representing a client in a transaction concerning literary property from agreeing that the lawyer's fee shall consist of a share in ownership in the property if the arrangement conforms to rule 4-1.5 and paragraph (i).

Person paying for lawyer's services
Rule 4-1.8(f) requires disclosure of the fact that the lawyer's services are being paid for by a third party. Such an arrangement must also conform to the requirements of rule 4-1.6 concerning confidentiality and rule 4-1.7 concerning conflict of interest. Where the client is a class, consent may be obtained on behalf of the class by court-supervised procedure.

Acquisition of interest in litigation
Paragraph (i) states the traditional general rule that lawyers are prohibited from acquiring a proprietary interest in litigation. This general rule, which has its basis in common law champerty and maintenance, is subject to specific exceptions developed in decisional law and continued in these rules, such as the exception for reasonable contingent fees set forth in rule 4-1.5 and the exception for certain advances of the costs of litigation set forth in paragraph (e).
This rule is not intended to apply to customary qualification and limitations in legal opinions and memoranda.
4-1.9 Conflict of interest; former client. A lawyer who has formerly represented a client in a matter shall not thereafter:
(a) Represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or
(b) Use information relating to the representation to the disadvantage of the former client except as rule 4-1.6 would permit with respect to a client or when the information has become generally known.

Comment:
After termination of a client-lawyer relationship, a lawyer may not represent another client except in conformity with this rule. The principles in rule 4-1.7 determine whether the interests of the present and former client are adverse. Thus, a lawyer could not properly seek to rescind on behalf of a new client a contract drafted on behalf of the former client. So also a lawyer who has prosecuted an accused person could not properly represent the accused in a subsequent civil action against the government concerning the same transaction.
The scope of a "matter" for purposes of rule 4-1.9(a) may depend on the facts of a particular situation or transaction. The lawyer's involvement in a matter can also be a question of degree. When a lawyer has been directly involved in a specific transaction, subsequent representation of other clients with materially adverse interests clearly is prohibited. On the other hand, a lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a wholly distinct problem of that type even though the subsequent representation involves a position adverse to the prior client. Similar considerations can apply to the reassignment of military lawyers between defense and prosecution functions *1042 within the same military jurisdiction. The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question.
Information acquired by the lawyer in the course of representing a client may not subsequently be used by the lawyer to the disadvantage of the client. However, the fact that a lawyer has once served a client does not preclude the lawyer from using generally known information about that client when later representing another client.
Disqualification from subsequent representation is for the protection of clients and can be waived by them. A waiver is effective only if there is disclosure of the circumstances, including the lawyer's intended role in behalf of the new client.
With regard to an opposing party's raising a question of conflict of interest, see comment to rule 4-1.7. With regard to disqualification of a firm with which a lawyer is associated, see rule 4-1.10.
4-1.10 Imputed disqualification; general rule.
(a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by rule 4-1.7, 4-1.8(c), 4-1.9, or 4-2.2.
(b) When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by rules 4-1.6 and 4-1.9(b) that is material to the matter.
(c) When a lawyer has terminated an association with a firm, the firm is not prohibited from thereafter representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer unless:
(1) The matter is the same or substantially related to that in which the formerly associated lawyer represented the client; and
(2) Any lawyer remaining in the firm has information protected by rules 4-1.6 and 4-1.9(b) that is material to the matter.
(d) A disqualification prescribed by this rule may be waived by the affected client under the conditions stated in rule 4-1.7.

Comment:

Definition of "firm"
For purposes of the Rules of Professional Conduct, the term "firm" includes lawyers in a private firm and lawyers employed in the legal department of a corporation or other organization or in a legal services organization. Whether two (2) or more lawyers constitute a firm within this definition can depend on the specific facts. For example, two (2) practitioners who share office space and occasionally consult or assist each other ordinarily would not be regarded as constituting a firm. However, if they present themselves to the public in a way suggesting that they are a firm or conduct themselves as a firm, they should be regarded as a firm for purposes of the rules. The terms of any formal agreement between associated lawyers are relevant in determining whether they are a firm, as is the fact that they have mutual access to confidential information concerning the clients the serve. Furthermore, it is relevant in doubtful cases to consider the underlying purpose of the rule that is involved. A group of lawyers could be regarded as a firm for purposes of the rule that the same lawyer should not represent opposing parties in litigation, while it might not be so regarded for purposes of the rule that information acquired by one lawyer is attributed to another.
With respect to the law department of an organization, there is ordinarily no question that the members of the department constitute a firm within the meaning of the Rules of Professional Conduct. However, there can be uncertainty as to the identity of the client. For example, it may not be clear *1043 whether the law department of a corporation represents a subsidiary or an affiliated corporation, as well as the corporation by which the members of the department are directly employed. A similar question can arise concerning an unincorporated association and its local affiliates.
Similar questions can also arise with respect to lawyers in legal aid. Lawyers employed in the same unit of a legal service organization constitute a firm, but not necessarily those employed in separate units. As in the case of independent practitioners, whether the lawyers should be treated as associated with each other can depend on the particular rule that is involved and on the specific facts of the situation.
Where a lawyer has joined a private firm after having represented the government, the situation is governed by rule 4-1.11(a) and (b); where a lawyer represents the government after having served private clients, the situation is governed by rule 4-1.11(c)(1). The individual lawyer involved is bound by the rules generally, including rules 4-1.6, 4-1.7, and 4-1.9.
Different provisions are thus made for movement of a lawyer from one private firm to another and for movement of a lawyer between a private firm and the government. The government is entitled to protection of its client confidences and, therefore, to the protections provided in rules 4-1.6, 4-1.9, and 4-1.11. However, if the more extensive disqualification in rule 4-1.10 were applied to former government lawyers, the potential effect on the government would be unduly burdensome. The government deals with all private citizens and organizations and thus has a much wider circle of adverse legal interests than does any private law firm. In these circumstances, the government's recruitment of lawyers would be seriously impaired if rule 4-1.10 were applied to the government. On balance, therefore, the government is better served in the long run by the protections stated in rule 4-1.11.

Principles of imputed disqualification
The rule of imputed disqualification stated in paragraph (a) gives effect to the principle of loyalty to the client as it applies to lawyers who practice in a law firm. Such situations can be considered from the premise that a firm of lawyers is essentially one lawyer for purposes of the rules governing loyalty to the client or from the premise that each lawyer is vicariously bound by the obligation of loyalty owed by each lawyer with whom the lawyer is associated. Paragraph (a) operates only among the lawyers currently associated in a firm. When a lawyer moves from one firm to another the situation is governed by paragraphs (b) and (c).

Lawyers moving between firms
When lawyers have been associated in a firm but then end their association, however, the problem is more complicated. The fiction that the law firm is the same as a single lawyer is no longer wholly realistic. There are several competing considerations. First, the client previously represented must be reasonably assured that the principle of loyalty to the client is not compromised. Second, the rule of disqualification should not be so broadly cast as to preclude other persons from having reasonable choice of legal counsel. Third, the rule of disqualification should not unreasonably hamper lawyers from forming new associations and taking on new clients after having left a previous association. In this connection, it should be recognized that today many lawyers practice in firms, that many to some degree limit their practice to one field or another, and that many move from one association to another several times in their careers. If the concept of imputed disqualification were defined with unqualified rigor, the result would be radical curtailment of the opportunity of lawyers to move from one practice setting to another and of the opportunity of clients to change counsel.
Reconciliation of these competing principles in the past has been attempted under two (2) rubrics. One approach has been to seek per se rules of disqualification. For *1044 example, it has been held that a partner in a law firm is conclusively presumed to have access to all confidences concerning all clients of the firm. Under this analysis, if a lawyer has been a partner in one law firm and then becomes a partner in another law firm, there is a presumption that all confidences known by a partner in the first firm are known to all partners in the second firm. This presumption might properly be applied in some circumstances, especially where the client has been extensively represented, but may be unrealistic where the client was represented only for limited purposes. Furthermore, such a rigid rule exaggerates the difference between a partner and an associate in modern law firms.
The other rubric formerly used for dealing with vicarious disqualification is the appearance of impropriety and was proscribed in former Canon 9 of the Code of Professional Responsibility. This rubric has a two-fold problem. First, the appearance of impropriety can be taken to include any new client-lawyer relationship that might make a former client feel anxious. If that meaning were adopted, disqualification would become little more than a question of subjective judgment by the former client. Second, since "impropriety" is undefined, the term "appearance of impropriety" is question-begging. It therefore has to be recognized that the problem of imputed disqualification cannot be properly resolved either by simple analogy to a lawyer practicing alone or by the very general concept of appearance of impropriety.
A rule based on a functional analysis is more appropriate for determining the question of vicarious disqualification. Two (2) functions are involved: preserving confidentiality and avoiding positions adverse to a client.

Confidentiality
Preserving confidentiality is a question of access to information. Access to information, in turn, is essentially a question of fact in particular circumstances, aided by inferences, deductions or working presumptions that reasonably may be made about the way in which lawyers work together. A lawyer may have general access to files of all clients of a law firm and may regularly participate in discussions of their affairs; it should be inferred that such a lawyer in fact is privy to all information about all the firm's clients. In contrast, another lawyer may have access to the files of only a limited number of clients and participate in discussion of the affairs of no other clients; in the absence of information to the contrary, it should be inferred that such a lawyer in fact is privy to information about the clients actually served but not those of other clients.
Application of paragraphs (b) and (c) depends on a situation's particular facts. In any such inquiry, the burden of proof should rest upon the firm whose disqualification is sought.
Paragraphs (b) and (c) operate to disqualify the firm only when the lawyer involved has actual knowledge of information protected by rules 4-1.6 and 4-1.9(b). Thus, if a lawyer while with one firm acquired no knowledge or information relating to a particular client of the firm and that lawyer later joined another firm, neither the lawyer individually nor the second firm is disqualified from representing another client in the same or a related matter even though the interests of the two (2) clients conflict.
Independent of the question of disqualification of a firm, a lawyer changing professional association has a continuing duty to preserve confidentiality of information about a client formerly represented. See rules 4-1.6 and 4-1.9.

Adverse positions
The second aspect of loyalty to client is the lawyer's obligation to decline subsequent representations involving positions adverse to a former client arising in substantially related matters. This obligation requires abstention from adverse representation by the individual lawyer involved, but does not properly entail abstention of other lawyers through imputed disqualification. Hence, this aspect of the problem is governed by rule 4-1.9(a). Thus, if a *1045 lawyer left one firm for another, the new affiliation would not preclude the firms involved from continuing to represent clients with adverse interests in the same or related matters so long as the conditions of rule 4-1.10(b) and (c) concerning confidentiality have been met.
4-1.11 Successive government and private employment.
(a) A lawyer shall not represent a private client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee, unless the appropriate government agency consents after consultation. No lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter unless:
(1) The disqualified lawyer is screened from any participation in the matter and is directly apportioned no part of the fee therefrom; and
(2) Written notice is promptly given to the appropriate government agency to enable it to ascertain compliance with the provisions of this rule.
(b) A lawyer having information that the lawyer knows is confidential government information about a person acquired when the lawyer was a public officer or employee may not represent a private client whose interests are adverse to that person in a matter in which the information could be used to the material disadvantage of that person. A firm with which that lawyer is associated may undertake or continue representation in the matter only if the disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom.
(c) A lawyer serving as a public officer or employee shall not:
(1) Participate in a matter in which the lawyer participated personally and substantially while in private practice or nongovernmental employment, unless under applicable law no one is, or by lawful delegation may be, authorized to act in the lawyer's stead in the matter; or
(2) Negotiate for private employment with any person who is involved as a party or as attorney for a party in a matter in which the lawyer is participating personally and substantially.
(d) As used in this rule, the term "matter" includes:
(1) Any judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, investigation, charge, accusation, arrest, or other particular matter involving a specific party or parties; and
(2) Any other matter covered by the conflict of interest rules of the appropriate government agency.
(e) As used in this rule, the term "confidential government information" means information which has been obtained under governmental authority and which, at the time this rule is applied, the government is prohibited by law from disclosing to the public or has a legal privilege not to disclose and which is not otherwise available to the public.

Comment:
This rule prevents a lawyer from exploiting public office for the advantage of a private client. It is a counterpart of rule 4-1.10(b), which applies to lawyers moving from one firm to another.
A lawyer representing a government agency, whether employed or specially retained by the government, is subject to the rules of professional conduct, including the prohibition against representing adverse interests stated in rule 4-1.7 and the protections afforded former clients in rule 4-1.9. In addition, such a lawyer is subject to rule 4-1.11 and to statutes and government regulations regarding conflict of interest. Such statutes and regulations may circumscribe the extent to which the government agency may give consent under this rule.
Where the successive clients are a public agency and a private client, the risk exists that power or discretion vested in public authority might be used for the special benefit of a private client. A lawyer should not be in a position where benefit to *1046 a private client might affect performance of the lawyer's professional functions on behalf of public authority. Also, unfair advantage could accrue to the private client by reason of access to confidential government information about the client's adversary obtainable only through the lawyer's government service. However, the rules governing lawyers presently or formerly employed by a government agency should not be so restrictive as to inhibit transfer of employment to and from the government. The government has a legitimate need to attract qualified lawyers as well as to maintain high ethical standards. The provisions for screening and waiver are necessary to prevent the disqualification rule from imposing too severe a deterrent against entering public service.
When the client is an agency of one government, the agency should be treated as a private client for purposes of this rule if the lawyer thereafter represents an agency of another government, as when a lawyer represents a city and subsequently is employed by a federal agency.
Paragraphs (a)(1) and (b) do not prohibit a lawyer from receiving a salary or partnership share established by prior independent agreement. They prohibit directly relating the attorney's compensation to the fee in the matter in which the lawyer is disqualified.
Paragraph (a)(2) does not require that a lawyer give notice to the government agency at a time when premature disclosure would injure the client; a requirement for premature disclosure might preclude engagement of the lawyer. Such notice is, however, required to be given as soon as practicable in order that the government agency or affected person will have a reasonable opportunity to ascertain that the lawyer is complying with rule 4-1.11 and to take appropriate action if they believe the lawyer is not complying.
Paragraph (b) operates only when the lawyer in question has knowledge of the information, which means actual knowledge; it does not operate with respect to information that merely could be imputed to the lawyer.
Paragraphs (a) and (c) do not prohibit a lawyer from jointly representing a private party and a government agency when doing so is permitted by rule 4-1.7 and is not otherwise prohibited by law.
Paragraph (c) does not disqualify other lawyers in the agency with which the lawyer in question has become associated.
4-1.12 Former judge or arbitrator.
(a) Except as stated in paragraph (d), a lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as a judge or other adjudicative officer, arbitrator, or law clerk to such a person, unless all parties to the proceeding consent after disclosure.
(b) A lawyer shall not negotiate for employment with any person who is involved as a party or as attorney for a party in a matter in which the lawyer is participating personally and substantially as a judge or other adjudicative officer or arbitrator. A lawyer serving as a law clerk to a judge, other adjudicative officer, or arbitrator may negotiate for employment with a party or attorney involved in a matter in which the clerk is participating personally and substantially, but only after the lawyer has notified the judge, other adjudicative officer, or arbitrator.
(c) If a lawyer is disqualified by paragraph (a), no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in the matter unless:
(1) The disqualified lawyer is screened from any participation in the matter and is directly apportioned no part of the fee therefrom; and
(2) Written notice is promptly given to the appropriate tribunal to enable it to ascertain compliance with the provisions of this rule.
(d) An arbitrator selected as a partisan of a party in a multimember arbitration panel is not prohibited from subsequently representing that party.

*1047 Comment:

This rule generally parallels rule 4-1.11. The term "personally and substantially" signifies that a judge who was a member of a multimember court, and thereafter left judicial office to practice law, is not prohibited from representing a client in a matter pending in the court, but in which the former judge did not participate. So also the fact that a former judge exercised administrative responsibility in a court does not prevent the former judge from acting as a lawyer in a matter where the judge had previously exercised remote or incidental administrative responsibility that did not affect the merits. Compare the comment to rule 4-1.11. The term "adjudicative officer" includes such officials as judges pro tempore, referees, special masters, hearing officers, and other parajudicial officers and also lawyers who serve as part-time judges. Compliance Canons A(2), B(2), and C of Florida's Code of Judicial Conduct provide that a part-time judge, judge pro tempore, or retired judge recalled to active service may not "act as a lawyer in any proceeding in which he served as a judge or in any other proceeding related thereto." Although phrased differently from this rule, those rules correspond in meaning.
4-1.13 Organization as client.
(a) A lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents.
(b) If a lawyer for an organization knows that an officer, employee, or other person associated with the organization is engaged in action, intends to act, or refuses to act in a matter related to the representation that is a violation of a legal obligation to the organization or a violation of law which reasonably might be imputed to the organization and is likely to result in substantial injury to the organization, the lawyer shall proceed as is reasonably necessary in the best interest of the organization. In determining how to proceed, the lawyer shall give due consideration to the seriousness of the violation and its consequences, the scope and nature of the lawyer's representation, the responsibility in the organization and the apparent motivation of the person involved, the policies of the organization concerning such matters, and any other relevant considerations. Any measures taken shall be designed to minimize disruption of the organization and the risk of revealing information relating to the representation to persons outside the organization. Such measures may include among others:
(1) Asking reconsideration of the matter;
(2) Advising that a separate legal opinion on the matter be sought for presentation to appropriate authority in the organization; and
(3) Referring the matter to higher authority in the organization, including, if warranted by the seriousness of the matter, referral to the highest authority that can act in behalf of the organization as determined by applicable law.
(c) If, despite the lawyer's efforts in accordance with paragraph (b), the highest authority that can act on behalf of the organization insists upon action, or a refusal to act, that is clearly a violation of law and is likely to result in substantial injury to the organization, the lawyer may resign in accordance with rule 4-1.16.
(d) In dealing with an organization's directors, officers, employees, members, shareholders, or other constituents, a lawyer shall explain the identity of the client when it is apparent that the organization's interests are adverse to those of the constituents with whom the lawyer is dealing.
(e) A lawyer representing an organization may also represent any of its directors, officers, employees, members, shareholders, or other constituents, subject to the provisions of rule 4-1.7. If the organization's consent to the dual representation is required by rule 4-1.7, the consent shall be given by an appropriate official of the organization other than the individual who is to be represented, or by the shareholders.

Comment:

The entity as the client
An organizational client is a legal entity, but it cannot act except through its officers, *1048 directors, employees, shareholders, and other constituents. Officers, directors, employees, and shareholders are the constituents of the corporate organizational client. The duties defined in this comment apply equally to unincorporated associations. "Other constituents" as used in this comment means the positions equivalent to officers, directors, employees, and shareholders held by persons acting for organizational clients that are not corporations.
When one of the constituents of an organizational client communicates with the organization's lawyer in that person's organizational capacity, the communication is protected by rule 4-1.6. Thus, by way of example, if an organizational client requests its lawyer to investigate allegations of wrongdoing, interviews made in the course of that investigation between the lawyer and the client's employees or other constituents are covered by rule 4-1.6. This does not mean, however, that constituents of an organizational client are the clients of the lawyer. The lawyer may not disclose to such constituents information relating to the representation except for disclosures explicitly or impliedly authorized by the organizational client in order to carry out the representation or as otherwise permitted by rule 4-1.6.
When constituents of the organization make decisions for it, the decisions ordinarily must be accepted by the lawyer even if their utility or prudence is doubtful. Decisions concerning policy and operations, including ones entailing serious risk, are not as such in the lawyer's province. However, different considerations arise when the lawyer knows that the organization may be substantially injured by action of a constituent that is in violation of law. In such a circumstance, it may be reasonably necessary for the lawyer to ask the constituent to reconsider the matter. If that fails, or if the matter is of sufficient seriousness and importance to the organization, it may be reasonably necessary for the lawyer to take steps to have the matter reviewed by a higher authority in the organization. Clear justification should exist for seeking review over the head of the constituent normally responsible for it. The stated policy of the organization may define circumstances and prescribe channels for such review, and a lawyer should encourage the formulation of such a policy. Even in the absence of organization policy, however, the lawyer may have an obligation to refer a matter to higher authority, depending on the seriousness of the matter and whether the constituent in question has apparent motives to act at variance with the organization's interest. Review by the chief executive officer or by the board of directors may be required when the matter is of importance commensurate with their authority. At some point it may be useful or essential to obtain an independent legal opinion.
In an extreme case, it may be reasonably necessary for the lawyer to refer the matter to the organization's highest authority. Ordinarily, that is the board of directors or similar governing body. However, applicable law may prescribe that under certain conditions highest authority reposes elsewhere; for example, in the independent directors of a corporation.

Relation to other rules
The authority and responsibility provided in paragraph (b) are concurrent with the authority and responsibility provided in other rules. In particular, this rule does not limit or expand the lawyer's responsibility under rule 4-1.6, 4-1.8, 4-1.16, 4-3.3, or 4-4.1. If the lawyer's services are being used by an organization to further a crime or fraud by the organization, rule 4-1.2(d) can be applicable.

Government agency
The duty defined in this rule applies to governmental organizations. However, when the client is a governmental organization, a different balance may be appropriate between maintaining confidentiality and assuring that the wrongful official act is prevented or rectified, for public business is involved. In addition, duties of lawyers employed by the government or lawyers in military service may be defined by statutes and regulation. Therefore, defining *1049 precisely the identity of the client and prescribing the resulting obligations of such lawyers may be more difficult in the government context. Although in some circumstances the client may be a specific agency, it is generally the government as a whole. For example, if the action or failure to act involves the head of a bureau, either the department of which the bureau is a part or the government as a whole may be the client for purposes of this rule. Moreover, in a matter involving the conduct of government officials, a government lawyer may have authority to question such conduct more extensively than that of a lawyer for a private organization in similar circumstances. This rule does not limit that authority. See note on scope.

Clarifying the lawyer's role
There are times when the organization's interest may be or become adverse to those of one or more of its constituents. In such circumstances the lawyer should advise any constituent whose interest the lawyer finds adverse to that of the organization of the conflict or potential conflict of interest that the lawyer cannot represent such constituent and that such person may wish to obtain independent representation. Care must be taken to assure that the constituent understands that, when there is such adversity of interest, the lawyer for the organization cannot provide legal representation for that constituent and that discussions between the lawyer for the organization and the constituent may not be privileged.
Whether such a warning should be given by the lawyer for the organization to any constituent may turn on the facts of each case.

Dual representation
Paragraph (e) recognizes that a lawyer for an organization may also represent a principal officer or major shareholder.

Derivative actions
Under generally prevailing law, the shareholders or members of a corporation may bring suit to compel the directors to perform their legal obligations in the supervision of the organization. Members of unincorporated associations have essentially the same right. Such an action may be brought nominally by the organization, but usually is, in fact, a legal controversy over management of the organization.
The question can arise whether counsel for the organization may defend such an action. The proposition that the organization is the lawyer's client does not alone resolve the issue. Most derivative actions are a normal incident of an organization's affairs, to be defended by the organization's lawyer like any other suit. However, if the claim involves serious charges of wrongdoing by those in control of the organization, a conflict may arise between the lawyer's duty to the organization and the lawyer's relationship with the board. In those circumstances, rule 4-1.7 governs who should represent the directors and the organization.
4-1.14 Client under a disability.
(a) When a client's ability to make adequately considered decisions in connection with the representation is impaired, whether because of minority, mental disability, or for some other reason, the lawyer shall, as far as reasonably possible, maintain a normal client-lawyer relationship with the client.
(b) A lawyer may seek the appointment of a guardian or take other protective action with respect to a client only when the lawyer reasonably believes that the client cannot adequately act in the client's own interest.

Comment:
The normal client-lawyer relationship is based on the assumption that the client, when properly advised and assisted, is capable of making decisions about important matters. When the client is a minor or suffers from a mental disorder or disability, however, maintaining the ordinary client-lawyer relationship may not be possible in all respects. In particular, an incapacitated person may have no power to make legally binding decisions. Nevertheless, a client lacking legal competence often has the ability to understand, deliberate *1050 upon, and reach conclusions about matters affecting the client's own well-being. Furthermore, to an increasing extent the law recognizes intermediate degrees of competence. For example, children as young as five (5) or six (6) years of age, and certainly those of ten (10) or twelve (12), are regarded as having opinions that are entitled to weight in legal proceedings concerning their custody. So also, it is recognized that some persons of advanced age can be quite capable of handling routine financial matters while needing special legal protection concerning major transactions.
The fact that a client suffers a disability does not diminish the lawyer's obligation to treat the client with attention and respect. If the person has no guardian or legal representative, the lawyer often must act as de facto guardian. Even if the person does have a legal representative, the lawyer should as far as possible accord the represented person the status of client, particularly in maintaining communication.
If a legal representative has already been appointed for the client, the lawyer should ordinarily look to the representative for decisions on behalf of the client. If a legal representative has not been appointed, the lawyer should see to such an appointment where it would serve the client's best interests. Thus, if a disabled client has substantial property that should be sold for the client's benefit, effective completion of the transaction ordinarily requires appointment of a legal representative. In many circumstances, however, appointment of a legal representative may be expensive or traumatic for the client. Evaluation of these considerations is a matter of professional judgment on the lawyer's part.
If the lawyer represents the guardian as distinct from the ward and is aware that the guardian is acting adversely to the ward's interest, the lawyer may have an obligation to prevent or rectify the guardian's misconduct. See rule 4-1.2(d).

Disclosure of client's condition
Rules of procedure in litigation generally provide that minors or persons suffering mental disability shall be represented by a guardian or next friend if they do not have a general guardian. However, disclosure of the client's disability can adversely affect the client's interests. The lawyer may seek guidance from an appropriate diagnostician.
4-1.15 Safekeeping property.
(a) A lawyer shall hold in trust, separate from the lawyer's own property, funds and property of clients or third persons that are in a lawyer's possession in connection with a representation. All funds, including advances for costs and expenses, shall be kept in a separate account maintained in the state where the lawyer's office is situated or elsewhere with the consent of the client or third person, provided that funds may be separately held and maintained other than in a bank account if the lawyer receives written permission from the client to do so and provided that such written permission is received prior to maintaining the funds other than in a separate bank account. In no event may the lawyer commingle the client's funds with those of his or hers or those of his or her law firm. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property, including client funds not maintained in a separate bank account, shall be kept by the lawyer and shall be preserved for a period of six (6) years after termination of the representation.
(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.
(c) When in the course of representation a lawyer is in possession of property in which both the lawyer and another person *1051 claim interests, the property shall be treated by the lawyer as trust property, but the portion belonging to the lawyer or law firm shall be withdrawn within a reasonable time after it becomes due unless the right of the lawyer or law firm to receive it is disputed, in which event the portion in dispute shall be kept separate by the lawyer until the dispute is resolved.
(d) A lawyer shall comply with The Florida Bar Rules Regulating Trust Accounts.

Comment:
A lawyer should hold property of others with the care required of a professional fiduciary. Securities should be kept in a safe deposit box, except when some other form of safekeeping is warranted by special circumstances. All property which is the property of clients or third persons should be kept separate from the lawyer's business and personal property and, if money, in one or more trust accounts, unless requested otherwise in writing by the client. Separate trust accounts may be warranted when administering estate money or acting in similar fiduciary capacities.
Lawyers often receive funds from third parties from which the lawyer's fee will be paid. If there is risk that the client may divert the funds without paying the fee, the lawyer is not required to remit the portion from which the fee is to be paid. However, a lawyer may not hold funds to coerce a client into accepting the lawyer's contention. The disputed portion of the funds should be kept in trust and the lawyer should suggest means for prompt resolution of the dispute, such as arbitration. The undisputed portion of the funds shall be promptly distributed.
Third parties, such as a client's creditors, may have just claims against funds or other property in a lawyer's custody. A lawyer may have a duty under applicable law to protect such third party claims against wrongful interference by the client and, accordingly, may refuse to surrender the property to the client. However, a lawyer should not unilaterally assume to arbitrate a dispute between the client and the third party and where appropriate the lawyer should consider the possibility of depositing the property or funds in dispute into the registry of the applicable court so that the matter may be adjudicated.
The obligations of a lawyer under this rule are independent of those arising from activity other than rendering legal services. For example, a lawyer who serves as an escrow agent is governed by the applicable law relating to fiduciaries even though the lawyer does not render legal services in the transaction.
Paragraph (d) of this rule requires each lawyer to be familiar with and comply with Rules Regulating Trust Accounts as adopted by The Florida Bar.
Money or other property entrusted to a lawyer for a specific purpose, including advances for costs and expenses, is held in trust and must be applied only to that purpose. Money and other property of clients coming into the hands of a lawyer are not subject to counterclaim or setoff for attorney's fees, and a refusal to account for and deliver over such property upon demand shall be a conversion. This is not to preclude the retention of money or other property upon which a lawyer has a valid lien for services or to preclude the payment of agreed fees from the proceeds of transactions or collections.
4-1.16 Declining or terminating representation.
(a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:
(1) The representation will result in violation of the rules of professional conduct or law;
(2) The lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client; or
(3) The lawyer is discharged.
(b) Except as stated in paragraph (c), a lawyer may withdraw from representing a client if withdrawal can be accomplished *1052 without material adverse effect on the interests of the client, or if:
(1) The client persists in a course of action involving the lawyer's services that the lawyer reasonably believes is criminal or fraudulent;
(2) The client has used the lawyer's services to perpetrate a crime or fraud;
(3) A client insists upon pursuing an objective that the lawyer considers repugnant or imprudent;
(4) The client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled;
(5) The representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client; or
(6) Other good cause for withdrawal exists.
(c) When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation.
(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers and other property relating to or belonging to the client to the extent permitted by law.

Comment:
A lawyer should not accept representation in a matter unless it can be performed competently, promptly, without improper conflict of interest and to completion.

Mandatory withdrawal
A lawyer ordinarily must decline or withdraw from representation if the client demands that the lawyer engage in conduct that is illegal or violates the Rules of Professional Conduct or law. The lawyer is not obliged to decline or withdraw simply because the client suggests such a course of conduct; a client may make such a suggestion in the hope that a lawyer will not be constrained by a professional obligation.
When a lawyer has been appointed to represent a client, withdrawal ordinarily requires approval of the appointing authority. See also rule 4-6.2. Difficulty may be encountered if withdrawal is based on the client's demand that the lawyer engage in unprofessional conduct. The court may wish an explanation for the withdrawal, while the lawyer may be bound to keep confidential the facts that would constitute such an explanation. The lawyer's statement that professional considerations require termination of the representation ordinarily should be accepted as sufficient.

Discharge
A client has a right to discharge a lawyer at any time, with or without cause, subject to liability for payment for the lawyer's services. Where future dispute about the withdrawal may be anticipated, it may be advisable to prepare a written statement reciting the circumstances.
Whether a client can discharge appointed counsel may depend on applicable law. A client seeking to do so should be given a full explanation of the consequences. These consequences may include a decision by the appointing authority that appointment of successor counsel is unjustified, thus requiring the client to represent himself.
If the client is mentally incompetent, the client may lack the legal capacity to discharge the lawyer, and in any event the discharge may be seriously adverse to the client's interests. The lawyer should make special effort to help the client consider the consequences and, in an extreme case, may initiate proceedings for a conservatorship or similar protection of the client. See rule 4-1.14.

Optional withdrawal
A lawyer may withdraw from representation in some circumstances. The lawyer has the option to withdraw if it can be *1053 accomplished without material adverse effect on the client's interests. Withdrawal is also justified if the client persists in a course of action that the lawyer reasonably believes is criminal or fraudulent, for a lawyer is not required to be associated with such conduct even if the lawyer does not further it. Withdrawal is also permitted if the lawyer's services were misused in the past even if that would materially prejudice the client. The lawyer also may withdraw where the client insists on a repugnant or imprudent objective.
A lawyer may withdraw if the client refuses to abide by the terms of an agreement relating to the representation, such as an agreement concerning fees or court costs or an agreement limiting the objectives of the representation.

Assisting the client upon withdrawal
Even if the lawyer has been unfairly discharged by the client, a lawyer must take all reasonable steps to mitigate the consequences to the client. The lawyer may retain papers and other property as security for a fee only to the extent permitted by law.
Whether or not a lawyer for an organization may under certain unusual circumstances have a legal obligation to the organization after withdrawing or being discharged by the organization's highest authority is beyond the scope of these rules.

Refunding advance payment of unearned fee
Upon termination of representation, a lawyer should refund to the client any advance payment of a fee that has not been earned. This does not preclude a lawyer from retaining any reasonable nonrefundable fee which the client agreed would be deemed earned when the lawyer commenced the client's representation. See also rule 4-1.5.
4-2 Counselor.
4-2.1 Adviser. In representing a client, a lawyer shall exercise independent professional judgment and render candid advice. In rendering advice, a lawyer may refer not only to law but to other considerations such as moral, economic, social, and political factors that may be relevant to the client's situation.

Comment:

Scope of advice
A client is entitled to straightforward advice expressing the lawyer's honest assessment. Legal advice often involves unpleasant facts and alternatives that a client may be disinclined to confront. In presenting advice, a lawyer endeavors to sustain the client's morale and may put advice in as acceptable a form as honesty permits. However, a lawyer should not be deterred from giving candid advice by the prospect that the advice will be unpalatable to the client.
Advice couched in narrowly legal terms may be of little value to a client, especially where practical considerations, such as cost or effects on other people, are predominant. Purely technical legal advice, therefore, can sometimes be inadequate. It is proper for a lawyer to refer to relevant moral and ethical considerations in giving advice. Although a lawyer is not a moral adviser as such, moral and ethical considerations impinge upon most legal questions and may decisively influence how the law will be applied.
A client may expressly or impliedly ask the lawyer for purely technical advice. When such a request is made by a client experienced in legal matters, the lawyer may accept it at face value. When such a request is made by a client inexperienced in legal matters, however, the lawyer's responsibility as adviser may include indicating that more may be involved than strictly legal considerations.
Matters that go beyond strictly legal questions may also be in the domain of another profession. Family matters can involve problems within the professional competence of psychiatry, clinical psychology, or social work; business matters can involve problems within the competence of the accounting profession or of financial specialists. Where consultation with a professional *1054 in another field is itself something a competent lawyer would recommend, the lawyer should make such a recommendation. At the same time, a lawyer's advice at its best often consists of recommending a course of action in the face of conflicting recommendations of experts.

Offering advice
In general, a lawyer is not expected to give advice until asked by the client. However, when a lawyer knows that a client proposes a course of action that is likely to result in substantial adverse legal consequences to the client, duty to the client under rule 4-1.4 may require that the lawyer act if the client's course of action is related to the representation. A lawyer ordinarily has no duty to initiate investigation of a client's affairs or to give advice that the client has indicated is unwanted, but a lawyer may initiate advice to a client when doing so appears to be in the client's interest.
4-2.2 Intermediary.
(a) A lawyer may act as intermediary between clients if:
(1) The lawyer consults with each client concerning the implications of the common representation, including the advantages and risks involved, and the effect on the attorney-client privileges and obtains each client's consent to the common representation;
(2) The lawyer reasonably believes that the matter can be resolved on terms compatible with the clients' best interests, that each client will be able to make adequately informed decisions in the matter, and that there is little risk of material prejudice to the interests of any of the clients if the contemplated resolution is unsuccessful; and
(3) The lawyer reasonably believes that the common representation can be undertaken impartially and without improper effect on other responsibilities the lawyer has to any of the clients.
(b) While acting as intermediary, the lawyer shall consult with each client concerning the decisions to be made and the considerations relevant in making them, so that each client can make adequately informed decisions.
(c) A lawyer shall withdraw as intermediary if any of the clients so requests or if any of the conditions stated in paragraph (a) is no longer satisfied. Upon withdrawal, the lawyer shall not continue to represent any of the clients in the matter that was the subject of the intermediation.

Comment:
A lawyer acts as intermediary under this rule when the lawyer represents two (2) or more parties with potentially conflicting interests. A key factor in defining the relationship is whether the parties share responsibility for the lawyer's fee, but the common representation may be inferred from other circumstances. Because confusion can arise as to the lawyer's role where each party is not separately represented, it is important that the lawyer make clear the relationship.
The rule does not apply to a lawyer acting as arbitrator or mediator between or among parties who are not clients of the lawyer, even where the lawyer has been appointed with the concurrence of the parties. In performing such a role the lawyer may be subject to applicable codes of ethics, such as the Code of Ethics for Arbitration in Commercial Disputes prepared by a joint committee of the American Bar Association and the American Arbitration Association.
A lawyer acts as intermediary in seeking to establish or adjust a relationship between clients on an amicable and mutually advantageous basis; for example, in helping to organize a business in which two (2) or more clients are entrepreneurs, working out the financial reorganization of an enterprise in which two (2) or more clients have an interest, arranging a property distribution in settlement of an estate, or mediating a dispute between clients. The lawyer seeks to resolve potentially conflicting interests by developing the parties' mutual interests. The alternative can be that each *1055 party may have to obtain separate representation, with the possibility in some situations of incurring additional cost, complication, or even litigation. Given these and other relevant factors, all the clients may prefer that the lawyer act as intermediary.
In considering whether to act as intermediary between clients, a lawyer should be mindful that if the intermediation fails the result can be additional cost, embarrassment and recrimination. In some situations the risk of failure is so great that intermediation is plainly impossible. For example, a lawyer cannot undertake common representation of clients between whom contentious litigation is imminent or who contemplate contentious negotiations. More generally, if the relationship between the parties has already assumed definite antagonism, the possibility that the clients' interests can be adjusted by intermediation ordinarily is not very good.
The appropriateness of intermediation can depend on its form. Forms of intermediation range from informal arbitration, where each client's case is presented by the respective client and the lawyer decides the outcome, to mediation, to common representation where the clients' interests are substantially though not entirely compatible. One form may be appropriate in circumstances where another would not. Other relevant factors are whether the lawyer subsequently will represent both parties on a continuing basis and whether the situation involves creating a relationship between the parties or terminating one.

Confidentiality and privilege
A particularly important factor in determining the appropriateness of intermediation is the effect on client-lawyer confidentiality and the attorney-client privilege. In a common representation, the lawyer is still required both to keep each client adequately informed and to maintain confidentiality of information relating to the representation. See rules 4-1.4 and 4-1.6. Complying with both requirements while acting as intermediary requires a delicate balance. If the balance cannot be maintained, the common representation is improper. With regard to the attorney-client privilege, the prevailing rule is that as between commonly represented clients the privilege does not attach. Hence, it must be assumed that if litigation eventuates between the clients, the privilege will not protect any such communications, and the clients should be so advised.
Since the lawyer is required to be impartial between commonly represented clients, intermediation is improper when that impartiality cannot be maintained. For example, a lawyer who has represented one of the clients for a long period and in a variety of matters might have difficulty being impartial between that client and one to whom the lawyer has only recently been introduced.

Consultation
In acting as intermediary between clients, the lawyer is required to consult with the clients on the implications of doing so and to proceed only upon consent based on such a consultation. The consultation should make clear that the lawyer's role is not that of partisanship normally expected in other circumstances.
Paragraph (b) is an application of the principle expressed in rule 4-1.4. Where the lawyer is intermediary, the clients ordinarily must assume greater responsibility for decisions than when each client is independently represented.

Withdrawal
Common representation does not diminish the rights of each client in the client-lawyer relationship. Each has the right to loyal and diligent representation, the right to discharge the lawyer as stated in rule 4-1.16, and the protection of rule 4-1.9 concerning obligations to a former client.

4-2.3 Evaluation for use by third persons.

(a) A lawyer may undertake an evaluation of a matter affecting a client for the use of someone other than the client if:
(1) The lawyer reasonably believes that making the evaluation is compatible with other aspects of the lawyer's relationship with the client; and
*1056 (2) The client consents after consultation.
(b) In reporting the evaluation, the lawyer shall indicate any material limitations that were imposed on the scope of the inquiry or on the disclosure of information.
(c) Except as disclosure is required in connection with a report of an evaluation, information relating to the evaluation is otherwise protected by rule 4-1.6.

Comment:

Definition
An evaluation may be performed at the client's direction but for the primary purpose of establishing information for the benefit of third parties; for example, an opinion concerning the title of property rendered at the behest of a vendor for the information of a prospective purchaser or at the behest of a borrower for the information of a prospective lender. In some situations, the evaluation may be required by a government agency; for example, an opinion concerning the legality of the securities registered for sale under the securities laws. In other instances, the evaluation may be required by a third person, such as a purchaser of a business.
Lawyers for the government may be called upon to give a formal opinion on the legality of contemplated government agency action. In making such an evaluation, the government lawyer acts at the behest of the government as the client but for the purpose of establishing the limits of the agency's authorized activity. Such an opinion is to be distinguished from confidential legal advice given agency officials. The critical question is whether the opinion is to be made public.
A legal evaluation should be distinguished from an investigation of a person with whom the lawyer does not have a client-lawyer relationship. For example, a lawyer retained by a purchaser to analyze a vendor's title to property does not have a client-lawyer relationship with the vendor. So also, an investigation into a person's affairs by a government lawyer, or by special counsel employed by the government, is not an evaluation as that term is used in this rule. The question is whether the lawyer is retained by the person whose affairs are being examined. When the lawyer is retained by that person, the general rules concerning loyalty to client and preservation of confidences apply, which is not the case if the lawyer is retained by someone else. For this reason, it is essential to identify the person by whom the lawyer is retained. This should be made clear not only to the person under examination, but also to others to whom the results are to be made available.

Duty to third person
When the evaluation is intended for the information or use of a third person, a legal duty to that person may or may not arise. That legal question is beyond the scope of this rule. However, since such an evaluation involves a departure from the normal client-lawyer relationship, careful analysis of the situation is required. The lawyer must be satisfied as a matter of professional judgment that making the evaluation is compatible with other functions undertaken in behalf of the client. For example, if the lawyer is acting as an advocate in defending the client against charges of fraud, it would normally be incompatible with that responsibility for the lawyer to perform an evaluation for others concerning the same or a related transaction. Assuming no such impediment is apparent, however, the lawyer should advise the client of the implications of the evaluation, particularly the lawyer's responsibilities to third persons and the duty to disseminate the findings.

Access to and disclosure of information
The quality of an evaluation depends on the freedom and extent of the investigation upon which it is based. Ordinarily, a lawyer should have whatever latitude of investigation seems necessary as a matter of professional judgment. Under some circumstances, however, the terms of the evaluation may be limited. For example, certain issues or sources may be categorically excluded or the scope of search may be limited by time constraints or the non-cooperation *1057 of persons having relevant information. Any such limitations which are material to the evaluation should be described in the report. If, after a lawyer has commenced an evaluation, the client refuses to comply with the terms upon which it was understood the evaluation was to have been made, the lawyer's obligations are determined by law, having reference to the terms of the client's agreement and the surrounding circumstances.

Financial auditors' requests for information
When a question concerning the legal situation of a client arises at the instance of the client's financial auditor and the question is referred to the lawyer, the lawyer's response may be made in accordance with procedures recognized in the legal profession. Such a procedure is set forth in the American Bar Association Statement of Policy Regarding Lawyer's Responses to Auditors' Requests for Information, adopted in 1975.
4-3 Advocate.
4-3.1 Meritorious claims and contentions. A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law. A lawyer for the defendant in a criminal proceeding, or the respondent in a proceeding that could result in incarceration, may nevertheless so defend the proceeding as to require that every element of the case be established.

Comment:
The advocate has a duty to use legal procedure for the fullest benefit of the client's cause, but also a duty not to abuse legal procedure. The law, both procedural and substantive, establishes the limits within which an advocate may proceed. However, the law is not always clear and never is static. Accordingly, in determining the proper scope of advocacy, account must be taken of the law's ambiguities and potential for change.
The filing of an action or defense or similar action taken for a client is not frivolous merely because the facts have not first been fully substantiated or because the lawyer expects to develop vital evidence only by discovery. Such action is not frivolous even though the lawyer believes that the client's position ultimately will not prevail. The action is frivolous, however, if the client desires to have the action taken primarily for the purpose of harassing or maliciously injuring a person or if the lawyer is unable either to make a good faith argument on the merits of the action taken or to support the action taken by a good faith argument for an extension, modification or reversal of existing law.
4-3.2 Expediting litigation. A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client.

Comment:
Dilatory practices bring the administration of justice into disrepute. Delay should not be indulged merely for the convenience of the advocates or for the purpose of frustrating an opposing party's attempt to obtain rightful redress or repose. It is not a justification that similar conduct is often tolerated by the bench and bar. The question is whether a competent lawyer acting in good faith would regard the course of action as having some substantial purpose other than delay. Realizing financial or other benefit from otherwise improper delay in litigation is not a legitimate interest of the client.
4-3.3 Candor toward the tribunal.
(a) A lawyer shall not knowingly:
(1) Make a false statement of material fact or law to a tribunal;
(2) Fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client;
(3) Fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse *1058 to the position of the client and not disclosed by opposing counsel; or
(4) Offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures.
(b) The duties stated in paragraph (a) continue beyond the conclusion of the proceeding and apply even if compliance requires disclosure of information otherwise protected by rule 4-1.6.
(c) A lawyer may refuse to offer evidence that the lawyer reasonably believes is false.
(d) In an ex parte proceeding a lawyer shall inform the tribunal of all material facts known to the lawyer which will enable the tribunal to make an informed decision, whether or not the facts are adverse.

Comment:
The advocate's task is to present the client's case with persuasive force. Performance of that duty while maintaining confidences of the client is qualified by the advocate's duty of candor to the tribunal. However, an advocate does not vouch for the evidence submitted in a cause; the tribunal is responsible for assessing its probative value.

Representations by a lawyer
An advocate is responsible for pleadings and other documents prepared for litigation, but is usually not required to have personal knowledge of matters asserted therein, for litigation documents ordinarily present assertions by the client, or by someone on the client's behalf, and not assertions by the lawyer. Compare rule 4-3.1. However, an assertion purporting to be on the lawyer's own knowledge, as in an affidavit by the lawyer or in a statement in open court, may properly be made only when the lawyer knows the assertion is true or believes it to be true on the basis of a reasonably diligent inquiry. There are circumstances where failure to make a disclosure is the equivalent of an affirmative misrepresentation. The obligation prescribed in rule 4-1.2(d) not to counsel a client to commit or assist the client in committing a fraud applies in litigation. Regarding compliance with rule 4-1.2(d), see the comment to that rule. See also the comment to rule 4-8.4(b).

Misleading legal argument
Legal argument based on a knowingly false representation of law constitutes dishonesty toward the tribunal. A lawyer is not required to make a disinterested exposition of the law, but must recognize the existence of pertinent legal authorities. Furthermore, as stated in paragraph (a)(3), an advocate has a duty to disclose directly adverse authority in the controlling jurisdiction which has not been disclosed by the opposing party. The underlying concept is that legal argument is a discussion seeking to determine the legal premises properly applicable to the case.

False evidence
When evidence that a lawyer knows to be false is provided by a person who is not the client, the lawyer must refuse to offer it regardless of the client's wishes.
When false evidence is offered by the client, however, a conflict may arise between the lawyer's duty to keep the client's revelations confidential and the duty of candor to the court. Upon ascertaining that material evidence is false, the lawyer should seek to persuade the client that the evidence should not be offered or, if it has been offered, that its false character should immediately be disclosed. If the persuasion is ineffective, the lawyer must take reasonable remedial measures.
Except in the defense of a criminal accused, the rule generally recognized is that, if necessary to rectify the situation, an advocate must disclose the existence of the client's deception to the court or to the other party. Such a disclosure can result in grave consequences to the client, including not only a sense of betrayal but also loss of the case and perhaps a prosecution for perjury. But the alternative is that the lawyer cooperate in deceiving the court, thereby subverting the truth-finding process which the adversary system is designed *1059 to implement. See rule 4-1.2(d). Furthermore, unless it is clearly understood that the lawyer will act upon the duty to disclose the existence of false evidence the client can simply reject the lawyer's advice to reveal the false evidence and insist that the lawyer keep silent. Thus, the client could in effect coerce the lawyer into being a party to fraud on the court.

Perjury by a criminal defendant
Whether an advocate for a criminally accused has the same duty of disclosure has been intensely debated. While it is agreed that the lawyer should seek to persuade the client to refrain from perjurious testimony, there has been dispute concerning the lawyer's duty when that persuasion fails. If the confrontation with the client occurs before trial, the lawyer ordinarily can withdraw. Withdrawal before trial may not be possible if trial is imminent, if the confrontation with the client does not take place until the trial itself, or if no other counsel is available.
The most difficult situation, therefore, arises in a criminal case where the accused insists on testifying when the lawyer knows that the testimony is perjurious. The lawyer's effort to rectify the situation can increase the likelihood of the client's being convicted as well as opening the possibility of a prosecution for perjury. On the other hand, if the lawyer does not exercise control over the proof, the lawyer participates, although in a merely passive way, in deception of the court.
Three (3) resolutions of this dilemma have been proposed. One is to permit the accused to testify by a narrative without guidance through the lawyer's questioning. This compromises both competing principles; it exempts the lawyer from the duty to disclose false evidence but subjects the client to an implicit disclosure of information imparted to counsel. Another suggested resolution, of relatively recent origin, is that the advocate be entirely excused from the duty to reveal perjury if the perjury is that of the client. This is a coherent solution but makes the advocate a knowing instrument of perjury.
The third resolution of the dilemma is that the lawyer must reveal the client's perjury if necessary to rectify the situation. A criminal accused has a right to the assistance of an advocate, a right to testify and a right of confidential communication with counsel. However, an accused should not have a right to assistance of counsel in committing perjury. Furthermore, an advocate has an obligation, not only in professional ethics but under the law as well, to avoid implication in the commission of perjury or other falsification of evidence. See rule 4-1.2(d).

Remedial measures
If perjured testimony or false evidence has been offered, the advocate's proper course ordinarily is to remonstrate with the client confidentially. If that fails, the advocate should seek to withdraw if that will remedy the situation. If withdrawal will not remedy the situation or is impossible, the advocate should make disclosure to the court. It is for the court then to determine what should be done â making a statement about the matter to the trier of fact, ordering a mistrial, or perhaps nothing. If the false testimony was that of the client, the client may controvert the lawyer's version of their communication when the lawyer discloses the situation to the court. If there is an issue whether the client has committed perjury, the lawyer cannot represent the client in resolution of the issue and a mistrial may be unavoidable. An unscrupulous client might in this way attempt to produce a series of mistrials and thus escape prosecution. However, a second such encounter could be construed as a deliberate abuse of the right to counsel and as such a waiver of the right to further representation.

Constitutional requirements
The general rule â that an advocate must disclose the existence of perjury with respect to a material fact, even that of a client â applies to defense counsel in criminal cases, as well as in other instances. However, the definition of the lawyer's ethical *1060 duty in such a situation may be qualified by constitutional provisions for due process and the right to counsel in criminal cases.

Refusing to offer proof believed to be false
Generally speaking, a lawyer has authority to refuse to offer testimony or other proof that the lawyer believes is untrustworthy. Offering such proof may reflect adversely on the lawyer's ability to discriminate in the quality of evidence and thus impair the lawyer's effectiveness as an advocate. In criminal cases, however, a lawyer may, in some jurisdictions, be denied this authority by constitutional requirements governing the right to counsel.

Ex parte proceedings
Ordinarily, an advocate has the limited responsibility of presenting one side of the matters that a tribunal should consider in reaching a decision; the conflicting position is expected to be presented by the opposing party. However, in an ex parte proceeding, such as an application for a temporary restraining order, there is no balance of presentation by opposing advocates. The object of an ex parte proceeding is nevertheless to yield a substantially just result. The judge has an affirmative responsibility to accord the absent party just consideration. The lawyer for the represented party has the correlative duty to make disclosures of material facts known to the lawyer and that the lawyer reasonably believes are necessary to an informed decision.
4-3.4 Fairness of opposing party and counsel. A lawyer shall not:
(a) Unlawfully obstruct another party's access to evidence; or otherwise unlawfully alter, destroy, or conceal a document or other material that the lawyer knows or reasonably should know is relevant to a pending or a reasonably foreseeable proceeding. A lawyer shall not counsel or assist another person to do any such act.
(b) Fabricate evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness that is prohibited by law.
(c) Knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists.
(d) In pretrial procedure, make a frivolous discovery request or intentionally fail to comply with a legally proper discovery request by an opposing party.
(e) In trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant, or the guilt or innocence of an accused.
(f) Request a person other than a client to refrain from voluntarily giving relevant information to another party unless:
(1) The person is a relative or an employee or other agent of a client; and
(2) It is reasonable to believe that the person's interests will not be adversely affected by refraining from giving such information.

Comment:
The procedure of the adversary system contemplates that the evidence in a case is to be marshalled competitively by the contending parties. Fair competition in the adversary system is secured by prohibitions against destruction or concealment of evidence, improperly influencing witnesses, obstructive tactics in discovery procedure, and the like.
Documents and other items of evidence are often essential to establish a claim or defense. Subject to evidentiary privileges, the right of an opposing party, including the government, to obtain evidence through discovery or subpoena is an important procedural right. The exercise of that right can be frustrated if relevant material is altered, concealed or destroyed. Applicable law in many jurisdictions makes it an offense to destroy material for the purpose of impairing its availability in a pending proceeding or one whose commencement *1061 can be foreseen. Falsifying evidence is also generally a criminal offense. Paragraph (a) applies to evidentiary material generally, including computerized information.
With regard to paragraph (b), it is not improper to pay a witness's expenses or to compensate an expert witness on terms permitted by law. The common law rule in most jurisdictions is that it is improper to pay an occurrence witness any fee for testifying and that it is improper to pay an expert witness a contingent fee.
Paragraph (f) permits a lawyer to advise employees of a client to refrain from giving information to another party, for the employees may identify their interests with those of the client. See also rule 4-4.2.
4-3.5 Impartiality and decorum of the tribunal.
(a) A lawyer shall not seek to influence a judge, juror, prospective juror, or other decision maker except as permitted by law or the rules of court.
(b) In an adversary proceeding a lawyer shall not communicate or cause another to communicate as to the merits of the cause with a judge or an official before whom the proceeding is pending except:
(1) In the course of the official proceeding in the cause;
(2) In writing if the lawyer promptly delivers a copy of the writing to the opposing counsel or to the adverse party if not represented by a lawyer;
(3) Orally upon notice to opposing counsel or to the adverse party if not represented by a lawyer; or
(4) As otherwise authorized by law.
(c) A lawyer shall not engage in conduct intended to disrupt a tribunal.
(d) A lawyer shall not:
(1) Before the trial of a case with which he or she is connected, communicate or cause another to communicate with anyone he or she knows to be a member of the venire from which the jury will be selected.
(2) During the trial of a case with which he or she is connected, communicate or cause another to communicate with any member of the jury.
(3) During the trial of a case with which he or she is not connected, communicate or cause another to communicate with a juror concerning the case.
(4) After dismissal of the jury in a case with which he or she is connected, initiate communication with or cause another to initiate communication with any juror regarding the trial except to determine whether the verdict may be subject to legal challenge. Provided, a lawyer may not interview jurors for this purpose unless he or she has reason to believe that grounds for such challenge may exist. Provided further, before conducting any such interview the lawyer must file in the cause a notice of intention to interview setting forth the name of the juror or jurors to be interviewed. A copy of the notice must be delivered to the trial judge and opposing counsel a reasonable time before such interview. The provisions of this rule do not prohibit a lawyer from communicating with veniremen or jurors in the course of official proceedings or as authorized by court rule or written order of the court.

Comment:
Many forms of improper influence upon a tribunal are proscribed by criminal law. Others are specified in Florida's Code of Judicial Conduct, with which an advocate should be familiar. A lawyer is required to avoid contributing to a violation of such provisions.
The advocate's function is to present evidence and argument so that the cause may be decided according to law. Refraining from abusive or obstreperous conduct is a corollary of the advocate's right to speak on behalf of litigants. A lawyer may stand firm against abuse by a judge but should avoid reciprocation; the judge's default is no justification for similar dereliction by an advocate. An advocate can present the cause, protect the record for subsequent review and preserve professional integrity by patient firmness no less effectively than by belligerence or theatrics.
*1062 4-3.6 Trial publicity.
(a) A lawyer shall not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicative proceeding. A lawyer shall not counsel or assist another person to make such a statement. Prosecutors and defense counsel shall exercise reasonable care to prevent investigators, employees, or other persons assisting in or associated with a criminal case from making extrajudicial statements that are prohibited under this rule.
(b) A statement referred to in paragraph (a) ordinarily is likely to have such an effect when it refers to a civil matter triable to a jury, a criminal matter, or any other proceeding that could result in incarceration, and the statement relates to:
(1) The character, credibility, reputation, or criminal record of a party, suspect in a criminal investigation, or witness or the identity of a witness or the expected testimony of a party or witness;
(2) In a criminal case or proceeding that could result in incarceration, the possibility of a plea of guilty to the offense, or the existence or contents of any confession, admission, or statement given by a defendant or suspect or that person's refusal or failure to make a statement;
(3) The performance or results of any examination or test or the refusal or failure of a person to submit to an examination or test or the identity or nature of physical evidence expected to be presented;
(4) Any opinion as to the guilt or innocence of a defendant or suspect in a criminal case or proceeding that could result in incarceration;
(5) Information the lawyer knows or reasonably should know is likely to be inadmissible as evidence in a trial and would if disclosed create a substantial risk of prejudicing an impartial trial; or
(6) The fact that a defendant has been charged with a crime, unless there is included therein a statement explaining that the charge is merely an accusation and that the defendant is presumed innocent until and unless proven guilty.
(c) Notwithstanding paragraphs (a) and (b)(1) through (5), a lawyer involved in the investigation or litigation of a matter may state without elaboration:
(1) The general nature of the claim or defense;
(2) The information contained in a public record;
(3) That an investigation of the matter is in progress, including the general scope of the investigation, the offense or claim, or defense involved and, except when prohibited by law, the identity of the persons involved;
(4) The scheduling or result of any step in litigation;
(5) A request for assistance in obtaining evidence and information necessary thereto;
(6) A warning of danger concerning the behavior of a person involved when there is reason to believe that there exists the likelihood of substantial harm to an individual or to the public interest; and
(7) In a criminal case:
a. The identity, residence, occupation, and family status of the accused;
b. If the accused has not been apprehended, information necessary to aid in apprehension of that person;
c. The fact, time, and place of arrest; and
d. The identity of investigating and arresting officers or agencies and the length of the investigation.

Comment:
It is difficult to strike a balance between protecting the right to a fair trial and safeguarding the right of free expression. Preserving the right to a fair trial necessarily entails some curtailment of the information that may be disseminated about a party prior to trial, particularly where trial by jury is involved. If there were no such *1063 limits, the result would be the practical nullification of the protective effect of the rules of forensic decorum and the exclusionary rules of evidence. On the other hand, there are vital social interests served by the free dissemination of information about events having legal consequences and about legal proceedings themselves. The public has a right to know about threats to its safety and measures aimed at assuring its security. It also has a legitimate interest in the conduct of judicial proceedings, particularly in matters of general public concern. Furthermore, the subject matter of legal proceedings is often of direct significance in debate and deliberation over questions of public policy.
Special rules of confidentiality may validly govern proceedings in juvenile, domestic relations and mental disability proceedings and perhaps other types of litigation. Rule 4-3.4(c) requires compliance with such rules.
4-3.7 Lawyer as witness.
(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness on behalf of his or her client except where:
(1) The testimony relates to an uncontested issue;
(2) The testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony;
(3) The testimony relates to the nature and value of legal services rendered in the case; or
(4) Disqualification of the lawyer would work substantial hardship on the client.
(b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by rule 4-1.7 or 4-1.9.

Comment:
Combining the roles of advocate and witness can prejudice the opposing party and can involve a conflict of interest between the lawyer and client.
The opposing party has proper objection where the combination of roles may prejudice that party's rights in the litigation. A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof.
Paragraph (a)(1) recognizes that if the testimony will be uncontested, the ambiguities in the dual role are purely theoretical. Paragraphs (a)(2) and (3) recognize that, where the testimony concerns the extent and value of legal services rendered in the action in which the testimony is offered, permitting the lawyers to testify avoids the need for a second trial with new counsel to resolve that issue. Moreover, in such a situation the judge has first-hand knowledge of the matter in issue; hence, there is less dependence on the adversary process to test the credibility of the testimony.
Apart from these two (2) exceptions, paragraph (a)(4) recognizes that a balancing is required between the interests of the client and those of the opposing party. Whether the opposing party is likely to suffer prejudice depends on the nature of the case, the importance and probable tenor of the lawyer's testimony, and the probability that the lawyer's testimony will conflict with that of other witnesses. Even if there is risk of such prejudice, in determining whether the lawyer should be disqualified due regard must be given to the effect of disqualification on the lawyer's client. It is relevant that one or both parties could reasonably foresee that the lawyer would probably be a witness. The principle of imputed disqualification stated in rule 4-1.10 has no application to this aspect of the problem.
Whether the combination of roles involves an improper conflict of interest with respect to the client is determined by rule 4-1.7 or 4-1.9. For example, if there is likely to be substantial conflict between the testimony of the client and that of the lawyer or a member of the lawyer's firm, *1064 the representation is improper. The problem can arise whether the lawyer is called as a witness on behalf of the client or is called by the opposing party. Determining whether or not such a conflict exists is primarily the responsibility of the lawyer involved. See comment to rule 4-1.7. If a lawyer who is a member of a firm may not act as both advocate and witness by reason of conflict of interest, rule 4-1.10 disqualifies the firm also.
4-3.8 Special responsibilities of a prosecutor. The prosecutor in a criminal case shall:
(a) Refrain from prosecuting a charge that the prosecutor knows is not supported by probably cause;
(b) Not seek to obtain from an unrepresented accused a waiver of important pretrial rights such as a right to a preliminary hearing;
(c) Make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense, and, in connection with sentencing, disclose to the defense and to the tribunal all unprivileged mitigating information known to the prosecutor, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal.

Comment:
A prosecutor has the responsibility of a minister of justice and not simply that of an advocate. This responsibility carries with it specific obligations such as making a reasonable effort to assure that the accused has been advised of the right to, and the procedure for, obtaining counsel and has been given a reasonable opportunity to obtain counsel so that guilt is decided upon the basis of sufficient evidence. Precisely how far the prosecutor is required to go in this direction is a matter of debate. Florida has adopted the American Bar Association Standards of Criminal Justice Relating to Prosecution Function. This is the product of prolonged and careful deliberation by lawyers experienced in criminal prosecution and defense and should be consulted for further guidance. See also rule 4-3.3(d) governing ex parte proceedings, among which grand jury proceedings are included. Applicable law may require other measures by the prosecutor and knowing disregard of these obligations or systematic abuse of prosecutorial discretion could constitute a violation of rule 4-8.4.
Paragraph (b) does not apply to an accused appearing pro se with the approval of the tribunal, nor does it forbid the lawful questioning of a suspect who has knowingly waived the rights to counsel and silence.
The exception in paragraph (c) recognizes that a prosecutor may seek an appropriate protective order from the tribunal if disclosure of information to the defense could result in substantial harm to an individual or to the public interest.
4-3.9 Advocate in nonadjudicative proceedings. A lawyer representing a client before a legislative or administrative tribunal in a nonadjudicative proceeding shall disclose that the appearance is in a representative capacity and shall conform to the provisions of rules 4-3.3(a) through (c), 4-3.4(a) through (c), and 4-3.5(a), (c), and (d).

Comment:
In representation before bodies such as legislatures, municipal councils, and executive and administrative agencies acting in a rule-making or policy-making capacity, lawyers present facts, formulate issues, and advance argument in the matters under consideration. The decision-making body, like a court, should be able to rely on the integrity of the submissions made to it. A lawyer appearing before such a body should deal with the tribunal honestly and in conformity with applicable rules of procedure.
Lawyers have no exclusive right to appear before nonadjudicative bodies, as they do before a court. The requirements of this rule therefore may subject lawyers to regulations inapplicable to advocates who are not lawyers. However, legislatures and administrative agencies have a right to *1065 expect lawyers to deal with them as they deal with courts.
This rule does not apply to representation of a client in a negotiation or other bilateral transaction with a governmental agency; representation in such a transaction is governed by rules 4-4.1 through 4-4.4.
4-4 Transactions with persons other than clients.
4-4.1 Truthfulness in statements to others. In the course of representing a client a lawyer shall not knowingly:
(a) Make a false statement of material fact or law to a third person; or
(b) Fail to disclose a material fact to a third person when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client, unless disclosure is prohibited by rule 4-1.6.

Comment:

Misrepresentation
A lawyer is required to be truthful when dealing with others on a client's behalf, but generally has no affirmative duty to inform an opposing party of relevant facts. A misrepresentation can occur if the lawyer incorporates or affirms a statement of another person that the lawyer knows is false. Misrepresentations can also occur by failure to act.

Statements of fact
This rule refers to statements of fact. Whether a particular statement should be regarded as one of fact can depend on the circumstances. Under generally accepted conventions in negotiation, certain types of statements ordinarily are not taken as statements of material fact. Estimates of price or value placed on the subject of a transaction and a party's intentions as to an acceptable settlement of a claim are in this category and so is the existence of an undisclosed principal except where nondisclosure of the principal would constitute fraud.

Fraud by client
Paragraph (b) recognizes that substantive law may require a lawyer to disclose certain information to avoid being deemed to have assisted the client's crime or fraud. The requirement of disclosure created by this paragraph is, however, subject to the obligations created by rule 4-1.6.
4-4.2 Communication with person represented by counsel. In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer.

Comment:
This rule does not prohibit communication with a party, or an employee or agent of a party, concerning matters outside the representation. For example, the existence of a controversy between a government agency and a private party, or between two (2) organizations, does not prohibit a lawyer for either from communicating with nonlawyer representatives of the other regarding a separate matter. Also, parties to a matter may communicate directly with each other and a lawyer having independent justification for communicating with the other party is permitted to do so. Communications authorized by law include, for example, the right of a party to a controversy with a government agency to speak with government officials about the matter.
In the case of an organization, this rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization. If an agent or employee of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for purposes of this rule. Compare rule 4-3.4(f). This rule also covers any person, whether *1066 or not a party to a formal proceeding, who is represented by counsel concerning the matter in question.
4-4.3 Dealing with unrepresented persons. In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding.

Comment:
An unrepresented person, particularly one not experienced in dealing with legal matters, might assume that a lawyer is disinterested in loyalties or is a disinterested authority on the law even when the lawyer represents a client. During the course of a lawyer's representation of a client, the lawyer should not give advice to an unrepresented person other than the advice to obtain counsel.
4-4.4 Respect for rights of third persons. In representing a client a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person or knowingly use methods of obtaining evidence that violate the legal rights of such a person.

Comment:
Responsibility to a client requires a lawyer to subordinate the interests of others to those of the client, but that responsibility does not imply that a lawyer may disregard the rights of third persons. It is impractical to catalogue all such rights, but they include legal restrictions on methods of obtaining evidence from third persons.
4-5 Law firms and associations.
4-5.1 Responsibilities of a partner or supervisory lawyer.
(a) A partner in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that all lawyers in the firm conform to the Rules of Professional Conduct.
(b) A lawyer having direct supervisory authority over another lawyer shall make reasonable efforts to ensure that the other lawyer conforms to the Rules of Professional Conduct.
(c) A lawyer shall be responsible for another lawyer's violation of the Rules of Professional Conduct if:
(1) The lawyer orders or, with knowledge of the specific conduct, ratifies the conduct involved; or
(2) The lawyer is a partner in the law firm in which the other lawyer practices, or has direct supervisory authority over the other lawyer, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.

Comment:
Paragraphs (a) and (b) refer to lawyers who have supervisory authority over the professional work of a firm or legal department of a government agency. This includes members of a partnership and the shareholders in a law firm organized as a professional corporation; lawyers having supervisory authority in the law department of an enterprise or government agency; and lawyers who have intermediate managerial responsibilities in a firm.
The measures required to fulfill the responsibility prescribed in paragraphs (a) and (b) can depend on the firm's structure and the nature of its practice. In a small firm, informal supervision and occasional admonition ordinarily might be sufficient. In a large firm, or in practice situations in which intensely difficult ethical problems frequently arise, more elaborate procedures may be necessary. Some firms, for example, have a procedure whereby junior lawyers can make confidential referral of ethical problems directly to a designated senior partner or special committee. See rule 4-5.2. Firms, whether large or small, may also rely on continuing legal education in professional ethics. In any event the ethical atmosphere of a firm can influence the conduct of all its members and a lawyer having authority over the work of another *1067 may not assume that the subordinate lawyer will inevitably conform to the rules.
Paragraph (c)(1) expresses a general principle of responsibility for acts of another. See also rule 4-8.4(a).
Paragraph (c)(2) defines the duty of a lawyer having direct supervisory authority over performance of specific legal work by another lawyer. Whether a lawyer has such supervisory authority in particular circumstances is a question of fact. Partners of a private firm have at least indirect responsibility for all work being done by the firm, while a partner in charge of a particular matter ordinarily has direct authority over other firm lawyers engaged in the matter. Appropriate remedial action by a partner would depend on the immediacy of the partner's involvement and the seriousness of the misconduct. The supervisor is required to intervene to prevent avoidable consequences of misconduct if the supervisor knows that the misconduct occurred. Thus, if a supervising lawyer knows that a subordinate misrepresented a matter to an opposing party in negotiation, the supervisor as well as the subordinate has a duty to correct the resulting misapprehension.
Professional misconduct by a lawyer under supervision could reveal a violation of paragraph (b) on the part of the supervisory lawyer even though it does not entail a violation of paragraph (c) because there was no direction, ratification, or knowledge of the violation.
Apart from this rule and rule 4-8.4(a), a lawyer does not have disciplinary liability for the conduct of a partner, associate, or subordinate. Whether a lawyer may be liable civilly or criminally for another lawyer's conduct is a question of law beyond the scope of these rules.
4-5.2 Responsibilities of a subordinate lawyer.
(a) A lawyer is bound by the Rules of Professional Conduct notwithstanding that the lawyer acted at the direction of another person.
(b) A subordinate lawyer does not violate the Rules of Professional Conduct if that lawyer acts in accordance with a supervisory lawyer's reasonable resolution of an arguable question of professional duty.

Comment:
Although a lawyer is not relieved of responsibility for a violation by the fact that the lawyer acted at the direction of a supervisor, that fact may be relevant in determining whether a lawyer had the knowledge required to render conduct a violation of the rules. For example, if a subordinate filed a frivolous pleading at the direction of a supervisor, the subordinate would not be guilty of a professional violation unless the subordinate knew of the document's frivolous character.
When lawyers in a supervisor-subordinate relationship encounter a matter involving professional judgment as to ethical duty, the supervisor may assume responsibility for making the judgment. Otherwise a consistent course of action or position could not be taken. If the question can reasonably be answered only one way, the duty of both lawyers is clear and they are equally responsible for fulfilling it. However, if the question is reasonably arguable, someone has to decide upon the course of action. That authority ordinarily reposes in the supervisor, and a subordinate may be guided accordingly. For example, if a question arises whether the interests of two (2) clients conflict under rule 4-1.7, the supervisor's reasonable resolution of the question should protect the subordinate professionally if the resolution is subsequently challenged.
4-5.3 Responsibilities regarding nonlawyer assistants. With respect to a nonlawyer employed or retained by or associated with a lawyer:
(a) A partner in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the person's conduct is compatible with the professional obligations of the lawyer;
(b) A lawyer having direct supervisory authority over the nonlawyer shall make *1068 reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer; and
(c) A lawyer shall be responsible for conduct of such a person that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer if:
(1) The lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved; or
(2) The lawyer is a partner in the law firm in which the person is employed, or has direct supervisory authority over the person, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.

Comment:
Lawyers generally employ assistants in their practice, including secretaries, investigators, law student interns, and paraprofessionals. Such assistants, whether employees or independent contractors, act for the lawyer in rendition of the lawyer's professional services. A lawyer should give such assistants appropriate instruction and supervision concerning the ethical aspects of their employment, particularly regarding the obligation not to disclose information relating to representation of the client, and should be responsible for their work product. The measures employed in supervising nonlawyers should take account of the fact that they do not have legal training and are not subject to professional discipline.
4-5.4 Professional independence of a lawyer.
(a) A lawyer or law firm shall not share legal fees with a nonlawyer, except that:
(1) An agreement by a lawyer with the lawyer's firm, partner, or associate may provide for the payment of money, over a reasonable period of time after the lawyer's death, to the lawyer's estate, or to one or more specified persons;
(2) A lawyer who undertakes to complete unfinished legal business of a deceased lawyer may pay to the estate of the deceased lawyer that proportion of the total compensation which fairly represents the services rendered by the deceased lawyer; and
(3) A lawyer or law firm may include nonlawyer employees in a compensation or retirement plan, even though the plan is based in whole or in part on a profit-sharing arrangement.
(b) A lawyer shall not form a partnership with a nonlawyer if any of the activities of the partnership consist of the practice of law.
(c) A lawyer shall not permit a person who recommends, employs, or pays the lawyer to render legal services for another to direct or regulate the lawyer's professional judgment in rendering such legal services.
(d) A lawyer shall not practice with or in the form of a professional corporation or association authorized to practice law for a profit if:
(1) A nonlawyer owns any interest therein, except that a fiduciary representative of the estate of a lawyer may hold the stock or interest of the lawyer for a reasonable time during administration;
(2) A nonlawyer is a corporate director or officer thereof; or
(3) A nonlawyer has the right to direct or control the professional judgment of a lawyer.

Comment:
The provisions of this rule express traditional limitations on sharing fees. These limitations are to protect the lawyer's professional independence of judgment. Where someone other than the client pays the lawyer's fee or salary, or recommends employment of the lawyer, that arrangement does not modify the lawyer's obligation to the client. As stated in paragraph (c), such arrangements should not interfere with the lawyer's professional judgment.
4-5.5 Unlicensed practice of law. A lawyer shall not:
*1069 (a) Practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction; or
(b) Assist a person who is not a member of the bar in the performance of activity that constitutes the unlicensed practice of law.

Comment:
The definition of the practice of law is established by law and varies from one jurisdiction to another. Whatever the definition, limiting the practice of law to members of the bar protects the public against rendition of legal services by unqualified persons. Paragraph (b) does not prohibit a lawyer from employing the services of paraprofessionals and delegating functions to them, so long as the lawyer supervises the delegated work and retains responsibility for their work. See rule 4-5.3. Likewise, it does not prohibit lawyers from providing professional advice and instruction to nonlawyers whose employment requires knowledge of law; for example, claims adjusters, employees of financial or commercial institutions, social workers, accountants, and persons employed in government agencies. In addition, a lawyer may counsel nonlawyers who wish to proceed pro se.
4-5.6 Restrictions on right to practice. A lawyer shall not participate in offering or making:
(a) A partnership or employment agreement that restricts the rights of a lawyer to practice after termination of the relationship, except an agreement concerning benefits upon retirement; or
(b) An agreement in which a restriction on the lawyer's right to practice is part of the settlement of a controversy between private parties.

Comment:
An agreement restricting the right of partners or associates to practice after leaving a firm not only limits their professional autonomy, but also limits the freedom of clients to choose a lawyer. Paragraph (a) prohibits such agreements except for restrictions incident to provisions concerning retirement benefits for service with the firm.
Paragraph (b) prohibits a lawyer from agreeing not to represent other persons in connection with settling a claim on behalf of a client.
4-6 Public service.
4-6.1 Pro bono publico service. A lawyer should render public interest legal service. A lawyer may discharge this responsibility by:
(a) Providing professional services at no fee or a reduced fee to persons of limited means or to public service or charitable groups or organizations;
(b) Service without compensation in public interest activities that improve the law, the legal system or the legal profession; or
(c) Financial support for organizations that provide legal services to persons of limited means.

Comment:
Each lawyer engaged in the practice of law has a responsibility to provide public interest legal services without fee, or at a substantially reduced fee, in one or more of the following areas: poverty law, civil rights law, public rights law, charitable organization representation, and the administration of justice. This rule expresses that policy but is not intended to be enforced through disciplinary process.
The rights and responsibilities of individuals and organizations in the United States are increasingly defined in legal terms. As a consequence, legal assistance in coping with the web of statutes, rules, and regulations is imperative for all persons.
The basic responsibility for providing legal services for those unable to pay ultimately rests upon the individual lawyer, and personal involvement in the problems of the disadvantaged can be one of the most rewarding experiences in the life of a lawyer. Every lawyer, regardless of professional prominence or professional workload, should find time to participate in or otherwise support the provision of legal services to the disadvantaged. The provision of free legal services to those unable *1070 to pay reasonable fees continues to be an obligation of each lawyer as well as the profession generally, but the efforts of individual lawyers are often not enough to meet the need. Thus, it has been necessary for the profession and government to institute additional programs to provide legal services. Accordingly, legal aid offices, lawyer referral services, and other related programs have been developed, and others will be developed by the profession and government. Every lawyer should support all proper efforts to meet this need for legal services.
4-6.2 Accepting appointments. A lawyer shall not seek to avoid appointment by a tribunal to represent a person except for good cause, such as:
(a) Representing the client is likely to result in violation of the Rules of Professional Conduct or law;
(b) Representing the client is likely to result in an unreasonable financial burden on the lawyer; or
(c) The client or the cause is so repugnant to the lawyer as to be likely to impair the client-lawyer relationship or the lawyer's ability to represent the client.

Comment:
A lawyer ordinarily is not obliged to accept a client whose character or cause the lawyer regards as repugnant. The lawyer's freedom to select clients is, however, qualified. All lawyers have a responsibility to assist in providing pro bono publico service. See rule 4-6.1. An individual lawyer fulfills this responsibility by accepting a fair share of unpopular matters or indigent or unpopular clients. A lawyer may also be subject to appointment by a court to serve unpopular clients or persons unable to afford legal services.

Appointed counsel
For good cause a lawyer may seek to decline an appointment to represent a person who cannot afford to retain counsel or whose cause is unpopular. Good cause exists if the lawyer could not handle the matter competently, see rule 4-1.1, or if undertaking the representation would result in an improper conflict of interest, for example, when the client or the cause is so repugnant to the lawyer as to be likely to impair the client-lawyer relationship or the lawyer's ability to represent the client. A lawyer may also seek to decline an appointment if acceptance would be unreasonably burdensome, for example, when it would impose a financial sacrifice so great as to be unjust.
An appointed lawyer has the same obligations to the client as retained counsel, including the obligations of loyalty and confidentiality, and is subject to the same limitations on the client-lawyer relationship, such as the obligation to refrain from assisting the client in violation of the rules.
4-6.3 Membership in legal services organization. A lawyer may serve as a director, officer or member of a legal services organization, apart from the law firm in which the lawyer practices, notwithstanding that the organization serves persons having interests adverse to the client of the lawyer. The lawyer shall not knowingly participate in a decision or action of the organization:
(a) If participating in the decision would be incompatible with the lawyer's obligations to a client under rule 4-1.7; or
(b) Where the decision could have a material adverse effect on the representation of a client of the organization whose interests are adverse to a client of the lawyer.

Comment:
Lawyers should be encouraged to support and participate in legal service organizations. A lawyer who is an officer or a member of such an organization does not thereby have a client-lawyer relationship with persons served by the organization. However, there is potential conflict between the interests of such persons and the interests of the lawyer's clients. If the possibility of such conflict disqualified a lawyer from serving on the board of a legal services organization, the profession's involvement in such organizations would be severely curtailed.
*1071 It may be necessary in appropriate cases to reassure a client of the organization that the representation will not be affected by conflicting loyalties of a member of the board. Established, written policies in this respect can enhance the credibility of such assurances.
4-6.4 Law reform activities affecting client interests. A lawyer may serve as a director, officer, or member of an organization involved in reform of the law or its administration notwithstanding that the reform may affect the interests of a client of the lawyer. When the lawyer knows that the interests of a client may be materially affected by a decision in which the lawyer participates, the lawyer shall disclose that fact but need not identify the client.

Comment:
Lawyers involved in organizations seeking law reform generally do not have a client-lawyer relationship with the organization. Otherwise, it might follow that a lawyer could not be involved in a bar association law reform program that might indirectly affect a client. See also rule 4-1.2(b). For example, a lawyer specializing in antitrust litigation might be regarded as disqualified from participating in drafting revisions of rules governing that subject. In determining the nature and scope of participation in such activities, a lawyer should be mindful of obligations to clients under other rules, particularly rule 4-1.7. A lawyer is professionally obligated to protect the integrity of the program by making an appropriate disclosure within the organization when the lawyer knows a private client might be materially affected.
4-7 Information about legal services.
4-7.1 Communications concerning a lawyer's services. A lawyer shall not make or permit to be made a false or misleading communication about the lawyer or the lawyer's services. A communication is false or misleading if it:
(a) Contains a material misrepresentation of fact or law or omits a fact necessary to make the statement considered as a whole not materially misleading;
(b) Is likely to create an unjustified expectation about results the lawyer can achieve or states or implies that the lawyer can achieve results by means that violate the Rules of Professional Conduct or other law; or
(c) Compares the lawyer's services with other lawyers' services, unless the comparison can be factually substantiated.

Comment:
This rule governs all communications about a lawyer's services, including advertising permitted by rule 4-7.2. Whatever means are used to make known a lawyer's services, statements about them should be truthful. This includes any material misrepresentation or misleading omission such as where a lawyer states or implies certification or recognition as a specialist other than in accord with rule 4-7.4 or where a lawyer implies that any court, tribunal or other public body or official can be improperly influenced.
The prohibition in paragraph (b) of statements that may create "unjustified expectations" would ordinarily preclude advertisements about results obtained on behalf of a client, such as the amount of a damage award or the lawyer's record in obtaining favorable verdicts, and advertisements containing client endorsements. Such information may create the unjustified expectation that similar results can be obtained for others without reference to the specific factual and legal circumstances.
4-7.2 Advertising.
(a) Subject to the requirements of rule 4-7.1, a lawyer may advertise services through public media, such as a telephone directory, legal directory, newspaper or other periodical, outdoor, radio, or television advertising, or through written communication not involving solicitation as defined in rule 4-7.3.
(b) A copy or recording of an advertisement or written communication shall be kept for three (3) years after its last dissemination along with a record of when and where it was used.
*1072 (c) A lawyer shall not give anything of value to a person for recommending the lawyer's services, except that a lawyer may pay the reasonable cost of advertising or written communication permitted by these rules and may pay the usual charges of a lawyer referral service or other legal service organization.
(d) Any communication made pursuant to this rule shall include the name of at least one lawyer or the lawyer referral service responsible for its content.

Comment:
To assist the public in obtaining legal services, lawyers should be allowed to make known their services not only through reputation but also through organized information campaigns in the form of advertising. Advertising involves an active quest for clients, contrary to the tradition that a lawyer should not seek clientele. However, the public's need to know about legal services can be fulfilled in part through advertising. This need is particularly acute in the case of persons of moderate means who have not made extensive use of legal services. The interest in expanding public information about legal services ought to prevail over considerations of tradition. Nevertheless, advertising by lawyers entails the risk of practices that are misleading or overreaching.
This rule permits public dissemination of information concerning a lawyer's name or firm name, address, and telephone number; the kinds of services the lawyer will undertake; the basis on which the lawyer's fees are determined, including prices for specific services and payment and credit arrangements; a lawyer's foreign language ability; names of references and, with their consent, names of clients regularly represented; and other information that might invite the attention of those seeking legal assistance.
Questions of effectiveness and taste in advertising are matters of speculation and subjective judgment. Television is now one of the most powerful media for getting information to the public, particularly persons of low and moderate income; prohibiting television advertising, therefore, would impede the flow of information about legal services to many sectors of the public. Limiting the information that may be advertised has a similar effect and assumes that the bar can accurately forecast the kind of information that the public would regard as relevant. However, the content and format of a legal advertisement should comport with the dignity of the profession and promote public confidence in our legal system. Advertisements utilizing slogans, gimmicks, or other garish techniques, or the use of large electrical and neon signs, soundtracks, or other extravagant media, fail to meet these standards and diminish public confidence in the legal system.
Neither this rule nor rule 4-7.3 prohibits communications authorized by law, such as notice to members of a class in class action litigation.

Record of advertising
Paragraph (b) requires that a record of the content and use of advertising be kept in order to facilitate enforcement of this rule. It does not require that advertising be subject to review prior to dissemination. Such a requirement would be burdensome and expensive relative to its possible benefits, and may be of doubtful constitutionality.

Paying others to recommend a lawyer
A lawyer is allowed to pay for advertising permitted by this rule, but otherwise is not permitted to pay another person for channeling professional work. This restriction does not prevent an organization or person other than the lawyer from advertising or recommending the lawyer's services. Thus, a legal aid agency or prepaid legal services plan may pay to advertise legal services provided under its auspices. Likewise, a lawyer may participate in lawyer referral programs and pay the usual fees charged by such programs, subject, however to the limitations imposed by rule 4-7.6. Paragraph (c) does not prohibit paying regular compensation to an assistant, such as a secretary, to prepare communications permitted by this rule.
*1073 4-7.3 Direct contact with prospective clients.
(a) A lawyer may not solicit professional employment from a prospective client with whom the lawyer has no family or prior professional relationship, in person or otherwise, when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain. The term "solicit" includes contact in person, by telephone or telegraph, or by other communication directed to a specific recipient and includes any written form of communication directed to a specific recipient and not meeting the requirements of paragraph (b) of this rule.
(b) Written communication.
(1) Written communications to prospective clients for the purpose of obtaining professional employment are subject to the following requirements:
a. Such written communications shall be plainly marked "advertisement" on the face of the envelope and at the top of each page of the written communication in type one size larger than the largest type used in the written communication.
b. A copy of each such written communication shall be sent to staff counsel at bar headquarters and another copy shall be retained by the lawyer for three (3) years. If written communications identical in content are sent to two (2) or more prospective clients, the lawyer may comply with this requirement by sending a single copy together with a list of the names and addresses of persons to whom the written communication was sent to staff counsel at bar headquarters as well as retaining the same information.
(2) A lawyer shall not send, or knowingly permit to be sent, on behalf of himself, his firm, his partner, an associate, or any other lawyer affiliated with him or his firm a written communication to a prospective client for the purpose of obtaining professional employment if:
a. The written communication concerns a specific matter and the lawyer knows or reasonably should know that the person to whom the communication is directed is represented by a lawyer in the matter;
b. It has been made known to the lawyer that the person does not want to receive such communications from the lawyer;
c. The communication involves coercion, duress, fraud, overreaching, harassment, intimidation, or undue influence;
d. The communication contains a false, fraudulent, misleading, or deceptive statement or claim or is improper under rule 4-7.1; or
e. The lawyer knows or reasonably should know that the physical, emotional, or mental state of the person makes it unlikely that the person would exercise reasonable judgment in employing a lawyer.

Comment:
There is a potential for abuse inherent in direct solicitation by a lawyer of prospective clients known to need legal services. It subjects the lay person to the private importuning of a trained advocate, in a direct interpersonal encounter. A prospective client often feels overwhelmed by the situation giving rise to the need for legal services and may have an impaired capacity for reason, judgment, and protective self-interest. Furthermore, the lawyer seeking the retainer is faced with a conflict stemming from the lawyer's own interest, which may color the advice and representation offered the vulnerable prospect.
The situation is therefore fraught with the possibility of undue influence, intimidation, and overreaching. This potential for abuse inherent in direct solicitation of prospective clients justifies its prohibition, particularly since lawyer advertising permitted under rule 4-7.2 offers an alternative means of communicating necessary information to those who may be in need of legal services.
Advertising makes it possible for a prospective client to be informed about the need for legal services, and about the qualifications of available lawyers and law firms, without subjecting the prospective *1074 client to direct personal persuasion that may overwhelm the client's judgment.
The use of general advertising to transmit information from lawyer to prospective client, rather than direct private contact, will help to assure that the information flows cleanly as well as freely. Advertising is out in public view, thus subject to scrutiny by those who know the lawyer. This informal review is itself likely to help guard against statements and claims that might constitute false or misleading communications in violation of rule 4-7.1. Direct private communications from a lawyer to a prospective client are not subject to such third-party scrutiny and consequently are much more likely to approach (and occasionally cross) the dividing line between accurate representations and those that are false and misleading.
Direct written communications seeking employment by specific prospective clients present less potential for abuse or overreaching than in-person solicitation and are therefore not prohibited, but are subject to reasonable restrictions designed to minimize or preclude abuse and overreaching and to ensure lawyer accountability if such should occur. Thus, it is appropriate to limit the circumstances under which such direct contact is permitted; require the identification of such communication by nature; and require the keeping of a record of such direct contact for a reasonable period of time.
Similarly, this rule would not prohibit a lawyer from contacting representatives of organizations or groups that may be interested in establishing a group or prepaid legal plan for its members, insureds, beneficiaries, or other third parties for the purpose of informing such entities of the availability of and details concerning the plan or arrangement which the lawyer or his or her firm is willing to offer. This form of communication is not directed to a specific prospective client known to need legal services related to a particular matter. Rather, it is usually addressed to an individual acting in a fiduciary capacity seeking a supplier of legal services for others who may, if they choose, become prospective clients of the lawyer. Under these circumstances, the activity which the lawyer undertakes in communicating with such representatives and the type of information transmitted to the individual are functionally similar to and serve the same purpose as advertising permitted under rule 4-7.2.
4-7.4 Communication of fields of practice. A lawyer may communicate the fact that the lawyer does or does not practice in particular fields of law. A lawyer shall not state or imply that the lawyer is a specialist except as follows:
(a) A lawyer admitted to engage in patent practice before the United States patent and trademark office may use the designation "patent attorney" or a substantially similar designation;
(b) A lawyer engaged in admiralty practice may use the designation "admiralty," "proctor in admiralty," or a substantially similar designation;
(c) A lawyer who complies with the Florida Certification Plan as set forth in chapter 6, Rules Regulating the Florida Bar, or who is certified by a national group which has standards for certification substantially the same as those set out in chapter 6, may inform the public and other lawyers of his or her certified areas of legal practice; and
(d) A lawyer who complies with the Florida Designation Plan as set forth in chapter 6, Rules Regulating The Florida Bar, may inform the public and other lawyers of his or her designated areas of legal practice.

Comment:
This rule permits a lawyer to indicate areas of practice in communications about the lawyer's services; for example, in a telephone directory or other advertising. If a lawyer practices only in certain fields, or will not accept matters except in such fields, the lawyer is permitted so to indicate.
Recognition of specialization in patent matters is a matter of long-established policy of the patent and trademark office. Designation of admiralty practice has a *1075 long historical tradition associated with maritime commerce and the federal courts.
4-7.5 Firm names and letterheads.
(a) A lawyer shall not use a firm name, letterhead, or other professional designation that violates rule 4-7.1. A trade name may be used by a lawyer in private practice if it does not imply a connection with a government agency or with a public or charitable legal services organization and is not otherwise in violation of rule 4-7.1.
(b) A law firm with offices in more than one jurisdiction may use the same name in each jurisdiction, but identification of the lawyers in an office of the firm shall indicate the jurisdictional limitations on those not licensed to practice in the jurisdiction where the office is located.
(c) The name of a lawyer holding a public office shall not be used in the name of a law firm, or in communications on its behalf, during any substantial period in which the lawyer is not actively and regularly practicing with the firm.
(d) Lawyers may state or imply that they practice in a partnership or other organization only when that is the fact.

Comment:
A firm may be designated by the names of all or some of its members, by the names of deceased members where there has been a continuing succession in the firm's identity or by a trade name such as the "ABC Legal Clinic." Although the United States Supreme Court has held that legislation may prohibit the use of trade names in professional practice, use of such names in law practice is acceptable so long as it is not misleading. If a private firm uses a trade name that includes a geographical name such as "Springfield Legal Clinic," an express disclaimer that it is a public legal aid agency may be required to avoid a misleading implication. It may be observed that any firm name including the name of a deceased partner is, strictly speaking, a trade name. The use of such names to designate law firms has proven a useful means of identification. However, it is misleading to use the name of a lawyer not associated with the firm or a predecessor of the firm.
With regard to paragraph (d), lawyers sharing office facilities, but who are not in fact partners, may not denominate themselves as, for example, "Smith and Jones," for that title suggests partnership in the practice of law.
4-7.6 Lawyer referral services.
(a) A lawyer shall not accept referrals from a lawyer referral service unless the service:
(1) Engages in no communication with the public and in no direct contact with prospective clients in a manner that would violate the Rules of Professional Conduct if the communication or contact were made by the lawyer;
(2) Receives no fee or charge that constitutes a division or sharing of fees, unless the service is a not-for-profit service approved by The Florida Bar pursuant to chapter 8 of these rules;
(3) Refers clients only to persons lawfully permitted to practice law in Florida when the services to be rendered constitute the practice of law in Florida.
(4) Requires the lawyer to waive confidentiality for the purpose of enabling The Florida Bar to inform the service of the lawyer's grievance history and the status of each complaint against the lawyer in which there has been a finding of probable cause;
(5) Carries or requires each lawyer participating in the service to carry professional liability insurance in an amount not less than $100,000 per claim or occurrence;
(6) Furnishes The Florida Bar with the names of all lawyers participating in the service; and
(7) Neither represents nor implies to the public that the service is endorsed or approved by The Florida Bar, unless the service is operated by or has been expressly approved by The Florida Bar.
(b) A "lawyer referral service" is any person, group of persons, association, organization, or entity that receives a fee or *1076 charge for referring or causing the direct or indirect referral of a potential client to a lawyer drawn from a specific group or panel of lawyers.

Comment:
Every citizen of the state should have ready access to the legal system. A person's access to the legal system is enhanced by the assistance of a lawyer qualified to handle that person's legal needs. Many of the citizens of the state who are potential consumers of legal services encounter difficulty in identifying and locating lawyers who are willing and qualified to consult with them about their legal needs. Lawyer referral services can facilitate the identification and intelligent selection of lawyers qualified to render assistance. However, because a potential for abuse exists, the participation of lawyers in referral services must be regulated to ensure protection of the public.
It is in the public interest that a person seeking the assistance of counsel receive accurate information to select or be matched with counsel qualified to render the needed services. Therefore, a lawyer should not participate in a lawyer referral service that communicates misleading information to the public or that directly contacts prospective clients about available legal services in a manner that constitutes impermissible solicitation.
A person who avails himself of legal services is well served only if those services are rendered by a lawyer who exercises independent legal judgment. The division or sharing of a fee risks the creation of an obligation that impairs a lawyer's ability to exercise independent legal judgment. Therefore, the public interest usually compels the ethical prohibition against the division or sharing of fees and that ethical prohibition should likewise apply to the division or sharing of fees with a lawyer referral service. The prohibition does not extend to the lawyer's paying a pre-arranged, fixed-sum participation fee. Furthermore, the prohibition does not apply when the referring agency is a not-for-profit service operated by a bona fide state or local bar association under the supervision of and approved by The Florida Bar in order to ensure that such service fulfills the public-interest purposes of a lawyer referral service and to ensure that the risk of impairment of the lawyer's ability to exercise independent legal judgment is in that circumstance minimal.
It is in the public interest that a person receive legal services only from someone who is qualified to render them. Lawyers should strive to prevent harm resulting from the rendering of legal services by persons not legally qualified to do so. Therefore, a lawyer should not participate in a lawyer referral service that refers clients to persons not lawfully permitted to practice law in Florida when the services to be rendered constitute the practice of law in Florida.
A lawyer whose conduct is or has been the subject of disciplinary action by The Florida Bar should not be able to conceal that fact from prospective clients through the initial anonymity provided by a lawyer referral service. Therefore, a lawyer should participate in a lawyer referral service only if that service requires him to waive confidentiality for the purpose of permitting the service to obtain from The Florida Bar information about the lawyer's disciplinary record so that the service can take appropriate action.
The quasi-institutionalization of legal services by a lawyer referral service implies that the service has screened the qualifications and financial responsibility of its participating lawyers. That implication may be misleading and does not exist when a prospective client directly selects a lawyer at arm's length. Therefore, it is in the public interest that only lawyers who have established a certain amount of financial responsibility for professional liability participate in a lawyer referral service. Accordingly, a lawyer should participate in a lawyer referral service only if the service requires proof of that financial responsibility.
To enable The Florida Bar to fulfill its obligation to protect the public from unethical *1077 or other improper conduct by those who practice law in Florida, The Florida Bar must have available to it the identity of all lawyers participating in a lawyer referral service. Therefore, a lawyer should participate in a lawyer referral service only if the service furnishes The Florida Bar with the names of its participating lawyers.
4-8 Maintaining the integrity of the profession.
4-8.1 Bar admission and disciplinary matters. An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
(a) Knowingly make a false statement of material fact; or
(b) Fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this rule does not require disclosure of information otherwise protected by rule 4-1.6.

Comment:
The duty imposed by this rule extends to persons seeking admission to the bar as well as to lawyers. Hence, if a person makes a material false statement in connection with an application for admission, it may be the basis for subsequent disciplinary action if the person is admitted and in any event may be relevant in a subsequent admission application. The duty imposed by this rule applies to a lawyer's own admission or discipline as well as that of others. Thus, it is a separate professional offense for a lawyer to knowingly make a misrepresentation or omission in connection with a disciplinary investigation of the lawyer's own conduct. This rule also requires affirmative clarification of any misunderstanding on the part of the admissions or disciplinary authority of which the person involved becomes aware.
This rule is subject to the provisions of the fifth amendment of the United States Constitution and the corresponding provisions of Florida's Constitution. A person relying on such a provision in response to a question, however, should do so openly and not use the right of nondisclosure as a justification for failure to comply with this rule.
A lawyer representing an applicant for admission to the bar, or representing a lawyer who is the subject of a disciplinary inquiry or proceeding, is governed by the rules applicable to the client-lawyer relationship.
4-8.2 Judicial and legal officials.
(a) A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer, or public legal officer or of a candidate for election or appointment to judicial or legal office.
(b) A lawyer who is a candidate for judicial office shall comply with the applicable provisions of Florida's Code of Judicial Conduct.

Comment:
Assessments by lawyers are relied on in evaluating the professional or personal fitness of persons being considered for election or appointment to judicial office and to public legal offices, such as attorney general, prosecuting attorney and public defender. Expressing honest and candid opinions on such matters contributes to improving the administration of justice. Conversely, false statements by a lawyer can unfairly undermine public confidence in the administration of justice.
When a lawyer seeks judicial office, the lawyer should be bound by applicable limitations on political activity.
To maintain the fair and independent administration of justice, lawyers are encouraged to continue traditional efforts to defend judges and courts unjustly criticized.
4-8.3 Reporting professional misconduct.
(a) A lawyer having knowledge that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness, or fitness *1078 as a lawyer in other respects shall inform the appropriate professional authority.
(b) A lawyer having knowledge that a judge has committed a violation of applicable rules of judicial conduct that raises a substantial question as to the judge's fitness for office shall inform the appropriate authority.
(c) This rule does not require disclosure of information otherwise protected by rule 4-1.6.

Comment:
Self-regulation of the legal profession requires that members of the profession initiate disciplinary investigation when they know of a violation of the Rules of Professional Conduct. Lawyers have a similar obligation with respect to judicial misconduct. An apparently isolated violation may indicate a pattern of misconduct that only a disciplinary investigation can uncover. Reporting a violation is especially important where the victim is unlikely to discover the offense.
A report about misconduct is not required where it would involve violation of rule 4-1.6. However a lawyer should encourage a client to consent to disclosure where prosecution would not substantially prejudice the client's interests.
If a lawyer were obliged to report every violation of the rules, the failure to report any violation would itself be a professional offense. Such a requirement existed in many jurisdictions, but proved to be unenforceable. This rule limits the reporting obligation to those offenses that a self-regulating profession must vigorously endeavor to prevent. A measure of judgment is, therefore, required in complying with the provisions of this rule. The term "substantial" refers to the seriousness of the possible offense and not the quantum of evidence of which the lawyer is aware.
The duty to report professional misconduct does not apply to a lawyer retained to represent a lawyer whose professional conduct is in question. Such a situation is governed by the rules applicable to the client-lawyer relationship.
4-8.4 Misconduct. A lawyer shall not:
(a) Violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
(b) Commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
(c) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation;
(d) Engage in conduct that is prejudicial to the administration of justice;
(e) State or imply an ability to influence improperly a government agency or official; or
(f) Knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law.

Comment:
Many kinds of illegal conduct reflect adversely on fitness to practice law, such as offenses involving fraud and the offense of willful failure to file an income tax return. However, some kinds of offense carry no such implication. Traditionally, the distinction was drawn in terms of offenses involving "moral turpitude." That concept can be construed to include offenses concerning some matters of personal morality, such as adultery and comparable offenses, that have no specific connection to fitness for the practice of law. Although a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice. Offenses involving violence, dishonesty, or breach of trust or serious interference with the administration of justice are in that category. A pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation.
A lawyer may refuse to comply with an obligation imposed by law upon a good faith belief that no valid obligation exists. *1079 The provisions of rule 4-1.2(d) concerning a good faith challenge to the validity, scope, meaning or application of the law apply to challenges of legal regulation of the practice of law.
Lawyers holding public office assume legal responsibilities going beyond those of other citizens. A lawyer's abuse of public office can suggest an inability to fulfill the professional role of attorney. The same is true of abuse of positions of private trust such as trustee, executor, administrator, guardian, or agent and officer, director, or manager of a corporation or other organization.
4-8.5 Jurisdiction. A lawyer admitted to practice in this jurisdiction is subject to the disciplinary authority of this jurisdiction although engaged in practice elsewhere.

Comment:
In modern practice lawyers frequently act outside the territorial limits of the jurisdiction in which they are licensed to practice, either in another state or outside the United States. In doing so, they remain subject to the governing authority of the jurisdiction in which they are licensed to practice. If their activity in another jurisdiction is substantial and continuous, it may constitute practice of law in that jurisdiction. See rule 4-5.5.
If the Rules of Professional Conduct in the two (2) jurisdictions differ, principles of conflict of laws may apply. Similar problems can arise when a lawyer is licensed to practice in more than one jurisdiction.
Where the lawyer is licensed to practice law in two (2) jurisdictions which impose conflicting obligations, applicable rules of choice of law may govern the situation. A related problem arises with respect to practice before a federal tribunal where the general authority of the states to regulate the practice of law must be reconciled with such authority as federal tribunals may have to regulate practice before them.

Chapter 5

RULES REGULATING TRUST ACCOUNTS
5-1 Generally.
5-1.1 Trust accounts. Money or other property entrusted to an attorney for a specific purpose, including advances for costs and expenses, is held in trust and must be applied only to that purpose. Money and other property of clients coming into the hands of an attorney are not subject to counterclaim or setoff for attorney fees, and a refusal to account for and deliver over such property upon demand shall be deemed a conversion. This is not to preclude the retention of money or other property upon which the lawyer has a valid lien for services or to preclude the payment of agreed fees from the proceeds of transactions or collection. Controversies as to the amount of fees are not grounds for disciplinary proceedings unless the amount demanded is clearly excessive, extortionate, or fraudulent. In a controversy alleging a clearly excessive, extortionate, or fraudulent fee, announced willingness of an attorney to submit a dispute as to the amount of a fee to a competent tribunal for determination may be considered in any determination as to intent or in mitigation of discipline; provided, such willingness shall not preclude admission of any other relevant admissible evidence relating to such controversy, including evidence as to the withholding of funds or property of the client, or to other injury to the client occasioned by such controversy.
(a) Trust accounts required Any bank or savings and loan association account maintained by a member of The Florida Bar to comply with rule 4-1.5, Rules of Professional Conduct, is and shall be clearly labeled and designated as a trust account. Any safe deposit box used in connection with the practice of law in Florida maintained by a member of The Florida Bar to comply with rule 4-1.15 shall be located in this state unless the client otherwise consents in writing. A member of The Florida Bar shall advise any institution in which such deposit box is located that it may include property of clients.
(b) Trust accounts as official records. A member of The Florida Bar shall preserve or cause to be preserved the records of all bank and savings and loan association *1080 accounts or other records pertaining to the funds or property of a client maintained in compliance with rule 4-1.5 for a period of not less than six (6) years subsequent to the final conclusion of the representation of a client relative to such funds or property, whichever shall last occur. Such records shall include checkbooks, cancelled checks, check stubs, vouchers, ledgers and journals, closing statements, accountings or other statements of disbursements rendered to clients or other parties with regard to trust funds, or similar equivalent records clearly and expressly reflecting the date, amount, source, and reason for all receipts, withdrawals, deliveries, and disbursements of the funds or property of a client. Such records shall be kept pursuant to these rules as a specific prerequisite to the right to receive, deliver and disburse funds or property of a client and to have a public aspect relating to the protection of clients and to fitness of a member of The Florida Bar to practice law. In any instance of an alleged violation by a member of The Florida Bar of this rule or of any of the Rules of Professional Conduct, such records insofar as they may relate in any way to the transaction, occurrence, or client in question shall be produced by the members of The Florida Bar for inspection, audit, and copying by a designated representative of The Florida Bar upon the direction of this Court, a grievance committee, the board of governors if acting pursuant to rule 3-7.4(b), or a referee. Such records or copies thereof shall be admissible in evidence in any proceeding under this rule; provided notice of such intended use shall be given to any client involved, if practicable, unless such client is already aware of such intended use, and upon good cause shown by such client the admission of the same shall be under such conditions as shall be reasonably calculated thereafter to protect the confidences of such client in the event that the proceedings otherwise become public records. Permissible means of protection shall not prejudice the respondent and may include but are not limited to excision, in camera production, retention in sealed envelopes, or similar devices. Failure to maintain such records or to produce them upon such direction shall constitute ground for disciplinary action under this rule without regard to any other matter. The cost of any audit or investigation necessitated by such failure may be taxed against a respondent.
(c) Trust accounting. Minimum trust accounting records shall be maintained and minimum trust accounting procedures must be followed by all attorneys practicing in Florida who receive or disburse trust money or property.
(d) Interest-bearing trust accounts. A member of The Florida Bar who elects to create or maintain an interest-bearing trust account for client's funds which are nominal in amount or to be held for a short period of time for the benefit of The Florida Bar Foundation shall comply with the following provisions:
(1) Eligible institutions. An interest-bearing trust account may be established with any bank or savings and loan association authorized by federal or state law to do business in Florida and insured by the Federal Deposit Insurance Corporation or the Federal Savings and Loan Insurance Corporation. Funds in each interest-bearing trust account shall be subject to withdrawal upon request and without delay.
(2) Interest rates. The rate of interest payable on any interest-bearing trust account shall not be less than the rate paid by the depository institution to regular, nonattorney depositors. Higher rates offered by the institution to customers whose deposits exceed certain time or quantity minima, such as those offered in the form of certificates of deposit, may be obtained by a lawyer or law firm on some or all of deposited funds so long as there is no impairment of the right to withdraw or transfer principal immediately.
(3) Remittance instructions. Lawyers or law firms electing to deposit client funds in a trust savings account shall direct the depository institution:
*1081 a. Quarterly remittance. To remit interest or dividends, as the case may be, on the average monthly balance in the account or as otherwise computed in accordance with an institution's standard accounting practice, at least quarterly, to The Florida Bar Foundation, Inc.;
b. Remit to bar foundation. To transmit with each remittance to the foundation a statement showing the name of the lawyer or law firm for whom the remittance is sent and the rate of interest applied; and
c. Report to law firm. To transmit to the depositing lawyer or law firm at the same time a report showing the amount paid to the foundation, the rate of interest applied, and the average account balance of the period for which the report is made.
(e) Unidentifiable trust fund accumulations and trust funds held for missing owners. When an attorney's trust account contains an unidentifiable accumulation of trust funds or property, or trust funds or property held for missing owners, such funds or property shall be so designated. Diligent search and inquiry shall then be made by the attorney to determine the beneficial owner of any unidentifiable accumulation or the address of any missing owner. If the beneficial owner of a unidentified accumulation is determined, the funds shall be properly identified as his or her trust property. If a missing beneficial owner is located, the trust funds or property shall be paid over or delivered to the beneficial owner if he or she is then entitled to receive the same. Trust funds and property which remain unidentifiable and funds or property which are held for missing owners after being designated as such shall, after diligent search and inquiry fails to identify the beneficial owner or owner's address, be disposed of as provided in chapter 717, Florida Statutes.
(f) A lawyer generally may not use, endanger, or encumber money held in trust for a client for purposes of carrying out the business of another client without the permission of the owner given after full disclosure of the circumstances. However, certain categories of trust account deposits are considered to carry a limited and acceptable risk of failure so that disbursements of trust account funds may be made in reliance on such deposits without disclosure to and permission of clients owning trust account funds subject to possibly being affected. Except for disbursements based upon any of the six (6) categories of limited-risk uncollected deposits enumerated below, a lawyer may not disburse funds held for a client or on behalf of that client unless the funds held for that client are collected funds. For purposes of this provision, "collected funds" means funds deposited, finally settled, and credited to the lawyer's trust account. Notwithstanding that a deposit made by a lawyer to his or her trust account has not been finally settled and credited to the account, the lawyer may disburse funds from his or her trust account in reliance on such deposit under any of the following circumstances:
(1) When the deposit is made by certified check or cashier's check.
(2) When the deposit is made by a check or draft representing loan proceeds issued by a federally or state-chartered bank, savings bank, savings and loan association, credit union, or other duly licensed or chartered institutional lender.
(3) When the deposit is made by a bank check, official check, treasurer's check, money order, or other such instrument issued by a bank, savings and loan association, or credit union within the State of Florida when the lawyer has reasonable and prudent grounds to believe the instrument will clear and constitute collected funds in the lawyer's trust account within a reasonable period of time.
(4) When the deposit is made by a check drawn on the trust account of a lawyer licensed to practice in the State of Florida or on the escrow or trust account of a real estate broker licensed under chapter 475 of the Florida Statutes when the lawyer has a reasonable and prudent belief that the deposit will clear and constitute collected funds in his or her trust account within a reasonable period of time.
*1082 (5) When the deposit is made by a check issued by the United States government, the State of Florida, or any agency or political subdivision of the State of Florida.
(6) When the deposit is made by a check or draft issued by an insurance company authorized to do business in the State of Florida and the lawyer has a reasonable and prudent belief that the instrument will clear and constitute collected funds in his or her trust account within a reasonable period of time.
A lawyer's disbursement of funds from his or her trust account in reliance on deposits that are not yet collected funds in any circumstances other than those set forth above, when it results in funds of other clients being used, endangered, or encumbered without authorization, may be grounds for a finding of professional misconduct. In any event, such a disbursement is at the risk of the lawyer making the disbursement. If any of the deposits fail, the lawyer upon obtaining knowledge of the failure must immediately act to protect the property of his or her other clients. However, if the lawyer accepting any such check personally pays the amount of any failed deposit or secures or arranges payment from sources available to him or her other than trust account funds of other clients, the lawyer shall not be considered guilty of professional misconduct.
5-1.2 Trust accounting records and procedures.
(a) Applicability. The provisions of these rules apply to all trust funds received or disbursed by members of The Florida Bar in the course of their professional practice of law within the State of Florida except special trust funds received or disbursed by attorney as guardian, personal representative, receiver, or in a similar capacity such as trustee under a specific trust document where the trust funds are maintained in a segregated special trust account and not the general trust account and wherein this special trust position has been created, approved, or sanctioned by law or an order of a court which has authority or duty to issue orders pertaining to maintenance of such special trust account.
(b) Minimum trust accounting records. The minimum trust accounting records which shall be maintained are:
(1) A separate bank account or accounts and, if utilized, a separate savings and loan association account or accounts. Such accounts shall be located in the State of Florida unless the client otherwise directs, in writing, or unless the financial institution in which the funds are maintained voluntarily submits to the jurisdiction of the Supreme Court of Florida. Such voluntary submission to the jurisdiction of the Supreme Court of Florida shall be on the form prescribed by the board of governors of The Florida Bar. The account or accounts shall be in the name of the lawyer or law firm and clearly labeled and designated as a "trust account."
(2) Original or duplicate deposit slips and, in the case of currency or coin, an additional cash receipts book, clearly identifying:
a. The date and source of all trust funds received; and
b. The client or matter for which the funds were received.
(3) Original canceled checks, all of which must be numbered consecutively.
(4) Other documentary support for all disbursements and transfers from the trust account.
(5) A separate cash receipts and disbursements journal, including columns for receipts, disbursements, transfers, and the account balance, and containing at least:
a. The identification of the client or matter for which the funds were received, disbursed, or transferred;
b. The date on which all trust funds were received, disbursed, or transferred;
c. The check number for all disbursements; and
d. The reason for which all trust funds were received, disbursed, or transferred.
(6) A separate file or ledger with an individual card or page for each client or matter, *1083 showing all individual receipts, disbursements, or transfers and any unexpended balance, and containing:
a. The identification of the client or matter for which trust funds were received, disbursed, or transferred;
b. The date on which all trust funds were received, disbursed, or transferred;
c. The check number for all disbursements; and
d. The reason for which all trust funds were received, disbursed, or transferred.
(7) All bank or savings and loan association statements for all trust accounts.
(c) Minimum trust accounting procedures. The minimum trust accounting procedures which shall be followed by all attorneys practicing in Florida who receive or disburse trust money or property are:
(1) The lawyer shall cause to be made monthly:
a. Reconciliations of all trust bank or savings and loan association accounts, disclosing the balance per bank, deposits in transit, outstanding checks identified by date and check number, and any other items necessary to reconcile the balance per bank with the balance per the check-book and the cash receipts and disbursements journal; and
b. A comparison between the total of the reconciled balances of all trust accounts and the total of the trust ledger cards or pages, together with specific descriptions of any differences between the two (2) totals and reasons therefor.
(2) At least annually, a detailed listing identifying the balance of the unexpended trust money held for each client or matter.
(3) The above reconciliations, comparisons, and listing shall be retained for at least six (6) years.
(4) The lawyer or law firm shall authorize and request any bank or savings and loan association where he or she is a signatory on a trust account to notify Staff Counsel, The Florida Bar, Tallahassee, Florida 32301, in the event any trust check is returned due to insufficient funds or uncollected funds, absent bank error.
(5) The lawyer shall file with The Florida Bar between June 1 and August 15 of each year a trust accounting certificate showing compliance with these rules on a form approved by the board of governors.
(d) Audits. The following shall be cause for The Florida Bar to order an audit of a trust account:
(1) Failure to file the trust account certificate required by rule 5-1.2(c)(5);
(2) A trust account check is returned for insufficient funds or for uncollected funds, absent bank error;
(3) A petition for creditor relief is filed on behalf of an attorney;
(4) Felony charges are filed against an attorney;
(5) An attorney is adjudged insane or mentally incompetent or is hospitalized under the Florida Mental Health Act;
(6) A claim against the attorney is filed with the Clients' Security Fund;
(7) When requested by a grievance committee or the board of governors; or
(8) Upon court order.
(e) Cost of audit. Audits conducted in any of the circumstances enumerated in paragraph (d) above shall be at the cost of the attorney audited only when the audit reveals that the attorney was not in substantial compliance with the trust accounting requirements. It shall be the obligation of any attorney who is being audited to produce all records and papers concerning property and funds held in trust and to provide such explanations as may be required for the audit. Records of general accounts are not required to be produced except to verify that trust money has not been deposited thereto. If it has been determined that trust money has been deposited into a general account, all of the transactions pertaining to any firm account will be subject to audit.

*1084 Chapter 6

DESIGNATION AND CERTIFICATION PROGRAMS
6-1 Generally.
6-1.1 Composition of board. The board of certification and designation shall be composed of thirteen (13) members of The Florida Bar appointed by the president of The Florida Bar, with the advice and consent of the board of governors. Twelve (12) of the members shall hold office for three (3) years and until their successors are appointed. These twelve (12) members shall be appointed to staggered terms of office, and the initial appointees shall serve as follows: four (4) members shall serve until June 30 next following their appointment, four (4) members shall serve until the second June 30 following their appointment, and four (4) members shall serve until the third June 30 following their appointment. One of the twelve (12) members shall be designated by the president as chairman. The thirteenth member shall be the chairman of the Continuing Legal Education Committee of The Florida Bar. Any vacancy shall be filled in the manner provided for original appointments.
6-1.2 Public notice. The Florida Bar may cause a public notice to be promulgated where and when it deems necessary, including, for example, telephone directory yellow pages, in substantially the following form:

NOTICE

FOR THE GENERAL INFORMATION OF THE PUBLIC
ATTORNEYS INDICATING THEY ARE "BOARD CERTIFIED" HAVE BEEN IDENTIFIED BY THE FLORIDA BAR AS HAVING SPECIAL KNOWLEDGE, SKILLS, AND PROFICIENCY IN THEIR AREAS OF PRACTICE. "FLORIDA BAR DESIGNATED" ATTORNEYS HAVE MET MINIMUM EXPERIENCE AND EDUCATIONAL REQUIREMENTS UNDER THE FLORIDA DESIGNATION PLAN. "FLORIDA BAR MEMBERS" MAY LIST THEIR AREAS OF PRACTICE IN THE YELLOW PAGES WITHOUT MEETING ANY SPECIFIC CRITERIA.
ALL PERSONS ARE URGED TO MAKE THEIR OWN INDEPENDENT INVESTIGATION AND EVALUATION OF ANY ATTORNEY BEING CONSIDERED.
This notice published by The Florida Bar, Telephone A.C. 904/222-5286, Tallahassee, Florida XXXXX-XXXX.
6-1.3 Liability. The Florida Bar shall assume no liability to any persons whomsoever by reason of the adoption and implementation of the designation or certification plans.
6-1.4 Amendment. These rules may be amended in accordance with the procedures for amending the rules regulating The Florida Bar except as provided in rule 6-2.3(b).
6.2 Florida Designation Plan.
6-2.1 Administration.
(a) The board of certification and designation shall have the administrative responsibility arising under this chapter. Any member affected by an adverse decision of the board of certification and designation may appeal to the board of governors pursuant to rule 6-2.11.
(b) Responsibilities which have been delegated to the staff of The Florida Bar are listed in Schedule B.
(c) The board of certification and designation shall cooperate with and answer inquiries from the staff personnel pertaining to the plan and shall investigate and make recommendations to the board of governors concerning all questions relating to the plan, including the following:
(1) Approved education courses;
(2) Alternative education methods;
(3) Number of hours credit to be allowed for educational efforts;
(4) Educational standard for satisfactory completion of approved courses;
(5) Possible need for cooperation with colleges and universities;
(6) Additional areas of practice to be approved for designation;
*1085 (7) Possible modification or expansion of the plan;
(8) Adoption of additional standards pertaining to the plan;
(9) Amount of the application and renewal fees; and
(10) General administration of the plan.
(d) The Florida Bar shall maintain a list of all members who have filed applications for permission or applications for renewal, showing the date and disposition of each application acted upon.
(e) At least six (6) months before the date on which a member's permission to designate areas of practice expires, The Florida Bar shall give the member notice by regular mail advising the member of the date on which permission expires, the required qualifications for renewal of eligibility, and the procedure for renewal.
6-2.2 Designation of areas of practice.
A member may receive permission from The Florida Bar to publicly designate the areas in which he practices law if he has accumulated the experience and educational requirements set out in this plan.
6-2.3 Areas of permitted designation.
(a) A member in good standing of The Florida Bar may not designate an area of practice unless the area has been approved by the board of governors. The board of governors may approve a particular area of practice on its own motion or upon the request of any member if it finds that the area:
(1) Has not already been approved under a different description;
(2) Is a generally accepted area of practice; and
(3) Is described in dignified and ethically appropriate terms.
(b) The areas of practice which are approved are listed on Schedule A. Schedule A may be amended by the board of governors in accordance with procedures for amending chapter 2.
(c) If a member wishes to designate an area which has not been approved by the board of governors, he or she shall include in his or her application for permission a request that the area of practice be approved. The board of governors shall consider the request before it takes action on the member's application for permission.
6-2.4 Eligibility for permission to designate areas of practice.
(a) Except as provided in paragraphs (b), (c), and (d), a member in good standing of The Florida Bar may be eligible for permission to designate areas of practice if at the time he or she files an application: (1) he or she has been engaged in the practice of law for at least three (3) years and during the three (3) years preceding the application for permission has had substantial experience in each area of practice listed in the application; and (2) he or she has accumulated at least thirty (30) hours of approved continuing legal education in each area sought to be designated.
(b) If the board of certification and designation finds that a member who has not engaged in the practice of law in an area for three (3) years preceding the application but has had postgraduate education or concentrated experience in a particular area of practice and the experience is equal to or greater than the experience he or she would have gained in that area from three (3) years of practice, and he or she has accumulated the minimum amount of approved continuing legal education required under rule 6-2.4(a)(2), the board of certification and designation may waive the requirement of rule 6-2.4(a)(1) and permit him or her to designate that area.
(c) If the board of certification and designation finds that a member has had at least three (3) years substantial experience or postgraduate education in an area of practice and the experience or education is not unreasonably remote, but that due to extenuating circumstances the member has not had substantial experience in the area during the three (3) years preceding his or her application and the member has accumulated the minimum amount of approved continuing legal education required under rule 6-2.4(a)(2), the board of certification *1086 and designation may waive the requirement of rule 6-2.4(a)(1) and permit him or her to designate that area.
(d) A member applying for permission to designate "General Practice" who has not been a member in good standing of The Florida Bar for the three (3) years preceding the application but who has accumulated the minimum amount of approved continuing legal education required under rule 6-2.4(a)(2) may designate "General Practice."
(e) A member shall not be eligible to designate more than three (3) areas of practice at any one time.
6-2.5 Application for designation of areas of practice.
(a) A member who wishes to designate one or more areas of practice shall file with the board of certification and designation an application for permission on a form to be specified by the board of certification and designation. The application shall:
(1) List the area or areas the member wishes to designate;
(2) State facts sufficient to establish that the member is eligible to designate the areas listed;
(3) Require the applicant to list the continuing legal education the member has accumulated during the previous three (3) years;
(4) Require the applicant to submit certificates of reference from other lawyers who can attest to the applicant's substantial experience in each area sought to be designated; and
(5) Contain a statement that to enhance his or her proficiency the member will continue his or her legal education in the areas he or she wishes to designate through private study or continuing legal education programs approved by the court.
(b) When the application is filed, the member shall pay an application fee in an amount to be established by the board of governors not exceeding $50.00 per area sought to be designated.
6-2.6 Action on applications to designate areas of practice. The board of certification and designation shall promptly consider and act upon all applications for permission to designate areas of practice. If it finds that an applicant is eligible under rule 6-2.4 to designate one or more areas of practice, it shall issue a letter of permission authorizing the applicant to designate those areas. If it finds that an applicant is not eligible, it shall notify the applicant of its finding and reasons for it.
6-2.7 Manner of designation.
(a) A member having permission to designate areas of practice may do so by listing the areas in the manner and locations permitted under the Rules of Professional Conduct. Designations shall be made by naming the permitted areas of practice. (For example, a permitted designation might be "John J. Jones, Admiralty and Trial Practice â General.") Only the following description is permitted: "Qualified in ______ under the Florida Designation Plan."
(b) No law firm may designate an area of practice for the firm, but membership in a firm does not impair an individual member's eligibility to designate areas of practice in accordance with this chapter.
6-2.8 Effect of designation rule. Nothing in this chapter precludes any member from practicing in any area of practice regardless of whether he or she has designated it or any other area under this chapter.
6-2.9 Duration and renewal.
(a) A member's right to designate one or more areas of practice shall continue for a term of three (3) years from the date of the letter of permission issued under rule 6-2.6 or paragraph (d) of this rule.
(b) A member shall be eligible to renew his or her right to designate an area of practice only if during the preceding three-year period he or she has had substantial experience during the three (3) years preceding the renewal application and he or she has devoted at least thirty (30) hours to approved continuing legal education in each *1087 area for which renewal is sought. For good cause shown, the board of certification and designation may waive all or any part of such requirement.
(c) A member who wishes to renew his or her right to designate areas of practice shall file an application for renewal with the board of certification and designation at least thirty (30) days before the permission expires. The application shall be on a form specified by the board of certification and designation and shall state sufficient facts to establish that the member is eligible to renew. When the application is filed, the member shall pay a renewal fee in an amount to be established by the board of governors not exceeding $50.00 per area sought to be designated. The thirty-day notice period may be waived by the board of certification and designation for good cause shown.
(d) The board of certification and designation shall promptly consider and act upon all applications for renewal in the same manner as provided in rule 6-2.6
6-2.10 Continuing legal education.
(a) Continuing legal education courses which are designed to enhance the proficiency of a designated attorney in a particular area of practice shall qualify as approved courses hereunder. The board of certification and designation shall determine the number of hours credit to be given for each such course and the designated area entitled to credit for each course. The board of governors may assess a fee to review and approve courses under this plan.
(b) On the application of any interested person, the board of certification and designation shall make a determination of the qualification of, and credit to be allowed for, alternative courses or methods of legal education.
(c) From time to time the board of certification and designation shall publish current lists of approved educational alternatives.
6-2.11 Right of review. Any member adversely affected by an administrative ruling concerning this plan may petition the board of governors for relief. Any denial or relief by the board of governors can be reviewed by the Court on the member's petition within thirty (30) days of notice of the board of governors action.

Schedule A
Administrative and Governmental Law
Admiralty
Antitrust and Trade Regulation
Appellate Practice
Aviation Law
Bankruptcy
Collections
Corporation and Business Law
Criminal Law
Entertainment and Sports Law
Environmental Law
General Practice
Immigration and Naturalization
International Law
Labor and Employment Law
Marital and Family Law
Patent, Trademark and Copyright
Real Property Law
Securities
Taxation
Trial Practice â General
Trial Practice â Commercial
Trial Practice â Personal Injury and Wrongful Death
Wills, Estates and Estate Planning
Workers' Compensation

Schedule B
1. Action under rule 6-2.6 on applications for permission filed by individual members provided the applications do not involve requests for waivers under rule 6-2.4(b) or (c).
2. Action under rule 6-2.9(c) on applications for renewal filed by individual members.
*1088 3. Issuance of letters of permission under rule 6-2.6 and rule 6-2.9(c).
4. Timely issuance and publication of all notices required under this chapter.
5. Maintenance of list of members required by rule 6-2.1(d).
6. Maintenance and publication of lists of educational courses approved by the board of certification and designation.
6-3 Florida Certification Plan.
6-3.1 Administration. The board of certification and designation shall have the authority and responsibility to administer the program for regulation of certification including:
(a) Recommending to the board of governors areas in which certificates may be granted and providing procedures by which such areas may be determined, refined or eliminated;
(b) Recommending to the board of governors minimum, reasonable and nondiscriminatory standards concerning education, experience, proficiency, and other relevant matters for granting certificates in areas of certification;
(c) Providing procedures for the investigation and testing of the qualifications of applicants and certificate holders and to award certificates;
(d) Encouraging law schools, the Continuing Legal Education Committee of The Florida Bar, voluntary bar associations and other continuing legal education entities to develop and maintain a program of continuing legal education to meet the standards described by the plan;
(e) Cooperating with other agencies of The Florida Bar in establishing and enforcing standards of professional conduct necessary for the recognition and regulation of certification;
(f) Cooperating with the Standing Committee on Specialization of the American Bar Association and with the agencies in other states engaged in the regulation of legal specialization;
(g) Reporting as required, but at least annually, to the board of governors on the status and conditions of the plan;
(h) Determining standards, rules and regulations to implement these rules in accordance with the minimum standards prescribed by the Supreme Court of Florida; and
(i) Delegating to The Florida Bar staff any of the administrative responsibilities of the board of certification and designation providing said board retains responsibility for staff decisions.
6-3.2 Certification committees. For each certification area approved by the Supreme Court of Florida, a seven-member committee, bearing the name of the area, shall be appointed by the president of The Florida Bar, with the advice and consent of the board of governors. Initial committee appointees shall be eminent attorneys in each field, shall be members in good standing of The Florida Bar, shall have been admitted to The Florida Bar no less than ten (10) years, and must meet such other requirements as may in the future be promulgated by the board of certification and designation. Initial committee appointees shall be granted certificates by reason of such appointment. The committee members shall hold office for three (3) years and until their successors are appointed. The committee members shall be appointed to staggered terms of office, and the initial appointees shall serve as follows: two (2) members shall serve until June 30 next following their appointment, two (2) members shall serve until the second June 30 following their appointment, and three (3) members shall serve until the third June 30 following their appointment. Subsequent appointees must be certified in the area at the time of appointment, must be members in good standing of The Florida Bar, and must meet such other requirements as may be promulgated by the board of certification and designation.
6-3.3 Jurisdiction of certification committees. Each certification committee shall be responsible for:
*1089 (a) Proposing criteria for the issuance or renewal of a certificate, which may include:
(1) Experience;
(2) References;
(3) Continuing legal education;
(4) Examination, either oral or written or both; and
(5) Whether certificates may be issued without examination and on what basis.
(b) Reviewing applications for certificates.
(c) Reviewing and establishing testing procedures as may be deemed necessary for certification or recertification.
(d) Recommending to the board of certification and designation certificates be issued to those individuals meeting both the minimum standards imposed by this plan and the particular standards for the area for which certification is sought.
6-3.4 Limitations on the powers of the board of governors, the board of certification and designation, and the certification committees. The following limitations are established:
(a) No standard shall be approved which shall, in any way, limit the right of a certificate holder to practice law in all areas.
(b) No lawyer shall be required to be certified before he or she can practice law in any particular area.
(c) All requirements for and all benefits to be derived from certification are individual and may not be fulfilled by or attributed to a law firm of which the certified lawyer may be a member.
(d) Participation in the plan shall be on a voluntary basis.
(e) The limit on the number of areas in which a lawyer may be certified shall be determined by such practical limits as are imposed by the requirements of "substantial involvement" and such other standards as may be established by the board of certification and designation.
(f) No rules or standards shall be adopted in contravention of these Rules Regulating The Florida Bar.
6-3.5 Standards for certification.
(a) The minimum standards for certification are prescribed below. Each area of certification established under this chapter may contain higher or additional standards if approved by the Supreme Court of Florida.
(b) A member in good standing of The Florida Bar who is currently engaged in the full-time practice of law and who meets the area's standards may apply for certification. From the date the application is filed to the date the certificate is issued the applicant must continue to practice law full-time and remain a member in good standing of The Florida Bar. The certificate issued by the board of designation and certification shall state that the lawyer is a "Board Certified (area of certification) Lawyer."
(c) Minimum requirements for qualifying for certification by examination are:
(1) A minimum of five (5) years in the practice of law on a full-time basis. The "practice of law" means full-time legal work performed primarily for purposes of rendering legal advice or representation. Service as a judge of any court of record shall be deemed to constitute the practice of law. Employment by the government of the United States, any state (including subdivisions of the state such as counties or municipalities), or the District of Columbia, and employment by a public or private corporation or other business shall be deemed to constitute the practice of law if the individual was required as a condition of employment to be a member of the bar of any state or the District of Columbia.
(2) A satisfactory showing of substantial involvement in the particular area for which certification is sought during three (3) of the last five (5) years preceding the application for certification.
(3) A satisfactory showing of such continuing legal education in a particular field of law for which certification is sought as set by that area's standards, but in no event less than the minimum required under the Florida Designation Plan.
*1090 (4) Passing a written and/or oral examination applied uniformly to all applicants to demonstrate sufficient knowledge, skills, and proficiency in the area for which certification is sought and in the various areas relating to such field. The award of an LL.M. degree from an approved law school in the area for which certification is sought within eight (8) years of application may substitute as the written examination required in this paragraph if the area's standards so provide.
(5) Current certification by an approved organization in the area for which certification is sought within five (5) years of filing an application may, at the option of the certification committee, substitute as partial equivalent credit, including the written examination required in paragraph (c)(4). Approval will be by the board of certification and designation following a positive or negative recommendation from the certification committee.
(d) When certification without examination is available in an area, the minimum requirements for such certification are:
(1) A minimum of twenty (20) years in the practice on a full-time basis.
(2) A satisfactory showing of competence and substantial involvement in the particular area for which certification is sought during five (5) of the last ten (10) years, including the year immediately preceding the application for certification. Substantial involvement in the practice of law for the one year immediately preceding the application may be waived for good cause shown.
(3) A satisfactory showing of such continuing legal education in a particular field of law for which certification is sought as set by that area's standards, but in no event less than the minimum required under the Florida Designation Plan.
(4) Certification without examination may be granted only to individuals who apply within two (2) years after the date on which the particular area is approved by the Supreme Court of Florida.
(5) Payment of any fees required by the plan.
6-3.6 Recertification.
(a) No certificate shall last for a period longer than five (5) years.
(b) Each area of certification established under this chapter shall contain requirements and safeguards for the continued proficiency of any certificate holder. The following minimum standards shall apply:
(1) A satisfactory showing of substantial involvement during the period of certification in the particular area for which certification was granted.
(2) A satisfactory showing of such continuing legal education in the area for which certification is granted, but in no event less than the minimum required under the Florida Designation Plan.
(3) The payment of any fees prescribed by the plan.
(c) Any applicant for recertification who has either failed to meet the standards for recertification or has allowed the certificate to lapse must meet all the requirements for initial certification as set out in the area's standards.
6-3.7 Revocation of certification.
(a) A certificate may be revoked by the board of certification and designation if the program for certification in that area is terminated or it is determined after hearing on appropriate notice that:
(1) The certificate was issued to a lawyer who was not eligible to receive a certificate or who made any false representation or misstatement of material fact to the certification committee or the board of certification and designation.
(2) The certificate holder failed to abide by all rules and regulations governing the program promulgated by the board of governors or the board of certification and designation as amended from time to time, including any requirement or safeguard for continued proficiency.
(3) The certificate holder failed to pay any fee established by the plan.
*1091 (4) The certificate holder no longer meets the qualifications established by the plan or the board of certification and designation.
(b) A certificate may be revoked by the board of governors by reason of disciplinary action taken pursuant to the Rules of Discipline or the Rules of Professional Conduct of The Florida Bar.
6-3.8 Manner of certification.
(a) A member having received a certificate in an area may list the area on his letterhead, business cards, office door, in the yellow pages of the telephone directory, in approved law lists, and by such other means permitted by the Rules of Professional Conduct. The listing shall be made by stating "Board Certified (area of certification) Lawyer."
(b) No law firm may list an area of certification for the firm, but membership in the firm does not impair an individual's eligibility to list areas of certification in accordance with this chapter. Except for the firm listing in the telephone directory, a law firm may show next to the names of any firm members their certification area(s).
6-3.9 Right of appeal. A lawyer who is refused certification, recertification, or whose certificate is revoked by the board of certification and designation, or any person who is aggrieved by a ruling or determination of that board shall have the right to appeal the ruling to the board of governors under such rules and regulations as it may prescribe. Exhaustion of this right of appeal shall be a condition precedent to judicial review by the Supreme Court of Florida.
6-3.10 Fees. The fees for the operation of this plan are:
(a) Filing fee ($200). This is for the filing and review of an individual's certification application. This fee is not refundable.
(b) Examination/certification fee ($150). This fee must be paid before the taking of the examination for certification or before an applicant who otherwise qualifies receives his or her certificate. This fee is not refundable.
(c) Annual fee (75). This fee is assessed against each plan participant.
(d) Course approval fee ($125). This fee is assessed against sponsors who want their course approved under the plan.
(e) Individual credit approval ($5). This fee is assessed against applicants or plan participants to cover administrative costs of processing a credit request where a sponsor refuses to cooperate with approval under the plan.
6-3.11 Confidentiality. All matters including but not limited to applications, references, tests and test scores, files, reports, investigations, hearings, findings, and recommendations shall be confidential so far as consistent with the effective administration of this plan, fairness to the applicant, and due process of law.
6-4 Standards for certification of a board certified civil trial lawyer.
6-4.1 Generally. A lawyer who is a member in good standing of The Florida Bar and who meets the standards prescribed below may be issued an appropriate certificate identifying the lawyer as a "Board Certified Civil Trial Lawyer." The purpose of the standards is to identify those lawyers who practice civil trial law and have the special knowledge, skills, and proficiency to be properly identified to the public as certified civil trial lawyers.
6-4.2 Definitions.
(a) "Civil trial law" is the practice of law dealing with litigation of civil controversies in all areas of substantive law before state courts, federal courts, administrative agencies, and arbitrators. In addition to actual pretrial and trial process, "civil trial law" includes evaluating, handling, and resolving civil controversies prior to the initiation of suit.
(b) The "practice of law" for this area is defined as set out at rule 6-3.5(c)(1). Practice of law which otherwise satisfies these requirements but which is on a part-time basis will satisfy the requirement if the *1092 balance of the applicant's activity is spent as a teacher of civil trial subjects in an accredited law school.
6-4.3 Minimum standards.
(a) Substantial involvement. To become certified as a civil trial lawyer, a lawyer must demonstrate substantial involvement in civil trial law. Substantial involvement shall include:
(1) At least five (5) years of actual practice of law of which at least thirty (30) percent has been spent in active participation in civil trial law. At least three (3) years of this practice shall be immediately preceding application or, during those three (3) years, the applicant may have served as a judge of a court of general civil jurisdiction adjudicating civil trial matters.
(2) The trial of a minimum of fifteen (15) contested civil cases in courts of general jurisdiction (excluding dissolution of marriage cases) during his or her practice. Of these fifteen (15) cases several shall have been jury cases, several shall have been conducted by the applicant as lead counsel and several shall have been submitted to the trier of fact. At least five (5) of the fifteen (15) cases, including some jury cases and some cases conducted by the applicant as lead counsel, shall have been tried during the three (3) years immediately preceding application. If the applicant does not meet these criteria, as contained in the immediately preceding sentence, the civil trial certification committee may review the applicant's trial experience to determine if the applicant has demonstrated special competence as a civil trial lawyer. In all events, in the three (3) years immediately preceding application, the applicant must have conducted at least three (3) trials, including at least one jury trial and one trial as lead counsel. On good cause shown, for satisfaction in part of the requirement of the fifteen (15) contested civil cases the civil trial certification committee may consider involvement in protracted litigation.
(3) Within three (3) years immediately preceding application the applicant shall have substantial involvement in contested civil matters sufficient to demonstrate special competence as a civil trial lawyer. Substantial involvement includes investigation, evaluation, pleading, discovery, taking of testimony, presentation of evidence and argument of jury or nonjury cases. For good cause shown, the civil trial certification committee may waive two (2) of the three (3) years substantial involvement for individuals who have served as judges of courts of general jurisdiction adjudicating civil trial matters. In no event may the year immediately preceding application be waived.
(b) References. The applicant shall select and submit names and addresses of six (6) lawyers, not associates or partners, as references to attest to the applicant's involvement in civil trial practice. Such lawyers themselves shall be substantially involved in civil trial law and shall be familiar with the applicant's practice. No less than one shall be a judge of a court of general jurisdiction in the State of Florida before whom the applicant has appeared as an advocate in the two (2) years immediately preceding the application. In addition, the civil trial certification committee may, at its option, send reference forms to other attorneys and judges.
(c) Education. The applicant shall make a satisfactory showing that within the three (3) years immediately preceding application he or she has minimum approved postgraduate educational experience in the broad field of civil trial law. Such experience shall be at programs approved by The Florida Bar and may include such activity as:
(1) Teaching a course in civil trial law;
(2) Completion of a course in civil trial law;
(3) Participation as a panelist or speaker in a symposium or similar program in civil trial law;
(4) Attendance at a lecture series or similar program concerning civil trial law, sponsored by a qualified educational institution or bar group;
*1093 (5) Authorship of a book or article on civil trial law, published in a professional publication or journal; or
(6) Such other educational experience as the civil trial certification committee shall approve.
For applications filed in the year 1984 and thereafter there shall be a minimum of fifty (50) hours.
(d) Examination. The applicant must pass an examination applied uniformly to all applicants, to demonstrate sufficient knowledge, proficiency and experience in civil trial law to justify the representation of special competence to the legal profession and to the public.
6-4.4 Recertification. Recertification shall be under the following standards:
(a) Continuous and substantial involvement in the practice of law, of which thirty (30) percent has been spent in active participation in civil trial law throughout the period since the last date of certification. The demonstration of substantial involvement shall be made in accordance with the standards set forth in rule 6-4.3(a)(3).
(b) The trial of a minimum of three (3) contested civil cases in courts of general jurisdiction (excluding dissolution of marriage cases) during the period since the last date of certification. Of these three (3) cases at least one shall have been a jury case and at least two (2) shall have been conducted by the applicant as lead counsel. On good cause shown, for satisfaction in part of the requirement of the three (3) contested civil cases, the civil trial certification committee may consider involvement in protracted litigation.
(c) The applicant must submit references for knowledge and experience in accordance with rule 6-4.3(b). The references submitted must be able to attest to the applicant's practice and involvement in civil trial practice throughout the period since the last date of certification.
(d) The applicant must demonstrate he or she has completed at least fifty (50) hours of approved continuing legal education since the last date of certification. This requirement shall be satisfied by the applicant's participation in postgraduate education approved by The Florida Bar pursuant to rule 6-4.3(c)(1) through (6).
(e) On special application, for good cause shown, the civil trial certification committee may waive compliance with the substantial involvement criteria provided all other requirements of this rule have been complied with.
6-5 Standards for certification of a board certified tax lawyer.
6-5.1 Generally. A lawyer who is a member in good standing of The Florida Bar and who meets the standards prescribed below may be issued an appropriate certificate identifying the lawyer as a "Board Certified Tax Lawyer." The purpose of the standards is to identify those lawyers who practice in the area of taxation and have the special knowledge, skills, and proficiency to be properly identified to the public as certified tax lawyers.
6-5.2 Definitions.
(a) "Tax law" means legal issues involving federal, state or local income, estate, gift, ad valorem, excise, or other taxes.
(b) The "practice of law" for this area is defined as set out at rule 6-3.5(c)(1) of the rules governing the Florida Certification Plan. Notwithstanding anything in the definition to the contrary, legal work done primarily for the purpose other than legal advice or representation (including, but not limited to, work related to the sale of insurance or retirement plan or work in connection with the practice of a profession other than the law) shall not be treated as the practice of law.
6-5.3 Minimum standards.
(a) Minimum period of practice. Every applicant shall have been engaged in the practice of law in the United States, or engaged in the practice of United States law while in a foreign country, and shall have been a member in good standing of the bar of any state of the United States or the District of Columbia for a period of five (5) years as of the date of application.
*1094 (1) The years of practice of law need not be consecutive.
(2) Notwithstanding the definition of "practice of law" in rule 6-5.2(b) receipt of an LL.M. degree in taxation (or such other related fields approved by the board of certification and designation and the tax certification committee) from an approved law school shall be deemed to constitute one year of the practice of law for purposes of the five-year practice requirement (but not the five-year bar membership requirement) under this section. Provided, however, an applicant may not receive credit for more than one year of practice for any twelve-month period under this section; accordingly, for example, an applicant who, while being engaged in the practice of law, receives an LL.M. degree by attending night classes, would not receive credit for the practice of law requirement by virtue of his or her having received the LL.M. degree.
(b) Substantial involvement. Every applicant must demonstrate substantial involvement in the practice of tax law during the three (3) years immediately preceding the date of application. Upon an applicant's request and the recommendation of the tax certification committee, the board of certification and designation may waive the requirement that the three (3) years be "immediately preceding" the date of application if the board of certification and designation determines the waiver is warranted by special and compelling circumstances. Substantial involvement means the applicant has devoted forty (40) percent or more of his or her practice to matters in which issues of tax law are significant factors and in which he or she had substantial and direct participation in those tax issues. An applicant must furnish information concerning the frequency of his or her work and the nature of the issues involved. For the purposes of this section the "practice of law" shall be as defined in rule 6-5.2(b) except that it shall also include time devoted to lecturing and/or authoring books or articles on tax law if the applicant was engaged in the practice of law during such period. Demonstration of compliance with this requirement shall be made initially through a form of questionnaire approved by the tax certification committee but written or oral supplementation may be required.
(c) References for knowledge and experience. Every applicant shall submit the names and addresses of five (5) other attorneys who are familiar with his or her practice, not including attorneys who currently practice in the applicant's law firm, who can attest to the applicant's reputation for involvement in the field of tax law. The board of certification and designation or the tax certification committee may authorize references from persons other than attorneys in such cases as they deem appropriate. The board of certification and designation and the tax certification committee may also make such additional inquiries as they deem appropriate.
(d) Education. Every applicant must demonstrate that during the three-year period immediately preceding the date of his or her application, he or she has met the continuing legal education requirements in tax law as follows. During the first three (3) years after the plan's implementation, the required number of hours of continuing legal education shall be sixty (60) hours which shall have been attained during the three-year period preceding the date of application. Thereafter, the required number of hours shall be established by the board of certification and designation but shall in no event be less than ninety (90) hours. Credit for attendance at continuing legal education seminars shall only be given for programs which are directly related to tax law. However, during the first two (2) years of the plan any courses approved for full or partial credit in taxation under The Florida Bar Designation Plan shall be given equal credit for the purposes of the education requirement under this section. The education requirement may be satisfied by one or more of the following:
(1) Attendance at continuing legal education seminars meeting the requirements set forth above;
*1095 (2) Lecturing at, and/or serving on the steering committee of, such continuing legal education seminars;
(3) Authoring articles or books published in professional periodicals or other professional publications;
(4) Teaching courses in "tax law" at an approved law school or other graduate level program presented by a recognized professional education association;
(5) Completing such home study programs as may be approved by the board of certification and designation and the tax certification committee, subject to the limitation that no more than fifty (50) percent of the required number of hours of education may be satisfied through home study programs; or
(6) Such other methods as may be approved by the board of certification and designation and the tax certification committee.
The board of certification and designation or the tax certification committee shall, by rule or regulation, establish standards applicable to this rule, including, but not limited to, the method of establishment of the number of hours allocable to any of the above-listed paragraphs. Such rules or regulations shall provide that hours shall be allocable to each separate but substantially different lecture, article or other activity described in paragraphs (2), (3), and (4) above.
(e) Examination. Every applicant must pass a written examination designed to demonstrate sufficient knowledge, skills, and proficiency in the field of tax law.
6-5.4 Recertification. To be eligible for recertification, an applicant must meet the following requirements:
(a) A satisfactory showing, as determined by the board of certification and designation and the tax certification committee, of continuous and substantial involvement in the field of tax law throughout the period since the last date of certification. The demonstration of substantial involvement shall be made in accordance with the standards set forth in rule 6-5.3(b), except that the board of certification and designation and the tax certification committee may accept an affidavit from the applicant attesting to his or her compliance with the substantial involvement requirement;
(b) Demonstration that he or she has completed at least one hundred fifty (150) hours of continuing legal education since the last date of certification (or recertification). The continuing legal education must logically be expected to enhance the proficiency of attorneys who are board certified tax lawyers. If the applicant has not attained one hundred fifty (150) hours of continuing legal education, but has attained more than sixty (60) hours during such period, successful passage of the written examination given by the board of certification and designation to new applicants shall satisfy the continuing legal education requirements;
(c) Completion of the reference requirements set forth in rule 6-5.3(c); and
(d) If, after reviewing the material submitted by an applicant for recertification, the board of certification and designation and the tax certification committee determine that the applicant may not meet the standards in tax law established under this chapter, the board of certification and designation and the tax certification committee may require, as a condition of recertification, that the applicant pass the written examination given by the board of certification and designation to new applicants.
6-6 Standards for certification of a board certified marital and family lawyer.
6-6.1 Generally. A lawyer who is a member in good standing of The Florida Bar and who meets the standards prescribed below may be issued an appropriate certificate identifying the lawyer as a "Board Certified Marital and Family Lawyer." The purpose of the standards is to identify those lawyers who practice marital and family law and have the special knowledge, skills, and proficiency to be properly *1096 identified to the public as certified marital and family lawyers.
6-6.2 Definitions.
(a) "Marital and family law" is the practice of law dealing with legal problems arising from the family relationship of husband and wife and parent and child, including litigation of civil controversies arising from those relationships. In addition to actual pretrial and trial process, "marital and family law" includes evaluating, handling, and resolving such controversies prior to the institution of suit and post judgment proceedings.
(b) The "practice of law" for this area is defined as set out in rule 6-3.5(c)(1) of the rules governing the Florida Certification Plan. Practice of law which otherwise satisifes these requirements but which is on a part-time basis will satisfy the requirement if the balance of the applicant's activity is spent as a teacher of family law subjects in an accredited law school.
6-6.3 Minimum standards.
(a) Substantial involvement. To become certified as a marital and family lawyer, an applicant must demonstrate substantial involvement in marital and family law. Substantial involvement shall include:
(1) At least five (5) years of actual practice of law of which at least thirty (30) percent has been spent in active participation in marital and family law. These five (5) years of practice shall be immediately preceding application.
(2) The trial of a minimum of twenty-five (25) contested marital and family law cases in circuit courts during the five (5) years immediately preceding application. All such cases must have involved substantial legal or factual issues other than the dissolution of marriage. In each of these twenty-five (25) cases the applicant shall have been responsible for all or a majority of the presentation of evidence and representation of the client. At least ten (10) of the twenty-five (25) cases must have been submitted to the trier of fact for resolution of one or more contested issues. On good cause shown, for satisfaction in part of the requirement of the twenty-five (25) contested marital and family law cases, the marital and family law certification committee may consider involvement in protracted litigation.
(3) Within three (3) years immediately preceding application the applicant shall have substantial involvement in contested marital and family law cases sufficient to demonstrate special competence as a marital and family lawyer. Substantial involvement includes active participation in client interviewing, counseling and investigating, preparation of pleadings, participation in discovery, taking of testimony, presentation of evidence, negotiation of settlement, drafting and preparation of marital settlement agreements, and argument and trial of marital and family law cases. Substantial involvement also includes active participation in the appeal of marital and family law cases.
(b) References. The applicant shall select and submit names and addresses of six (6) lawyers, not associates or partners, as references to attest to the applicant's involvement in marital and family law. Such lawyers themselves shall be substantially involved in marital and family law and shall be familiar with the applicant's practice. No less than two (2) shall be judges of circuit courts in the State of Florida before whom the applicant has appeared as an advocate in a trial of a marital and family law case in the two (2) years immediately preceding the application. In addition, the marital and family law certification committee may, at its option, send reference forms to other attorneys and judges, and make such other investigation as necessary.
(c) Education. The applicant shall make a satisfactory showing that within the three (3) years immediately preceding application he or she has minimum approved postgraduate educational experience in the field of marital and family law. Such experience shall be at programs approved by The Florida Bar and may include such activity as:
*1097 (1) Teaching a course in marital and family law;
(2) Completion of a course in marital and family law;
(3) Participation as a panelist or speaker in a symposium or similar program in marital and family law;
(4) Attendance at a lecture series or similar program concerning marital and family law, sponsored by a qualified educational institution or Bar group;
(5) Authorship of a book or article on marital and family law, published in a professional publication or journal;
(6) Such other educational experience as the marital and family law certification committee shall approve. For applications filed in the year 1985 and thereafter there shall be a minimum of fifty (50) hours.
(d) Examination. The applicant must pass an examination applied uniformly to all applicants, to demonstrate sufficient knowledge, proficiency, and experience in marital and family law to justify representation of special competence to the legal profession and to the public.
6-6.4 Circuit judges. An applicant who has served as a circuit judge within the five (5) years immediately preceding application may be eligible for certification if he or she:
(a) Devoted at least thirty (30) percent of his or her practice or judicial labor to adjudicating marital and family law cases during the five (5) years immediately preceding application.
(b) Either presided over as a judge or handled as an advocate the trial of a minimum of twenty-five (25) contested marital and family law cases in circuit courts during the five (5) years immediately preceding application. All such cases must have involved substantial legal or factual issues other than the dissolution of marriage. At least ten (10) of such cases must have been submitted to the trier of fact for resolution of one or more contested issues. If the applicant handled the cases as an advocate, he or she must have been responsible for all or a majority of the presentation of evidence and representation of the client.
(c) Meets the requirements of rule 6-6.3(a)(3) during the year immediately preceding application.
(d) Submits the references required by rule 6-6.3(b).
(e) Has accumulated the minimum approved postgraduate education in the field of marital and family law as required by rule 6-6.3(c).
(f) Successfully passes the examination required by rule 6-6.3(d).
6-6.5 Recertification. To be eligible for recertification, an applicant must meet the following requirements:
(a) Continuous and substantial involvement in the field of marital and family law throughout the period since the last date of certification. The demonstration of substantial involvement shall be made in accordance with the standards set forth in rules 6-6.3(a)(1) and (3) and 6-6.4(a).
(b) Either presided over as a judge or handled as an advocate since certification or the last recertification a minimum of fifteen (15) contested marital and family law cases in circuit courts. All such cases must have involved substantial legal or factual issues other than the dissolution of marriage. At least five (5) of such cases must have been submitted to the trier of fact for resolution of one or more contested issues. If the applicant handled the cases as an advocate, he or she must have been responsible for all or a majority of the presentation of the evidence and representation of the client. On good cause shown, for satisfaction in part of the fifteen (15) contested marital and family law cases, the marital and family law certification committee may consider involvement in protracted litigation.
(c) Completion of at least seventy-five (75) hours of continuing legal education since the last date of certification (or recertification). The continuing legal education must logically be expected to enhance the proficiency of attorneys who are board certified marital and family lawyers. If the *1098 applicant has not attained seventy-five (75) hours of continuing legal education, but has attained more than fifty (50) hours during such period, successful passage of the examination given to new applicants shall satisfy the continuing legal education requirements.
(d) Completion of the reference requirements set forth in rule 6-6.3(b).
6-7 Standards for certification of a board certified estate planning and probate lawyer.
6-7.1 Generally. A lawyer who is a member in good standing of The Florida Bar and who meets the standards prescribed below may be issued an appropriate certificate identifying the lawyer as a "Board Certified Estate Planning and Probate Lawyer." The purpose of the standards is to identify those lawyers who practice in the area of estate planning and probate and have the special knowledge, skills, and proficiency to be properly identified to the public as certified estate planning and probate lawyers.
6-7.2 Definitions.
(a) "Estate planning and probate" is the practice of law dealing with all aspects of the analysis and planning for the conservation and disposition of estates, giving due consideration to the applicable tax consequences, both federal and state; the preparation of legal instruments to effectuate estate plans; administering estates, including tax related matters, both federal and state; and probate litigation.
(b) The "practice of law" for this area is defined as set out in rule 6-3.5(c)(1) of the rules governing the Florida Certification Plan. Notwithstanding anything in the definition to the contrary, legal work done primarily for any purpose other than legal advice or representation (including, but not limited to, work related to the sale of insurance or retirement plan or work in connection with the practice of a profession other than the law) shall not be treated as the practice of law. Service as a judge of any court of record shall be deemed to constitute the practice of law. Practice of law which otherwise satisfies these requirements but which is on a part-time basis will satisfy the requirement if the balance of the applicant's activity is spent as a teacher of estate planning or probate subjects in an accredited law school.
6-7.3 Minimum standards.
(a) Minimum period of practice. Every applicant shall have been engaged in the practice of law in the United States, or engaged in the practice of United States law while in a foreign country, and shall have been a member in good standing of the bar of any state of the United States or the District of Columbia for a period of five (5) years as of the date of application.
Notwithstanding the definition of "practice of law" in rule 6-7.2(b), receipt of an LL.M. degree in taxation or estate planning and probate (or such other related fields approved by the board and estate planning and probate certification committee) from an approved law school shall be deemed to constitute one year of the practice of law for purposes of the five-year practice requirement (but not the five-year bar membership requirement) under this section. Provided, however, an applicant may not receive credit for more than one year of practice for any twelve-month period under this section; accordingly, for example, an applicant who, while being engaged in the practice of law receives an LL.M. degree by attending night classes, would not receive credit for the practice of law requirement by virtue of having received the LL.M. degree.
(b) Substantial involvement. Every applicant must demonstrate substantial involvement in the practice of law in estate planning, probate or probate related activities during the five (5) years immediately preceding the date of application, including devoting more than fifty (50) percent of practice to estate planning and probate matters during each of the two (2) years immediately preceding application. Service as a judge in the probate division of the circuit court of this state during six (6) months or more of a calendar year shall satisfy a year of substantial involvement. *1099 Except for the two (2) years immediately preceding application, upon an applicant's request and the recommendation of the estate planning and probate certification committee, the board may waive the requirement that the five (5) years be "immediately preceding" the date of application if the board of certification and designation determines the waiver is warranted by special and compelling circumstances. Except for the two (2) years immediately preceding application, upon an applicant's request and the recommendation of the estate planning and probate certification committee, the board may waive the requirement that the five (5) years be "immediately preceding" the date of application if the board of certification and designation determines the waiver is warranted by special and compelling circumstances. Except for the two (2) years immediately preceding application, receipt of an LL.M. degree in estate planning and probate (or such other degree containing substantial estate planning and probate content as approved by the board of certification and designation) from an approved law school may substitute for one year of substantial involvement. An applicant must furnish information concerning the frequency of work and the nature of the issues involved. For the purposes of this section the "practice of law" shall be as defined in rule 6-7.2(b) except that it shall also include time devoted to lecturing and/or authoring books or articles on estate planning and probate if the applicant was engaged in the practice of law during such period. Demonstration of compliance with this requirement shall be made initially through a form of questionnaire approved by the estate planning and probate certification committee but written or oral supplementation may be required.
(c) References for knowledge and experience. Every applicant shall submit the names and addresses of five (5) other attorneys who are familiar with the applicant's practice, not including attorneys who currently practice in the applicant's law firm, who can attest to the applicant's reputation for involvement in the field of estate planning and probate law. The board of certification and designation and the estate planning and probate certification committee may authorize references from persons other than attorneys in such cases as they deem appropriate. The board of certification and designation and the estate planning and probate certification committee may also make such additional inquiries as they deem appropriate.
(d) Education. Every applicant must demonstrate that during the three-year period immediately preceding the date of his or her application, he or she has met the continuing legal education requirements in estate planning and probate as follows. During the first three (3) years after the plan's implementation, the required number of hours of continuing legal education shall be sixty (60) hours which shall have been attained during the three-year period preceding the date of application. Thereafter, the required number of hours shall be established by the board of certification and designation but shall in no event be less than ninety (90) hours. Credit for attendance at continuing legal education seminars shall be given only for programs which are directly related to estate planning and probate. However, during the first two (2) years of the plan any courses approved for full or partial credit in estate planning and probate under The Florida Bar Designation Plan shall be given equal credit for the purposes of the education requirement under this section. The education requirement may be satisfied by one or more of the following:
(1) Attendance at continuing legal education seminars meeting the requirements set forth above;
(2) Lecturing at, and/or serving on the steering committee of, such continuing legal education seminars;
(3) Authoring articles or books published in professional periodicals or other professional publications;
(4) Teaching courses in "estate planning and probate" at an approved law school or other graduate level program presented by *1100 a recognized professional education association;
(5) Completing such home study programs as may be approved by the board of certification and designation and the estate planning and probate certification committee, subject to the limitation that no more than fifty (50) percent of the required number of hours of education may be satisfied through home study programs; and
(6) Such other methods as may be approved by the board and the estate planning and probate certification committee.
The board of certification and designation and the estate planning and probate certification committee shall, by rule or regulation, establish standards applicable to this rule, including, but not limited to, the method of establishment of the number of hours allocable to any of the above-listed paragraphs. Such rules or regulations shall provide that hours shall be allocable to each separate but substantially different lecture, article or other activity described in paragraphs (2), (3), and (4) above.
(e) Examination. The applicant must pass an examination which will be practical and objective and designed to demonstrate special knowledge, skills, and proficiency in estate planning and probate law.
6-7.4 Recertification. Recertification must be obtained every five (5) years. To be eligible for recertification, an applicant must meet the following requirements:
(a) A satisfactory showing, as determined by the board of certification and designation and the estate planning and probate certification committee, of continuous and substantial involvement in estate planning and probate law throughout the period since the last date of certification. The demonstration of substantial involvement of more than fifty (50) percent during each year after certification or prior recertification shall be made in accordance with the standards set forth in rule 6-7.3(b).
(b) The applicant must demonstrate he or she has completed at least one hundred twenty-five (125) hours of approved continuing legal education since the last date of certification. This requirement shall be satisfied by the applicant's participation in postgraduate education approved by The Florida Bar pursuant to rule 6-7.3(d)(1) through (6).
(c) A written, short, objective, mail-in examination covering important changes in the law. Failure of the examination shall necessitate the applicant passing the examination for new applicants required by rule 6-7.3(e).
(d) An applicant for recertification shall submit the names and addresses of three (3) currently board certified estate planning and probate lawyers who are familiar with his or her practice, excluding lawyers who currently practice in the applicant's law firm, who can attest to the applicant's reputation for ability of practice and involvement in the field of estate planning and probate law throughout the period since the last date of certification. The board of certification and designation and the estate planning and probate certification committee may authorize references from persons other than board certified lawyers in such cases as they deem appropriate. The board of certification and designation and the estate planning and probate certification committee may also make such additional inquiries as they deem appropriate. The board of certification and designation may deny certification based upon information received from statements of reference.
(e) If, after reviewing the material submitted by an applicant for recertification, the board of certification and designation and the estate planning and probate certification committee determine the applicant may not meet the standards in estate planning and probate law established under this chapter, the board of certification and designation and the estate planning and probate certification committee may require, as a condition of recertification, that the applicant pass an examination given by the board of certification and designation to new applicants.
*1101 6-8 Standards for certification of a board certified criminal lawyer.
6-8.1 Generally. A lawyer who is a member in good standing of The Florida Bar and who meets the standards prescribed below may be issued an appropriate certificate identifying the lawyer as either a "Board Certified Criminal Trial Lawyer" or a "Board Certified Criminal Appellate Lawyer." An applicant may qualify for certification under both categories provided the applicant meets the standards for each category. The purpose of the standards is to identify those lawyers who practice criminal law and have the special knowledge, skills, and proficiency to be properly identified to the public as certified criminal trial or appellate lawyers.
6-8.2 Definitions and committee.
(a) "Criminal law" is the practice of law dealing with the defense and prosecution of misdemeanor and felony crimes in state and federal trial and appellate courts.
(b) The "practice of law" for this area is defined as set out at rule 6-3.5(c)(1) of the rules governing the Florida Certification Plan.
(c) The criminal law certification committee shall consist of one member with experience in the field of criminal appellate law and six (6) members with experience in the field of criminal trial law.
6-8.3 Criminal trial; minimum standards.
(a) Substantial involvement. To become certified as a criminal trial lawyer, an applicant must demonstrate substantial involvement in criminal trial law. Substantial involvement shall include:
(1) At least five (5) years of the actual practice of law of which at least forty (40) percent has been spent in active participation in criminal trial law. At least three (3) years of this practice shall be immediately preceding application or, during those three (3) years the applicant may have served as a judge of a court of general jurisdiction adjudicating criminal trial matters.
(2) The trial of a minimum of twenty-five (25) criminal cases. Of these twenty-five (25) cases, at least twenty (20) shall have been jury trials and at least fifteen (15) shall have involved felony charges. On good cause shown, for satisfaction in part of the twenty-five (25) criminal trials, the criminal law certification committee may consider involvement in protracted litigation.
(3) Within the three (3) years immediately preceding application, the applicant's substantial involvement must be sufficient to demonstrate special competence as a criminal trial lawyer. Substantial involvement includes investigation, evaluation, pleading, discovery, taking of testimony, presentation of evidence, and argument of jury or nonjury cases. For good cause shown, the criminal law certification committee may waive two (2) of the three (3) years of substantial involvement for individuals who have served as judges of courts of general jurisdiction adjudicating criminal trial matters. In no event may the year immediately preceding application be waived.
(b) References.
(1) The applicant shall submit the names and addresses of at least four (4) lawyers, not associates or partners, as references to attest to the applicant's substantial involvement and competence in criminal trial practice. Such lawyers shall be substantially involved in criminal trial law and familiar with the applicant's practice.
(2) The applicant shall submit the names and addresses of at least two (2) judges before whom he or she has appeared on criminal trial matters within the last two (2) years, or before whom he or she has tried a criminal trial to jury verdict, to attest to the applicant's substantial involvement and competence in criminal trial practice.
(3) The criminal law certification committee may, at its option, send reference forms to other attorneys and judges.
(c) Education.
(1) The applicant shall make a satisfactory showing that within the three (3) years immediately preceding application he or she has accumulated at least thirty (30) hours *1102 of approved continuing legal education in the field of criminal law.
(2) Applicants seeking certification as both criminal trial and criminal appellate lawyers must, during the three (3) years immediately preceding application, complete thirty (30) hours of approved continuing legal education as aforesaid for each category, for a total of sixty (60) hours.
(d) Examination. Every applicant must pass an examination designed to demonstrate sufficient knowledge, proficiency and experience in criminal law, application of constitutional principles, and rules of criminal procedure to justify the representation of special competence to the legal profession and public.
6-8.4 Criminal trial recertification. Recertification shall be pursuant to the following standards:
(a) The applicant shall demonstrate continuous and substantial involvement in the practice of law, of which at least forty (40) percent must have been spent in active participation in criminal trial law throughout the period since the last date of certification. The demonstration of substantial involvement shall be made in accordance with the standards set forth in rule 6-8.3(a)(3).
(b) The applicant shall make a satisfactory showing that he or she has accumulated at least fifty (50) hours of approved continuing legal education during the period since original certification. Applicants seeking recertification as both criminal trial lawyers and criminal appellate lawyers must complete at least fifty (50) hours of approved continuing legal education in each of the categories, for a total of one hundred (100) hours.
(c) The applicant shall submit the names and addresses of at least four (4) lawyers, not associates or partners, as references, to attest to the applicant's substantial involvement and competence in criminal trial practice. Such lawyers shall be substantially involved in criminal trial law and familiar with the applicant's practice.
(d) The applicant shall submit the names and addresses of at least two (2) judges before whom he or she has appeared on criminal trial matters within the last two (2) years, or before whom he or she has tried a criminal trial to jury verdict, to attest to the applicant's substantial involvement and competence in criminal trial practice.
(e) The criminal law certification committee may, at its option, send reference forms to other attorneys and judges.
6-8.5 Criminal appellate; minimum standards.
(a) Substantial involvement. To become certified as a criminal appellate lawyer, an applicant must demonstrate substantial involvement in criminal appellate law. Substantial involvement shall include:
(1) At least five (5) years of the actual practice of law of which at least forty (40) percent has been spent in active participation in criminal appellate law. At least three (3) years of this practice shall be immediately preceding application or, during those three (3) years, the applicant may have served as an appellate court judge adjudicating criminal matters. The five (5) years of criminal appellate practice shall include brief writing, motion practice, oral arguments, and extraordinary writs sufficient to demonstrate special competence as a criminal appellate lawyer.
(2) The representation of at least twenty-five (25) appellate actions. On good cause shown, for satisfaction in part of the twenty-five (25) appellate actions, the criminal law certification committee may consider involvement in protracted litigation.
(3) Within the three (3) years immediately preceding application, the applicant's substantial involvement must be sufficient to demonstrate special competence as a criminal appellate lawyer. Substantial involvement includes brief writing, motion practice, oral arguments and extraordinary writs. For good cause shown, the criminal law certification committee may waive two (2) of the three (3) years substantial involvement for individuals who have served as appellate court judges adjudicating criminal *1103 matters. In no event may the year immediately preceding application be waived.
(b) References.
(1) The applicant shall submit the names and addresses of at least four (4) lawyers, not associates or partners, as references to attest to the applicant's substantial involvement and competence in criminal appellate practice. Such lawyers shall be substantially involved in criminal appellate law and familiar with the applicant's practice.
(2) The applicant shall submit the names and addresses of at least two (2) judges before whom he or she has appeared on criminal appellate matters within the last two (2) years, to attest to the applicant's substantial involvement and competence in criminal appellate practice.
(3) The criminal law certification committee may, at its option, send reference forms to other attorneys and judges.
(c) Education.
(1) The applicant shall make satisfactory showing that within the three (3) years immediately preceding application he or she has accumulated at least thirty (30) hours of approved continuing legal education in the field of criminal law.
(2) Applicants seeking certification as both criminal trial and criminal appellate lawyers must, during the three (3) years immediately preceding application, complete thirty (30) hours of approved continuing legal education as aforesaid for each category, for a total of sixty (60) hours.
(d) Examination. Every applicant must pass an examination designed to demonstrate sufficient knowledge, proficiency and experience in criminal law, application of constitutional principles, and rules of criminal and appellate procedure to justify the representation of special competence to the legal profession and public.
6-8.6 Criminal appellate recertification. Recertification shall be pursuant to the following standards:
(a) The applicant shall demonstrate continuous and substantial involvement in the practice of law, of which at least forty (40) percent must have been spent in active participation in criminal appellate law throughout the period since the last date of certification. The demonstration of substantial involvement shall be made in accordance with the standards set forth in rule 6-8.5(a)(3).
(b) The applicant shall make a satisfactory showing that he or she has accumulated at least fifty (50) hours of approved continuing legal education during the period since original certification. Applicants seeking recertification as both criminal trial lawyers and criminal appellate lawyers must complete at least fifty (50) hours of approved continuing legal education in each of the categories, for a total of one hundred (100) hours.
(c) The applicant shall submit the names and addresses of at least four (4) lawyers, not associates or partners, as references, to attest to the applicant's substantial involvement and competence in criminal appellate practice. Such lawyers shall be substantially involved in criminal appellate law and familiar with the applicant's practice.
(d) The applicant shall submit the names and addresses of at least two (2) judges before whom he or she has appeared on criminal appellate matters within the last two (2) years, to attest to the applicant's substantial involvement and competence in criminal appellate practice.
(e) The criminal law certification committee may, at its option, send reference to other attorneys and judges.
6-9 Standards for certification of a board certified real estate lawyer.
6-9.1 Generally. A lawyer who is a member in good standing of The Florida Bar and who meets the standards prescribed below may be issued an appropriate certificate identifying the lawyer as a "Board Certified Real Estate Lawyer." The purpose of the standards is to identify those lawyers who practice in the area of real estate and have the special knowledge, skills, and proficiency to be properly identified to the public as certified real estate lawyers.
*1104 6-9.2 Definitions.
(a) "Real estate" is the practice of law dealing with matters relating to real property transactions including, but not limited to real estate conveyances, title searches, property transfers, leases, condominiums and cooperatives, interval ownership, mortgages, zoning and land use planning, real estate development and financing, real estate litigation, and determination of property rights.
(b) The "practice of law" for this area is defined as set out at rule 6-3.5(c)(1) of the rules governing the Florida Certification Plan. Practice of law which otherwise satisfies these requirements but which is on a part-time basis will satisfy the requirement if the balance of the applicant's activity is spent as a teacher of real estate subjects in an accredited law school.
6-9.3 Minimum standards.
(a) Minimum period of practice. Every applicant shall have been engaged in the practice of law in the United States, or engaged in the practice of United States law while in a foreign country, and shall have been a member in good standing of the bar of any state of the United States or the District of Columbia for a period of five (5) years as of the date of filing an application. The years of law practice need not be consecutive.
(b) Substantial involvement. Every applicant must demonstrate substantial involvement sufficient to show special knowledge, skills and proficiency in the practice of real estate law during the three (3) years immediately preceding the date of application. Substantial involvement is defined as including devoting at least forty (40) percent of one's practice to matters in which issues of real estate law are significant factors and in which the applicant had substantial and direct participation in those real estate issues. Upon an applicant's request and the recommendation of the real estate certification committee, the board of certification and designation may waive the requirement that the three (3) years be "immediately preceding" the date of application if the board of certification and designation determines the waiver is warranted by special and compelling circumstances. An applicant must furnish information concerning the frequency of his or her work and the nature of the issues involved. For the purposes of this section the "practice of law" shall be as defined in rules 6-3.5(b)(1) and 6-9.2(b) except that it shall also include time devoted to lecturing and/or authoring books or articles on fields of real estate law if the applicant was engaged in the practice of law during such period. Demonstration of compliance with this requirement shall be made initially through a form of questionnaire approved by the real estate certification committee, but written or oral supplementation may be required.
(c) References for knowledge and experience. Every applicant shall submit the names and addresses of five (5) attorneys or judges who are familiar with his or her practice, not including attorneys who currently practice in the applicant's law firm, who can attest to the applicant's reputation for involvement in the field of real estate law. The board of certification and designation and the real estate certification committee may authorize references from persons other than attorneys in such cases as they deem appropriate. The board of certification and designation and the real estate certification committee may also make such additional inquiries as they deem appropriate.
(d) Education. Every applicant must demonstrate that during the three-year period immediately preceding the date of filing an application, he or she has accumulated accredited continuing legal education in real property law of not less than forty-five (45) hours.
(e) Examination. The applicant must pass a written examination which will be practical, objective and designed to demonstrate special knowledge, skills, and proficiency in real estate law.
6-9.4 Recertification. To be eligible for recertification, an applicant must meet the following requirements:
*1105 (a) A satisfactory showing, as determined by the board of certification and designation and the real estate certification committee, of continuous and substantial involvement in real estate law throughout the period since the last date of certification. The demonstration of substantial involvement of at least forty (40) percent during each year after certification prior to recertification shall be made in accordance with the standards set forth in rule 6-9.3(b).
(b) Completion of at least seventy-five (75) hours of accredited continuing legal education in real estate law since the last date of certification.
(c) An applicant for recertification shall submit the names and addresses of five (5) attorneys or judges who are familiar with his or her practice, not including lawyers who currently practice in the applicant's law firm, who can attest to the applicant's reputation for ability of practice and involvement in the field of real estate law. The board of certification and designation and the real estate certification committee may also make such additional inquiries as they deem appropriate.

Chapter 7

CLIENTS' SECURITY FUND RULES
7-1 In General.
7-1.1 Generally. The board of governors may provide monetary relief to persons who suffer reimbursable losses as a result of misappropriation, embezzlement or other wrongful taking or conversion by a member of The Florida Bar of money or other property that comes into the possession or control of the member of The Florida Bar.
7-1.2 Fund established. Pursuant to the authority granted by rule 1-8.4 of these Rules Regulating The Florida Bar, the board of governors hereby establishes a separate fund designated "Clients' Security Fund of The Florida Bar."
7-1.3 Administration. The fund shall be administered in accordance with regulations adopted by the board of governors following procedures as set forth in rule 1-11.
7-1.4 Definitions. For this rule the following terms shall have the following meanings:
(a) "Applicant" means a person or persons or any legal entity that has filed an application with The Florida Bar for a grant of monetary relief from the fund based on a claim that he, she or it has suffered a reimbursable loss.
(b) "The bar" means the Florida Bar.
(c) "The board" means the board of governors of The Florida Bar.
(d) The "committee" means the "Clients' Security Fund Committee," a standing committee of the bar.
(e) "The fund" means the Clients' Security Fund of The Florida Bar.
(f) "Reimbursable loss" means a loss suffered by an applicant by reason of misappropriation, embezzlement or other wrongful taking or conversion of money or other property by a member of The Florida Bar when: (1) acting as a lawyer; or (2) acting in a fiduciary capacity customary to the practice of law, i.e., a personal representative, trustee of an express trust, or guardian; or (3) acting as an escrow holder or other fiduciary having been designated as such by a client in the matter in which the loss arose or having been so appointed or selected as the result of an attorney and client relationship; provided, however, that such a relationship was not for a wrongful purpose and the applicant was not guilty of any bad faith in putting the money or other property in possession or control of the attorney.
7-2 Committee.
7-2.1 Committee's duties.
(a) The committee shall have such duties in the administration of the fund as shall from time to time be prescribed by the board.
(b) The committee may adopt additional regulations for the efficient administration of the fund as approved by the board.
*1106 7-2.2 Investigations.
(a) The committee shall investigate every application for relief which appears to meet the requirements of this chapter.
(b) The board may approve for payment from the fund such claims as are found, after investigation, to be meritorious and in accordance with the Clients' Security Fund Rules.
(c) Applications for monetary relief shall be submitted on forms prescribed by the board.
7-2.3 Payments.
(a) If, in the judgment of the board, a reimbursable loss has been sustained by an applicant and the circumstances warrant relief, then, after taking into consideration the resources of the fund and the priority to be assigned to such application in the discretion of the board, the board may, in the exercise of its discretion, as a matter of grace and not of right, grant monetary relief.
(b) Such monetary relief shall be in such an amount as the board may determine and shall be payable in such a manner and upon such conditions and terms as the board shall prescribe.
(c) No applicant shall have any right, legal or equitable, contractual or statutory, to a grant of monetary relief from the fund.
(d) The board shall not grant any application for monetary relief unless it shall be based upon a loss sustained after December 31, 1966.
7-2.4 Prerequisites to payment.
(a) Payments from the fund will not ordinarily be made while the lawyer guilty of the misappropriation remains a member in good standing of The Florida Bar.
(b) The filing of a grievance complaint with The Florida Bar against the attorney claimed against may be required as a prerequisite to the consideration of a Clients' Security Fund claim.
7-2.5 Assignment in favor of bar.
(a) As a condition precedent to the grant of monetary relief, the applicant shall make an assignment in favor of the bar of the subrogation rights or of the judgment or decree (or the unsatisfied portion thereof) obtained by the applicant against the offending member or members of the bar, and the bar shall be entitled to be reimbursed to the extent of the amount of the relief granted with respect to such claim from the first moneys recovered by reason of such subrogation or assignment.
(b) Ordinarily, as a matter of policy, however, in cases where the relief granted shall have been for less than the full amount which would have been allowable except for considerations of allocating available resources of the fund or other reasons related to the administration of the fund, the bar shall not be reimbursed for the amount of the relief granted with respect to such claim until and unless the last moneys shall be recovered by reason of such subrogation or assignment.
(c) The bar shall have the right but shall be under no obligation to any applicant to seek recovery from the offending lawyer or lawyers of all or any portion of such applicant's claim; and if the bar elects not to pursue recovery, an applicant shall be entitled to receive from the bar, as the owner of the claim, judgment or decree, a reassignment thereof sufficient to permit his collection thereof in his own name, provided that such reassignment shall reserve in favor of the bar a lien upon the proceeds of any recovery to the extent of the relief paid to the applicant from the fund. In the event of such reassignment, the claimant shall keep the bar fully informed of all his efforts to obtain recovery.
(d) Recoveries or repayments to the bar on account of payments from the fund will be restored to the fund.
7-3 Funds.
7-3.1 Funding. The board of governors shall provide for the funds necessary for such relief.
7-3.2 Dues allocation. The board shall allocate from the annual dues of the members of The Florida Bar not more than $15 per member per annum for this purpose.
*1107 7-3.3 Gifts. The board is authorized to accept for the fund any contribution or gift offered to it for use in furtherance of the purposes of the fund.
7-4 Amendments.
7-4.1 Generally. The Clients' Security Fund Rules may be amended in accordance with rule 2-10.

Chapter 8

LAWYER REFERRAL RULE
8-1 Generally.
8-1.1 Statement of policy and purposes. Every citizen of the state should have access to the legal system. A person's access to the legal system is enhanced by the assistance of a qualified lawyer. Citizens often encounter difficulty in identifying and locating lawyers who are willing and qualified to consult with them about their legal needs. To this end bona fide not-for-profit state and local bar associations are uniquely qualified to provide lawyer referral services under supervision by The Florida Bar for the benefit of the public. It is the policy of The Florida Bar to support the establishment of local lawyer referral services and to encourage those services to: (a) make legal services readily available to the general public through a referral method which considers the client's financial circumstances, spoken language, geographical convenience, and the type and complexity of the client's legal problem; (b) provide information about lawyers and the availability of legal services that will aid in the selection of a lawyer; (c) inform the public when and where to seek legal services and provide an initial determination of whether those services are necessary or advisable; and (d) provide referral to consumer, government, and other agencies when the individual's best interests so dictate.
8-2 Requirements.
8-2.1 Requirements for establishing a lawyer referral service sponsored by a local bar association. The board of governors of The Florida Bar may adopt such regulations as it deems desirable governing the establishment, operation and termination of lawyer referral services operated by a local bar association.
No local bar association shall operate a lawyer referral service except upon application to and approval by the board of governors of The Florida Bar. No lawyer referral service shall be approved by The Florida Bar unless such lawyer referral service is offered primarily for the benefit of the public and unless such lawyer referral service is established and operated by a nonprofit organization exempt from federal taxation under section 501(c)(3), 501(c)(4), or 501(c)(6) of the Internal Revenue Code of 1954.
8-2.2 Contents of application. An application by a local bar association to the board of governors of The Florida Bar for authority to operate a lawyer referral service shall be in writing and shall be filed with the executive director. Such application shall contain:
(a) A statement of the benefits to the public to be achieved by the implementation of the lawyer referral service.
(b) Proof that the referral service is established and operated by a nonprofit organization exempt from federal taxation under section 501(c)(3), 501(c)(4), or 501(c)(6) of the Internal Revenue Code of 1954.
(c) The proposed bylaws or rules and regulations which will govern the lawyer referral service. The proposed bylaws shall include the following regulations:
(1) All members of the proposed referral service shall provide proof of professional liability insurance in the minimum amount of $100,000 unless the proposed lawyer referral service itself carries professional liability insurance in an amount not less than $100,000 per claim or occurrence.
(2) The proposed lawyer referral service shall accept membership applications only from attorneys who maintain an office in the geographic area served by the proposed lawyer referral service.
(3) The proposed lawyer referral service shall require a waiver of confidentiality for each member limited to and for the sole purpose of enabling The Florida Bar to *1108 inform the service of the lawyer's grievance history and the status of each complaint against the lawyer in which there has been a finding of probable cause.
(4) The proposed lawyer referral service shall agree to maintain an alphabetical member list, updated quarterly, with The Florida Bar. In turn, The Florida Bar shall notify the service of any unresolved finding of probable cause against a member. When probable cause has been found at the local grievance committee level, and the lawyer referral service has been notified, such service shall be required to hold referral to the member in question until the matter is resolved. If the member is in good standing with The Florida Bar after the resolution of the matter, then he or she may be returned to the service.
(d) The estimated number of lawyers who will participate in the service.
(e) The number of lawyers in the area.
(f) A statement of the condition that evidences a need for such service in the area.
(g) The geographic area in which the proposed referral service will operate.
(h) A statement of how the lawyer referral service will be conducted.
(i) A statement of fees to be charged by the lawyer referral service, including but not limited to fees charged by the referral service to members of the public using such service and fees charged by the referral service or remitted to the referral service by member attorneys.
(j) A statement that such lawyer referral service will be open for referral to the members of the public without regard to race, sex, national origin, or economic status.
(k) A statement that the local bar association is representative of the profession in the area of the service and is open to all members of the profession on an equal basis.
8-2.3 Approval of application. The board of governors may approve or disapprove the application to operate a lawyer referral service or it may call for additional information upon which to base its decision. No lawyer referral service shall be commenced by or on behalf of a local bar association until approval thereof has been communicated in writing from the board of governors of The Florida Bar.
8-3 Supervision.
8-3.1 Supervision and reporting requirements. Any lawyer referral service approved by The Florida Bar and operated by a local bar association shall submit three (3) quarterly reports and an annual report to The Florida Bar which reports may be on forms approved by The Florida Bar. Such reports shall contain information concerning the operation of the lawyer referral service, including but not limited to the following:
(a) A statement of the sources of income by category and amount;
(b) A statement of expenditures by category and amount;
(c) The number of attorneys who were members of the lawyer referral service for the reporting period and special panels, if any;
(d) The number of inquiries received by the referral service from members of the public during the reporting period;
(e) The number of referrals for legal services made by the service during the reporting period;
(f) The number of referrals for nonlegal services made by the service during the reporting period;
(g) A statement of the operation of the lawyer referral service, including the number of personnel employed and the means by which referrals are made by the service; and
(h) A statement of changes, if any, to the bylaws and regulations governing the lawyer referral service.
The annual report shall also contain a proposed budget for the next year and a statement of any material changes in the operation of the lawyer referral service since the filing of the initial application under rule 8-2.2 above.
*1109 The Florida Bar shall actively supervise the operation and conduct of all lawyer referral services established under this chapter and may require such other information as it deems necessary to determine the benefits of such service to the public and the achievement of the policies stated herein. The Florida Bar shall not make any charge to the local bar association or its lawyer referral service for such supervision.
8-4 Revocation.
8-4.1 Revocation of authority. Upon good cause shown, the board of governors may revoke the authority of any bar association to operate a lawyer referral service.

Chapter 9

GROUP AND PREPAID LEGAL SERVICES RULES
9-1 Generally.
9-1.1 Authority. Pursuant to the authority granted by rule 2-3.2(c) the board of governors establishes the following rules.
9-1.2 Definitions.
(a) "Group legal services." A plan, program, or insurance intended to cover two (2) or more persons, which assists a participant in obtaining a lawyer and pursuant to which a member of The Florida Bar is paid by the plan, the sponsor, the participant, in whole or in part, legal fees for services rendered to the participant.
(b) "Prepaid legal services." A legal service plan that contains the assumption of a contractual obligation to provide specified legal services, or to reimburse for specified legal expense in consideration of a specified payment in advance for an interval of time, regardless of whether the payment is made by the beneficiary individually or by a third person, whether or not the legal services are provided by a lawyer or lawyers contractually obligated, prior to the need for the services, to provide them under the contract.
(c) "Participant." A person eligible to receive legal services under a legal services plan, program or insurance.
(d) "Sponsor." Any individual, union, association, corporation or entity that operates a legal services plan.
(e) "Committee." Prepaid legal services committee of The Florida Bar.
9-1.3 Approval by board of governors. Legal services plans that are sponsored by a church, cooperative, educational institution, credit union, or "employees" organization or any other entity that contracts directly with a lawyer(s) or law firm for the provision of legal services to its members and the administration and marketing of such legal services is wholly conducted by the organization or any other plan that is not subject to the jurisdiction of the Department of Insurance must be approved by the board of governors of The Florida Bar prior to the commencement of operations.
9-1.4 Time. The approval of The Florida Bar shall be for a period of one year, with annual renewals.
9-2 Requirements.
9-2.1 Requirements of attorneys. A lawyer providing services in connection with a plan of group or prepaid legal services shall:
(a) Comply with the requirements of the Rules of Professional Conduct and the requirements of this chapter;
(b) Carry professional liability insurance in an amount not less than $100,000; and
(c) Waive confidentiality in grievance matters in favor of the board, the prepaid legal services committee and the plan sponsor.
9-2.2 Legal services plan.
(a) A legal services plan submitted pursuant to the rule regulating group and prepaid legal services shall be submitted in accordance with requirements and procedures set forth by the committee.
(b) The documents to be submitted shall include:
(1) An application for approval of the plan:
(2) The legal services plan description;
(3) The attorney agreement,
*1110 (4) An estimated budget;
(5) Any agreements under which money is to be paid to any person, firm or organization from money paid by the plan participants or sponsor; and
(6) Any other documents specified by the committee.
9-2.3 Application.
(a) The application shall be in a form designated by the committee and shall include assurances that the managing attorney shall:
(1) Exercise every effort to determine that the plan is operated in an ethical manner and that no activities, acts or practices take place that would constitute a breach of the Rules of Professional Conduct as promulgated by the Supreme Court of Florida;
(2) Take appropriate steps to assure that there are a sufficient number of attorneys to adequately represent the plan participants;
(3) Submit any material changes in the plan to The Florida Bar for approval;
(4) Notify The Florida Bar immediately should the plan terminate or the plan's attorneys change;
(5) Submit an annual report to The Florida Bar each January fifteenth;
(6) Submit a request for renewal each year thirty (30) days prior to expiration of the plan's renewal date;
(7) Waive confidentiality of grievance proceedings in favor of the prepaid legal services committee, the board of governors, and the group/plan sponsor;
(8) Provide proof of professional liability insurance at no less than $100,000; and
(9) Obtain waivers of confidentiality of grievance proceedings in favor of the prepaid legal services committee, the board of governors, and the group/plan sponsor and proof of professional liability insurance at no less than $100,000 from each attorney providing legal services in accordance with the plan.
(b) The legal services plan description shall include:
(1) A description of who is eligible to participate in the plan;
(2) A description of the legal services to be provided;
(3) The costs of the legal services under the plan;
(4) Excluded legal services;
(5) A statement of any geographical limitations on services;
(6) The method of review and resolution of disputes and grievances arising under the plan or attorney agreement;
(7) A plan termination procedure including method of termination by group/plan sponsor, attorneys, and plan participant;
(8) An affirmative statement that the plan participant is the client and the group/plan sponsor will have no influence over the attorney-client relationship;
(9) An affirmative statement informing plan participants that they are free to use a nonplan panel attorney (at their own expense or with reimbursement by the group/plan sponsor as the case may be);
(10) A statement informing plan participants that they may file a complaint with Staff Counsel, The Florida Bar, Tallahassee, Florida XXXXX-XXXX;
(11) Recommended acknowledgments;
(12) A disclaimer announcement: "The Florida Bar does not guarantee in any way the success of the plan and gives no assurances of the quantity or quality of legal services to be provided. Total responsibility for the delivery of services rests with the plan's sponsor and the attorneys in their individual attorney-client relationship"; and
(13) Such other requirements that the committee determines to be necessary.
9-2.4 Attorney agreement.
(a) The attorney agreement shall include:
(1) The method of payment to plan panel attorneys;
(2) An affirmative statement that the attorney will complete work undertaken to *1111 the extent of benefits provided under the plan even if the plan is terminated;
(3) Assurance that records of plan participants will be maintained separate from records of other clients; and
(4) Assurance that records will be maintained on time expended/types of services provided, services provided that exceed the benefits under the plan or are not covered by the plan.
(b) Each plan attorney shall present proof of professional liability coverage annually in a manner specified by the committee.
9-3 Limitation on practice.
9-3.1 Generally. Nothing in this chapter shall be construed as authorizing any limitation on the method of legal practice not otherwise required of all lawyers.
9-4 Amendments.
9-4.1 Generally. Rules governing group and prepaid legal services may be amended in accordance with rule 2-10.

Chapter 10

RULES GOVERNING THE INVESTIGATION AND PROSECUTION OF THE UNLICENSED PRACTICE OF LAW
10-1 Jurisdiction.
10-1.1 Generally.
(a) Pursuant to the provisions of article V, section 15, of the Florida Constitution, the Supreme Court of Florida has inherent jurisdiction to prohibit the unlicensed practice of law. All references herein to "the Court" shall mean the Supreme Court of Florida.
(b) The Florida Bar, as an official arm of the Court, is charged with the duty of considering, investigating, and seeking the prohibition of matters pertaining to the unlicensed practice of law and the prosecution of alleged offenders. The Court shall establish a standing committee on the unlicensed practice of law and at least one circuit committee on unlicensed practice of law in each judicial circuit.
(c) The standing committee shall be appointed by the Court on advice of the board of governors of The Florida Bar and shall consist of at least fifteen (15) members, not less than five (5) of whom shall be nonlawyers. It shall be the duty of the standing committee to receive and evaluate circuit committee reports and make its findings and recommendations to the board of governors. The board of governors shall act upon said reports, findings and recommendations and determine whether or not litigation should be instituted in the court against any alleged offender. The board of governors may approve civil injunctive proceedings, referral to the appropriate state attorney for indirect criminal contempt prosecution, or such other action as may be appropriate.
(d) All appointments to the standing committee shall be for a term of three (3) years. No member shall be appointed to more than two (2) consecutive full terms. The members of the standing committee shall not be subject to removal by the Court during their terms of office, except for cause. Cause shall include unexcused failures to attend scheduled meetings, the number of which shall be set forth by the standing committee in an attendance policy.
10-2 Circuit committees.
10-2.1 Generally.
(a) Each circuit committee shall be appointed by the Court on advice of the board of governors and shall consist of not fewer than three (3) members, at least one of whom shall be a nonlawyer. A majority of a circuit committee shall constitute a quorum. The terms of the members of circuit committees shall begin on the first day of July and shall end on the next succeeding thirtieth day of June or at such time as their successors are appointed and qualified. The expiration of the term of any member shall not disqualify such member from concluding any investigations pending before him or her. Any member of a circuit committee may be removed from office by the board of governors.
(b) For each circuit committee there shall be a chairman designated by the board of governors and a vice-chairman and secretary *1112 designated by the chairman of each circuit committee. The chairman shall be a member of The Florida Bar.
(c) It shall be the duty of each circuit committee to investigate, with dispatch, all reports of unlicensed practice of law and to make prompt written report of its investigation and findings to the standing committee.
10-3 Standing committee.
10-3.1 Generally. The board of governors is delegated the authority to appoint a chairman and vice-chairman of the standing committee, both of whom shall be members of The Florida Bar. A majority of the members of the standing committee shall constitute a quorum.
The duties of the standing committee shall include, but not be limited to, the following:
(a) The consideration and investigation of activities which may, or do, constitute the unlicensed practice of law;
(b) The supervision of the several circuit committees, which shall include, but not be limited to:
(1) Prescribing rules of procedure for circuit committees;
(2) Assigning reports of unlicensed practice of law for investigation;
(3) Reassigning or withdrawing matters previously assigned and exercising final authority to close cases not deemed by the standing committee to then warrant litigation for unlicensed practice of law and to close cases proposed to be resolved by cease and desist affidavit;
(4) Joining with a circuit committee in a particular investigation;
(5) Assigning staff investigators, staff counsel and voluntary bar counsel to conduct investigations on behalf of or in concert with the circuit committees; and
(6) Suspending circuit committee members and chairmen for cause and appointing a temporary circuit committee chairman where there has been a suspension, resignation or removal, pending the appointment of a permanent chairman by the board of governors.
(c) The reporting of recommendations to the board of governors that litigation should be instituted in order to prevent the unlicensed practice of law;
(d) The initiation and supervision of litigation authorized by the board of governors including the delegation of responsibility to staff counsel, assistant staff counsel or bar counsel to prosecute such litigation;
(e) The giving of advice regarding the unlicensed practice of law policy to the officers, board of governors, staff, sections, or committees of The Florida Bar as requested; and
(f) Furnishing any and all information, confidential records and files regarding pending or closed investigations of unlicensed practice of law to any state or federal law enforcement agency, the Florida Board of Bar Examiners, and Florida Bar grievance committees where there is or may be a violation of state or federal law or the Rules of Professional Conduct of The Florida Bar.
10-4 Investigations.
10-4.1 Powers, duties.
(a) Upon receiving a written application of the chairman of the standing committee or of a circuit committee alleging facts indicating that a person or entity is or may be practicing law without a license and that the issuance of a subpoena is necessary for the investigation of such unlicensed practice, the clerk of the circuit court in which the committee is located or the clerk of the Supreme Court of Florida shall issue subpoenas in the name, respectively, of the chief judge of the circuit or the chief justice for the attendance of any person and production of books and records before designated counsel or the investigating circuit committee or any member thereof designated in such application at the time and place within its circuit designated by the investigating circuit committee. Such subpoenas shall be returnable to the circuit court of the residence or place of business of the person subpoenaed. A like subpoena *1113 shall issue upon application by any person or entity under investigation.
(b) Failure to comply with any subpoena shall constitute a contempt of court and may be punished by the Supreme Court of Florida or by the circuit court of the circuit to which the subpoena is returnable or where the contemnor may be found. The circuit court to which the subpoena is returnable shall have power to enter such orders as may be necessary for the enforcement of the subpoena.
(c) Each circuit committee and member thereof conducting investigations is empowered to take and have transcribed the testimony and evidence of witnesses who may be sworn by any person authorized by law to administer oaths.
(d) The board of governors shall employ one or more assistant staff counsel and other necessary employees including investigators to assist the standing committee to carry out its responsibilities as prescribed herein.
10-5 Civil injunctions.
10-5.1 Proceedings generally.
(a) Complaints shall be by petition filed in the Supreme Court of Florida by The Florida Bar in its name.
(b) Each such petition shall be processed in the Supreme Court of Florida in accordance with the following procedure:
(1) The petition shall not be framed in technical language, but shall with reasonable clarity set forth the facts constituting the unlicensed practice of law. A prayer for relief may be included in the petition, but shall not be required.
(2) The Court, upon consideration of any petition so filed, may issue its order to show cause directed to the respondent commanding said respondent to show cause, if there be any, why the respondent should not be enjoined from the unlicensed practice of law alleged, and further requiring the respondent to file with the Court within twenty (20) days after service on him of the petition and order to show cause a written answer admitting or denying each of the matters set forth in the petition. The legal sufficiency of the petition may, at the option of the respondent be raised by motion to dismiss filed prior to or at the time of the filing of the answer. The filing of a motion to dismiss prior to the filing of an answer shall postpone the time for the filing of an answer until ten (10) days after disposition of said motion. The order and petition shall be served upon the respondent in the manner provided for service of process by rule 1.070(b), Florida Rules of Civil Procedure. Service of all other pleadings shall be governed by the provisions of rule 1.080, Florida Rules of Civil Procedure.
(3) Any party may request oral argument upon any question of law raised by the initial pleadings. The Court may, in its discretion, set the matter for oral argument upon the next convenient motion day or at such time as it deems appropriate.
(4) If no response or defense is filed within the time permitted, the allegations of the petition shall be taken as true for purposes of that action. The Court will then, upon its motion or upon motion of any party, decide the case upon its merits, granting such relief and issuing such order as might be appropriate; or it may refer the petition for further proceedings according to rule 10-5.1(b)(6).
(5) If a response or defense filed by a respondent raises no issue of material fact, any party, upon motion, may request summary judgment and the Court may rule thereon as a matter of law.
(6) The Court may, upon its motion or upon motion of any party, enter a judgment on the pleadings or refer questions of fact to a referee for determination. The referee shall be a circuit judge of the State of Florida.
(c) Proceedings before the referee shall be in accordance with the following:
(1) The proceedings shall be held in the county where the respondent resides or where the alleged offense was committed, whichever shall be designated by the Court.
*1114 (2) Upon assignment of a cause for trial, the board of governors shall appoint bar counsel to prosecute the cause before the referee.
(3) Witness subpoenas shall run in the name of the Court and shall be issued by the referee upon request of a party. Failure or refusal to comply with any subpoena shall be contempt of Court and may be punished by the Court or by any circuit court where the action is pending or where the contemnor may be found, as if said refusal were a contempt of that court.
(4) The Florida Rules of Civil Procedure, including those provisions pertaining to discovery, not inconsistent with these rules, shall apply in injunctive proceedings before the referee. The powers and jurisdiction generally reposed in the court under those rules may in this action be exercised by the referee. The Florida Bar may in every case amend its petition one time as of right, within sixty (60) days after the filing of the order of reference to a referee.
(5) Review of interlocutory rulings of the referee may be had by petition to the Court filed within thirty (30) days after entry of the ruling complained of. A supporting brief and a transcript containing conformed copies of pertinent portions of the record in the form of an appendix shall be filed with the Court by a party seeking such review. Any opposing party may file his responsive brief and appendix containing any additional portions of the record deemed pertinent to the issues raised within ten (10) days thereafter. The petitioner may file a reply brief within five (5) days of the date of service of the opposing party's responsive brief. Any party may request oral argument at the time his brief is filed or due. Interlocutory review hereunder shall not stay the cause before the referee unless the referee or the Court on its motion or upon motion of any party shall so order.
(6) At the conclusion of the hearing, the referee shall file a written report with the Court stating findings of fact, conclusions of law and recommendation for final disposition of the cause. The original record shall be filed with the report. Copies of the referee's report shall be served upon all parties by the referee at the time it is filed with the Court.
(d) Review by the Supreme Court of Florida.
(1) Objections to the report of the referee shall be filed with the Court by any party aggrieved, within thirty (30) days after the filing of said report. If the objector desires, a brief in support of the objections may be filed at the time the objections are filed. Any other party may file a responsive brief within twenty (20) days of service of objector's brief. The objector may file a reply brief within ten (10) days of service of the opposing party's responsive brief. Oral argument will be allowed at the Court's discretion and will be governed by the provisions of the Florida Rules of Appellate Procedure.
(2) Upon the expiration of the time to file objections to the referee's report, the Court shall review the report of the referee, together with any briefs or objections filed in support of or opposition to such report. After review, the Court shall determine as a matter of law whether the respondent has engaged in the unlicensed practice of law and whether his activities should be enjoined by appropriate order and whether further relief shall be granted.
(e) Nothing set forth in this rule shall be construed to limit the authority of the Court, upon proper application, to issue a preliminary or temporary injunction, or at any stage of the proceedings to enter any such order as to the Court may seem proper when public harm or the possibility thereof is made apparent to the Court, in order that such harm may be summarily prevented or speedily enjoined.
10-6 Confidentiality.
10-6.1 File confidentiality access. All unlicensed practice of law investigation matters including files, correspondence, preliminary investigation reports, interoffice memoranda, and records of investigations are confidential unless otherwise provided herein or ordered by the Court.
*1115 10-7 Advisory opinions.
10-7.1 Procedures for issuance of advisory opinions on the unlicensed practice of law.
(a) Definitions.
(1) Committee. The standing committee on the unlicensed practice of law, as constituted according to the directives contained in these rules.
(2) Petitioner. An individual or organization seeking guidance as to the applicability, in a hypothetical situation, of the state's prohibitions against the unlicensed practice of law.
(3) Public notice. Publication in a newspaper of general circulation in Leon County, Florida, and in The Florida Bar News.
(4) Court. The Supreme Court of Florida (or such other court in the State of Florida the Supreme Court may designate).
(5) UPL. The unlicensed practice of law, as prohibited by statute, court rule, and case law of the State of Florida.
(b) Requests for advisory opinions. The committee shall respond to written requests from all persons and entities seeking advisory opinions concerning activities which may constitute the unlicensed practice of law. Such requests shall be in writing addressed to The Florida Bar, Tallahassee, Florida 32301. The request for an advisory opinion shall state in detail all operative facts upon which the request for opinion is based and contain the name and address of petitioner.
(c) Limitations on opinions. No opinion shall be rendered with respect to any case or controversy pending in any court in this jurisdiction and no informal opinion shall be issued.
(d) Services of voluntary counsel. The committee shall be empowered to request and accept the voluntary services of a person licensed to practice in this state when the committee deems it advisable to receive written or oral advice regarding the question presented by the petitioner.
(e) Conflict of interest. Committee members shall not participate in any matter in which they have either a material pecuniary interest that would be affected by a proposed advisory opinion or committee recommendation or any other conflict of interest that should prevent them from participating. However, no action of the committee will be invalid where full disclosure has been made and the committee has not decided that the member's participation was improper.
(f) Notice, appearance and service.
(1) At least thirty (30) days in advance of the committee meeting at which initial action is to be taken with respect to a potential advisory opinion, the committee shall give public notice of the date, time, and place of the meeting, state the question presented and invite written comments on the question. On the announced date the committee shall hold a public hearing at which any person affected shall be entitled to present oral testimony and be represented by counsel. Oral testimony by other persons may be allowed by the committee at its discretion. At the time of or prior to the hearing any other person shall be entitled to file written testimony on the issue before the committee. Additional procedures not inconsistent with this rule may be adopted by the committee.
(2) The committee shall issue either a written proposed advisory opinion or a letter which declines to issue an opinion. No other form of communication shall be deemed to be an advisory opinion.
(3) A proposed advisory opinion shall be in writing and shall bear a date of issuance. The proposed opinion shall prominently bear a title indicating that it is a proposed advisory opinion and a disclaimer stating that it is only an interpretation of the law and does not constitute final court action. The committee shall arrange for the publication of the proposed advisory opinion within a reasonable time.
(g) Service and judicial review of proposed formal advisory opinion.
(1) The committee shall file a copy of the opinion and all materials considered by the committee in adopting the opinion with the clerk of the Court. The proposed advisory *1116 opinion, together with notice of the filing thereof, shall be furnished by certified mail to the petitioner.
(2) Within thirty (30) days of the filing of the opinion the petitioner may file objections and a brief or memorandum in support thereof, copies of which shall be served on the committee. Any other interested person may seek leave of the Court to file and serve a brief in accordance with this same procedure. The committee may file a responsive brief within twenty (20) days of service of the initial brief. The petitioner, as well as other interested persons with leave of Court, may file a reply brief within ten (10) days of service of the responsive brief. At its discretion, the Court shall permit reasonable extension of these time periods. Oral argument will be allowed at the Court's discretion. The Florida Rules of Appellate Procedure shall otherwise govern the above methods of filing, service, and argument.
(3) Upon the expiration of the time to file objections, briefs, and replies thereto, the Court shall review the advisory opinion, regardless of whether any such objections are in fact made, together with any briefs or objections filed in support of or in opposition to such opinion. Upon review, it shall approve, modify, or disapprove the advisory opinion, and the ensuing opinion shall have the force and effect of an order of this Court and be published accordingly. There shall be no further review of the opinion except as granted by this Court in its discretion, upon petition to this Court.
10-8 Immunity.
10-8.1 Generally. The members of the committee and circuit committees, as well as staff persons and appointed voluntary counsel assisting those members, shall have absolute immunity from civil liability for all acts in the course of their official duties.
10-9 Amendments.
10-9.1 Generally. Rules governing the investigation and prosecution of the unlicensed practice of law may be amended in accordance with the procedures for amending the Rules Regulating The Florida Bar.

Chapter 11

RULES GOVERNING THE LAW SCHOOL CIVIL AND CRIMINAL PRACTICE PROGRAM
11-1 Generally.
11-1.1 Purpose. The bench and the bar are primarily responsible for providing competent legal services for all persons, including those unable to pay for these services. As one means of providing assistance to lawyers who represent clients unable to pay for such services and to encourage law schools to provide clinical instruction in trial work of varying kinds, the following rules are adopted.
11-1.2 Activities.
(a) An eligible law student may appear in any court or before any administrative tribunal in this state on behalf of any indigent person if the person on whose behalf he is appearing has indicated in writing his consent to that appearance and the supervising lawyer has also indicated in writing approval of that appearance. In such cases the supervising attorney shall be personally present when required by the trial judge who shall determine the extent of the eligible law student's participation in the proceeding.
(b) An eligible law student may also appear in any criminal matter on behalf of the state with the written approval of the prosecuting attorney or his authorized representative and of the supervising lawyer. In such cases the supervising attorney shall be personally present when required by the trial judge who shall determine the extent of the law student's participation in the proceeding.
(c) An eligible law student may also appear in any court or before any administrative tribunal in any civil matter on behalf of the state, state officers, or state agencies or on behalf of a municipality or county, provided that the municipality or county has a full-time legal staff, with the written approval of the attorney representing the state, state officer, state agency, municipality, *1117 or county. The attorney representing the state, state officer, state agency, municipality, or county shall supervise the law student and shall be personally present when required by the court or administrative tribunal, which shall determine the extent of the law student's participation in the proceeding.
(d) In each case the written consent and approval referred to above shall be filed in the record of the case and shall be brought to the attention of the judge of the court or the presiding officer of the administrative tribunal.
(e) The board of governors shall fix the standards by which indigence is determined under this chapter upon the recommendation of the largest voluntary bar association located in the circuit in which a program is implemented hereunder.
11-1.3 Requirements and limitations. In order to make an appearance pursuant to this chapter, the law student must:
(a) Be duly enrolled in the United States in a law school approved by American Bar Association;
(b) Have completed legal studies amounting to at least four (4) semesters or six (6) quarters for which the student has received not less than forty-eight (48) semester hours or seventy-two (72) quarter hours of academic credit or the equivalent if the school is on some other basis;
(c) Be certified by the dean of his or her law school as being of good character and competent legal ability and as being adequately trained to perform as a legal intern in a law school practice program;
(d) Be introduced to the court in which he or she is appearing by an attorney admitted to practice in that court;
(e) Neither ask for nor receive any compensation or remuneration of any kind for his or her services from the person on whose behalf he or she renders services, but this shall not prevent a lawyer, legal aid bureau, law school, public defender agency, or the state from paying compensation to the eligible law student (nor shall it prevent any agency from making such charges for its services as it may otherwise properly require); and
(f) Certify in writing that he or she has read and is familiar with the Rules of Professional Conduct as adopted by this Court and will abide by the provisions thereof.
11-1.4 Certification. The certification of a student by the law school dean:
(a) Shall be filed with the clerk of this Court, and, unless it is sooner withdrawn, it shall remain in effect until the expiration of eighteen (18) months after it is filed.
(b) May be withdrawn by the dean at any time by mailing a notice to that effect to the clerk of this Court. It is not necessary that the notice state the cause for withdrawal.
(c) May be terminated by this Court at any time without notice or hearing and without any showing of cause. Notice of the termination may be filed with the clerk of the Court.
11-1.5 Other activities.
(a) In addition, an eligible law student may engage in other activities, under the general supervision of a member of the bar of this Court, but outside the personal presence of that lawyer, including:
(1) Preparation of pleadings and other documents to be filed in any matter in which the student is eligible to appear, but such pleadings or documents must be signed by the supervising lawyer.
(2) Preparation of briefs, abstracts, and other documents to be filed in appellate courts of this state, but such documents must be signed by the supervising lawyer.
(3) Except when the assignment of counsel in the matter is required by any constitutional provision, statute, or rule of this Court, assistance to indigent inmates or correctional institutions or other persons who request such assistance in preparing applications for and supporting documents for post-conviction relief. If there is an attorney of record in the matter, all such assistance must be supervised by the attorney of record, and all documents submitted *1118 to the court on behalf of such a client must be signed by the attorney of record.
(4) Each document or pleading must contain the name of the eligible law student who has participated in drafting it. If he or she participated in drafting only a portion of it, that fact may be mentioned.
(b) An eligible law student may participate in oral argument in appellate courts, but only in the presence of the supervising lawyer.
11-1.6 Supervision. The member of the bar under whose supervision an eligible law student does any of the things permitted by this chapter shall:
(a) Be a lawyer whose service as a supervising lawyer for this program is approved by the dean of the law school in which the law student is enrolled and who is a member of The Florida Bar in good standing;
(b) Assume personal professional responsibility for the student's guidance in any work undertaken and for supervising the quality of the student's work; and
(c) Assist the student in his or her preparation to the extent the supervising lawyer considers it necessary.
11-1.7 Miscellaneous. Nothing contained in this chapter shall affect the right of any person who is not admitted to the practice of law to do anything that he or she might lawfully do prior to the adoption of this chapter.
11-1.8 Continuation of practice program after completion of law school program or graduation.
(a) A law student who has completed the law school practice program and (1) has had certification withdrawn by the law school dean by reason of completion of the program or (2) has graduated from law school following successful completion of the program may appear in court pursuant to this chapter if the attorney general, a state attorney, a public defender, or a supervising attorney of a legal aid organization approved by the Supreme Court of Florida:
(1) Files a certification in the same manner and subject to the same limitations as that required to be filed by the law school dean and files a separate certificate of the dean stating that the law student has successfully completed the law school practice program. This certification may be withdrawn in the same manner as provided for the law school dean's withdrawal of his or her certification. The maximum term of certification for graduates shall be twelve (12) months from graduation; and
(2) Further certifies that he or she will assume the duties and responsibilities of the supervising attorney as provided by other provisions of this chapter.
(b) A legal aid organization seeking approval from the Supreme Court of Florida for the purposes of this chapter shall file a petition with the clerk of the Court certifying that it is a nonprofit organization and reciting with specificity:
(1) The structure of the organization and whether it accepts funds from its clients;
(2) The major sources of funds used by the organization;
(3) The criteria used to determine potential clients' eligibility for legal services performed by the organization;
(4) The types of legal and nonlegal services performed by the organization; and
(5) The names of all members of The Florida Bar who are employed by the organization or who regularly perform legal work for the organization.
Legal aid organizations approved on the effective date of this chapter need not reapply for approval, but all such organizations are under a continuing duty to notify the Court promptly of any significant modification to their structure or source of funds.

Chapter 12

EMERITUS ATTORNEYS PRO BONO PARTICIPATION PROGRAM
12-1 Generally.
12-1.1 Purpose. Individuals admitted to the practice of law in Florida have a responsibility to provide competent legal services for all persons, including those unable to pay for such services. As one means of *1119 meeting these legal needs, the following rules establishing the Emeritus Attorneys Pro Bono Participation Program are adopted.
12-1.2 Definitions.
(a) An "emeritus attorney" is any person, retired from the active practice of law, who is or was admitted to practice law before the highest court of Florida or any other state or territory of the United States of America or the District of Columbia; and
(1) Has been engaged in the active practice of law for a minimum of ten (10) out of fifteen (15) years immediately preceding the application to participate in the emeritus program; and
(2) Has been a member in good standing of The Florida Bar or the entity governing the practice of law of any other state, territory or the District of Columbia and has not been disciplined for professional misconduct by the bar or courts of any jurisdiction within the past fifteen (15) years; and
(3) If not a retired member of The Florida Bar, has not failed the Florida bar examination three (3) or more times; and
(4) Agrees to abide by the Rules of Professional Conduct and submit to the jurisdiction of the Supreme Court of Florida for disciplinary purposes; and
(5) Neither asks for nor receives compensation of any kind for the legal services to be rendered hereunder; and
(6) Is certified under rule 12-1.5.
(b) An "approved legal aid organization" for the purposes of this chapter is a not-for-profit legal aid organization which is approved by the Supreme Court of Florida as set forth herein. A legal aid organization seeking approval from the Supreme Court of Florida for the purposes of this chapter shall file a petition with the clerk of the Supreme Court of Florida certifying that it is a not-for-profit organization and reciting with specificity:
(1) The structure of the organization and whether it accepts funds from its clients;
(2) The major sources of funds used by the organization;
(3) The criteria used to determine potential clients' eligibility for legal services performed by the organization;
(4) The types of legal and nonlegal services performed by the organization;
(5) The names of all members of The Florida Bar who are employed by the organization or who regularly perform legal work for the organization; and
(6) The existence and extent of malpractice insurance which will cover the emeritus attorney.
(c) A "supervising attorney" as used herein is an active member of The Florida Bar who directs and supervises an emeritus attorney engaged in activities permitted by this chapter. The supervising attorney must:
(1) Be employed by or be a participating volunteer for an approved legal aid organization, and
(2) Assume personal professional responsibility for supervising the conduct of the matter, litigation or administrative proceeding in which the emeritus attorney participates.
12-1.3 Activities.
(a) An emeritus attorney, in association with an approved legal aid organization and under the supervision of a supervising attorney, may perform the following activities:
(1) The emeritus attorney may appear in any court or before any administrative tribunal in this state on behalf of a client of an approved legal aid organization if the person on whose behalf the emeritus attorney is appearing has consented in writing to that appearance and a supervising attorney has given written approval for that appearance. The written consent and approval shall be filed in the record of each case and shall be brought to the attention of a judge of the court or the presiding officer of the administrative tribunal.
(2) The emeritus attorney may prepare pleadings and other documents to be filed *1120 in any court or before any administrative tribunal in this state in any matter in which the emeritus attorney is involved. Such pleadings also shall be signed by the supervising attorney.
(3) The emeritus attorney may engage in such other preparatory activities as are necessary for any matter in which he or she is involved.
(b) The presiding judge or hearing officer may, in her or his discretion, determine the extent of the emeritus attorney's participation in any proceedings before the court.
12-1.4 Supervision and limitations.
(a) An emeritus attorney must perform all activities authorized by this chapter under the direct supervision of a supervising attorney.
(b) Emeritus attorneys permitted to perform services under this chapter are not, and shall not represent themselves to be, active members of The Florida Bar licensed to practice law in this state.
(c) The prohibition against compensation for the emeritus attorney contained in rule 12-1.2(a)(5) shall not prevent the approved legal aid organization from reimbursing the emeritus attorney for actual expenses incurred while rendering services hereunder nor shall it prevent the approved legal aid organization from making such charges for its services as it may otherwise properly charge. The approved legal aid organization shall be entitled to receive all court-awarded attorneys' fees for any representation rendered by the emeritus attorney.
12-1.5 Certification.
(a) Permission for an emeritus attorney to perform services under this chapter shall become effective upon filing with and approval by the clerk of the Supreme Court of Florida of:
(1) A certification by an approved legal aid organization stating that the emeritus attorney is currently associated with that legal aid organization and that an attorney employed by or participating as a volunteer with that organization will assume the duties of the supervising attorney required hereunder;
(2) A certificate from the highest court or agency in the state, territory, or district in which the emeritus attorney previously has been licensed to practice law, certifying that the emeritus attorney has fulfilled the requirements of active bar membership and has a clear disciplinary record as required by rule 12-1.2(a)(2); and
(3) A sworn statement by the emeritus attorney that he or she:
a. Has read and is familiar with the Rules of Professional Conduct as adopted by the Supreme Court of Florida and will abide by the provisions thereof; and
b. Submits to the jurisdiction of the Supreme Court of Florida for disciplinary purposes, as defined by the Rules of Discipline and by rules 12-1.2(a)(4) and 12-1.7.
c. Will neither ask for nor receive compensation of any kind of the legal services authorized hereunder.
12-1.6 Withdrawal of certification.
(a) Permission to perform services under this chapter shall cease immediately upon the filing with the clerk of the Supreme Court of Florida of a notice either:
(1) By the approved legal aid organization stating that:
a. The emeritus attorney has ceased to be associated with the organization, which notice must be filed within five (5) days after such association has ceased; or
b. Certification of such attorney is withdrawn. An approved legal aid organization may withdraw certification at any time and it is not necessary that the notice state the cause for such withdrawal.
A copy of the notice filed with the clerk of the Supreme Court of Florida shall be mailed by the organization to the emeritus attorney concerned.
(2) By the Supreme Court of Florida, in its discretion, at any time, stating that permission to perform services under this chapter has been revoked. A copy of such notice shall be mailed by the clerk of the *1121 Supreme Court of Florida to the emeritus attorney involved and to the approved legal aid organization by which he or she had been certified.
(b) If an emeritus attorney's certification is withdrawn, for any reason, the supervising attorney shall immediately file a notice of such action in the official file of each matter pending before any court or tribunal in which the emeritus attorney was involved.
12-1.7 Discipline. In addition to any appropriate proceedings and discipline which may be imposed by the Supreme Court of Florida under the Rules of Discipline and/or the Rules of Professional Conduct the emeritus attorney shall be subject to the following disciplinary measures:
(a) The presiding judge or hearing officer for any matter in which the emeritus attorney has participated may hold the emeritus attorney in civil contempt for any failure to abide by such tribunal's orders; and
(b) The Supreme Court of Florida or the approved legal aid organization may, at any time, with or without cause, withdraw certification hereunder.
NOTES
[*] The board of governors, during oral argument on no. 67,085, lawyer referral services, asked that we consider that petition in conjunction with, rather than separately from, nos. 65,197 and 65,877. The Court consolidated no. 68,293, concerning specialization rules, with the other petitions.
[**] The affected rules are: 1-7.3, dues, substantive change; 2-8.1; 3-7.3(m), rejection of private reprimand, substantive change; 3-7.5(k)(1)(3), contents of referee's report, substantive change; 3-7.12, inactive list, substantive change; chapter 4, preamble; 4-1.15, safekeeping property, substantive change; 5-1.1(a); and 8-2.2(k). The attached pages also include those pages from rule 4-1.5 dealing with contingent fees, as modified in case no. 68,417.